UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY,

Plaintiff,

**05-20973**

vs.

MUTUAL BENEFITS CORP., ANTHONY M. LIVOTI, JR., P.A.,
ROBERTO MARTINEZ as RECEIVER, VIATICAL SERVICES, INC.,
RETIREMENT ACCOUNTS, INC., DOUGLAS E. ABRAMS,
SAMUEL J. BENNETT, NORMAN A. BENSON, DAN BONH**CIV-MARTINEZ**
GEORGE E. BRETON, DONALD J. BURNETT,
KENNETH R. CALDERWOOD, VOLA I. CLARE,
JOHANNA J. CROWLEY, THAD J. DETILLIO, BLISS FITZGERALD,
SHERRY FOLEY, JACK GATHERCOAL, JOHN GAUSE,
JEFF R. HALLOWS, MICHAEL S. HARGROVE,            **MAGISTRATE**
HAZEL G. HARGROVE, DAVID W. HAYES, GARLAND V. INZER,   **BANDSTRA**
JOHN O. KIMMEL, LINDA LEE, LILIAN V. LOPEZ,
ROSE E. MACKINLAY TRUST- ROSE MACKINLAY as Trustee,
LAWRENCE H. MEYER, DAVID L. PEASE, BARBARA J. PELLET,
ROBERT P. RETTIG, BEULAH W. SHEETS, JOAN M. SUZIO,
MARION THOMPSON, JOAN R. WEATHERLY, and JOHN M. WERMUTH,

Defendants.

_____/

## PLAINTIFF TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY'S COMPLAINT FOR INTERPLEADER AND DECLARATORY RELIEF

Plaintiff Transamerica Occidental Life Insurance Company ("Transamerica") files this Complaint for Interpleader and Declaratory Relief and alleges:

### I. INTRODUCTION

1.      This action relates to an enforcement action brought before the Honorable Judge Frederico Moreno in the U.S. District Court for the Southern District of Florida, *SEC v. Mutual Benefits Corp., et al,* Case No. 04-60573.



2. This is an action pursuant to 28 U.S.C. § 1335 and Rule 22 of the Federal Rules of Civil Procedure for Interpleader and Declaratory Relief concerning the death benefit proceeds payable on a Universal Life Insurance Policy, Transamerica policy number 60109065 (converted from policy number 40208626) ("Dumesco Policy II")[1], issued by Transamerica, in connection with the death on April 28, 2004, of the insured, Alan Neil Dumesco ("Mr. Dumesco"). A copy of Dumesco Policy II is attached hereto as Exhibit "A."

3. The face amount of the Dumesco Policy II is Five Hundred Thousand Dollars ($500,000.00). Including interest accrued through April 15, 2005, Dumesco Policy II has payable proceeds of $518,575.58.

4. On May 4, 2004, the Court appointed Roberto Martinez ("Mr. Martinez" or the "Receiver") as the Receiver in *SEC v. Mutual Benefits Corp., et al,* Case No. 04-60573.

A copy of the Order Appointing Receiver ("Order Appointing Receiver") is attached hereto as Exhibit "B." Pursuant to the Order Appointing Receiver, the Receiver believes that the death benefit proceeds payable on Dumesco Policy II may be the property of the Receivership Estate and not the property of any particular investor or beneficiary. Exhibit "B."

5. On May 20, 2004, the Court entered an order clarifying the Receiver's authority with respect to Dumesco Policy II, in pertinent part, "to authorize the Receiver to require all . . . life insurance companies involved in paying and distributing benefits on any matured policies in which investors of Mutual Benefits Corp. or Viatical Benefactors, LLC may have an interest to pay such benefits directly to the Receiver," instead of to a policy's beneficiaries or to such "investors." A copy of the Order Amending Order Appointing Receiver Regarding Maintenance

---

[1] Dumesco Policy I, a Universal Life Insurance Policy, policy number 60108208, also issued by Transamerica, is the subject of a separate interpleader action.

Steel Hector & Davis LLP

of Insurance Policies and Benefits entered May 20, 2004 ("Amended Order Appointing Receiver") is attached hereto as Exhibit "C."

6.      On July 15, 2004, Transamerica was directed by Kenneth R. Hartmann, then counsel to Roberto Martinez, the Court-appointed Receiver in *SEC v. Mutual Benefits Corp., et al,* Case No. 04-60573, to make the death benefit proceeds payable under Dumesco Policy II to the Receiver.  A copy of the letter from Mr. Hartmann to Transamerica is attached hereto as Exhibit "D."

7.      Nothing in either the Order Appointing Receiver or the Amended Order Appointing Receiver expressly restrains or enjoins potential beneficiaries of the Dumesco Policy II, identified herein as Defendants, or so-called "investors" therein from instituting any action against Transamerica for recovery of the amount in dispute, or otherwise discharge Transamerica from liability with respect to Dumesco Policy II.

8.      Pursuant to the Amended Order Appointing Receiver, the Receiver is to maintain an accounting as to the identity of all investors and  beneficiaries who may claim an interest in policies such as Dumesco Policy II.  Exhibit "C," ¶ 2.  The current designated beneficiaries of Dumesco Policy II and their respective share amounts are identified in the Beneficiary Designation Form and its attached list dated October 1, 2003, which was recorded by Transamerica on or about October 10, 2003, and a copy of which is attached hereto as Composite Exhibit "E."

## II. THE PARTIES

9.      Transamerica is an insurance company incorporated in the State of Iowa, with its principal place of business also in Iowa.

10.      Upon information and belief, Mutual Benefits Corporation ("MBC"), is a Florida corporation, has operated in Florida as a viatical and life settlement provider, and owns or has

owned Viatical Services, Inc. ("VSI"), also a Florida corporation. MBC and VSI are a Defendants hereto.

11. Upon information and belief, Anthony M. Livoti, Jr., P.A. ("Livoti"), is a Florida professional service corporation and is or was a trustee, nominee, or agent for MBC. On May 28, 1997, ownership of Dumesco Policy II was assigned to Livoti. Transamerica recorded this change on June 9, 1997. A copy of the letter from Livoti to Transamerica, and its enclosed Multi-Company Assignment to Transfer Ownership, is attached hereto as Composite Exhibit "F."

12. Roberto Martinez, the Receiver, is a citizen of the State of Florida. Pursuant to the Court's Order Appointing Receiver, Mr. Martinez is the Receiver for MBC, VBLLC, and VSI (together, the "Receivership Entities"), and has taken possession of all property and assets of the Receivership Entities. Exhibit "B." On January 31, 2005, the Court entered an Order granting the Receiver's Motion to Expand Receivership to Include Livoti Entities (also part of the "Receivership Entities"). A copy of the January 31, 2005 Order Expanding Receivership is attached hereto as Exhibit "G."

13. The Defendants are identified alphabetically, for ease of reference only, in the case style and in the following paragraphs 14 through 44.

14. Upon information and belief, Retirement Accounts, Inc., for benefit of Douglas E. Abrams 031038031816, is a Colorado corporation, and a designated irrevocable beneficiary of 3.0740% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

15. Upon information and belief, Retirement Accounts, Inc., for benefit of Samuel J. Bennett 070824, is a Colorado corporation, and a designated irrevocable beneficiary of 2.2400%

4

of the face amount of Dumesco Policy II.   This beneficiary's   last known address to Transamerica is:  P.O. Box 173785, Denver, Colorado 80217-3785.

16.   Upon information and belief, Retirement Accounts, Inc., for benefit of Norman A. Benson 010660620001, is a Colorado corporation, and a designated irrevocable beneficiary of 2.2400% of the face amount of Dumesco Policy II.  This beneficiary's  last known address to Transamerica is:  P.O. Box 173785, Denver, Colorado 80217-3785.

17.   Upon information and belief, Retirement Accounts, Inc., for benefit of Dan Bonham 010729320001, is a Colorado corporation, and a designated irrevocable beneficiary of 4.4912% of the face amount of Dumesco Policy II.  This beneficiary's  last known address to Transamerica is:  P.O. Box 173785, Denver, Colorado 80217-3785.

18.   Upon information and belief, Retirement Accounts, Inc., for benefit of George E. Breton 010627230001, is a Colorado corporation, and a designated irrevocable beneficiary of 6.7200% of the face amount of Dumesco Policy II.  This beneficiary's  last known address to Transamerica is:  P.O. Box 173785, Denver, Colorado 80217-3785.

19.   Upon information and belief, Retirement Accounts, Inc., for benefit of Donald J. Burnett 010725970001, is a Colorado corporation, and a designated irrevocable beneficiary of 02.0160% of the face amount of Dumesco Policy II.  This beneficiary's  last known address to Transamerica is:  P.O. Box 173785, Denver, Colorado 80217-3785.

20.   Upon information and belief, Retirement Accounts, Inc., for benefit of Kenneth R. Calderwood 01073308001, is a Colorado corporation, and a designated irrevocable beneficiary of 2.2252% of the face amount of Dumesco Policy II.  This beneficiary's  last known address to Transamerica is:  P.O. Box 173785, Denver, Colorado 80217-3785.

Steel Hector & Davis LLP

21.     Upon information and belief, Retirement Accounts, Inc., for benefit of Vola I. Clare 010727790001, is a Colorado corporation, and a designated irrevocable beneficiary of 2.2400% of the face amount of Dumesco Policy II.  This beneficiary's  last known address to Transamerica is:  P.O. Box 173785, Denver, Colorado 80217-3785.

22.     Upon information and belief, Retirement Accounts, Inc., for benefit of Johanna J. Crowley 010719990001, is a Colorado corporation, and a designated irrevocable beneficiary of 2.5760% of the face amount of Dumesco Policy II.  This beneficiary's  last known address to Transamerica is:  P.O. Box 173785, Denver, Colorado 80217-3785.

23.     Upon information and belief, Retirement Accounts, Inc., for benefit of Thad J. Detillio 010009040001, is a Colorado corporation, and a designated irrevocable beneficiary of 2.5760% of the face amount of Dumesco Policy II.  This beneficiary's  last known address to Transamerica is:  P.O. Box 173785, Denver, Colorado 80217-3785.

24.     Upon information and belief, Bliss Fitzgerald is a citizen of Utah, and a designated irrevocable beneficiary of 1.5262% of the face amount of Dumesco Policy II.  Ms. Fitzgerald's last known address to Transamerica is:  431 West 50 North, American Fork, Utah 84003.

25.     Upon information and belief, Retirement Accounts, Inc., for benefit of Sherry Foley 010704460001, is a Colorado corporation, and a designated irrevocable beneficiary of 2.3968% of the face amount of Dumesco Policy II.  This beneficiary's last known address to Transamerica is:  P.O. Box 173785, Denver, Colorado 80217-3785.

26.     Upon information and belief, Retirement Accounts, Inc., for benefit of Jack Gathercoal 010660780001, is a Colorado corporation, and a designated irrevocable beneficiary

Steel Hector & Davis LLP

of 4.4172% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

27. Upon information and belief, John Gause is a citizen Florida, and a designated irrevocable beneficiary of 2.2400% of the face amount of Dumesco Policy II. Mr. Gause's last known address to Transamerica is: 4290 Meadow View Drive, Boynton Beach, Florida 33436.

28. Upon information and belief, Retirement Accounts, Inc., for benefit of Jeff R. Hallows 031050000524, is a Colorado corporation, and a designated irrevocable beneficiary of 1.2384% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

29. Upon information and belief, Michael S. and Hazel C. Hargrove are citizens of Maryland, and are designated irrevocable beneficiaries, as joint tenants in common with rights of survivorship, to 1.200% of the face amount of Dumesco Policy II. Mr. and Mrs. Hargrove's last known address to Transamerica is: 5131 Flintridge Drive, Hyattsville, Maryland 20784.

30. Upon information and belief, Retirement Accounts, Inc., for benefit of David W. Hayes 010708260001, is a Colorado corporation, and a designated irrevocable beneficiary of 2.2094% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

31. Upon information and belief, Retirement Accounts, Inc., for benefit of Garland V. Inzer 053869, is a Colorado corporation, and a designated irrevocable beneficiary of 2.9286% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

32. Upon information and belief, Retirement Accounts, Inc., for benefit of John O. Kimmel 0106092800001, is a Colorado corporation, and a designated irrevocable beneficiary of

7

2.2400% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

33.     Upon information and belief, Retirement Accounts, Inc., for benefit of Linda Lee 062237, is a Colorado corporation, and a designated irrevocable beneficiary of 1.1164% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

34.     Upon information and belief, Retirement Accounts, Inc., for benefit of Lillian V. Lopez 031037997222, is a Colorado corporation, and a designated irrevocable beneficiary of 2.5534% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

35.     Upon information and belief, Rose E. MacKinlay Trust, Rose MacKinlay as Trustee, is a citizen of Florida and a designated beneficiary of 11.2000% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: 8531 Park Shore, Sarasota, Florida 34238.

36.     Upon information and belief, Retirement Accounts, Inc., for benefit of Lawrence H. Meyer 010622940001, is a Colorado corporation, and a designated irrevocable beneficiary of 2.2400% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

37.     Upon information and belief, Retirement Accounts, Inc., for benefit of David L. Pease 010726290001, is a Colorado corporation, and a designated irrevocable beneficiary of 3.9200% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

Steel Hector & Davis LLP

38. Upon information and belief, Retirement Accounts, Inc., for benefit of Barbara J. Pellet 031038021267, is a Colorado corporation, and a designated irrevocable beneficiary of 2.2956% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

39. Upon information and belief, Retirement Accounts, Inc., for benefit of Robert P. Rettig 010719960001, is a Colorado corporation, and a designated irrevocable beneficiary of 6.7200% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

40. Upon information and belief, Retirement Accounts, Inc., for benefit of Beulah W. Sheets 031038018284, is a Colorado corporation, and a designated irrevocable beneficiary of 1.7920% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

41. Upon information and belief, Retirement Accounts, Inc., for benefit of Joan M. Suzio 010721460001, is a Colorado corporation, and a designated irrevocable beneficiary of 3.3940% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

42. Upon information and belief, Marion Thompson is a citizen of Norwich, Canada, and a designated irrevocable beneficiary of 7.5736% of the face amount of Dumesco Policy II. Ms. Thompson's last known address to Transamerica is: RR # 3, Norwich, Canada N0J 1P0.

43. Upon information and belief, Retirement Accounts, Inc., for benefit of Joan R. Weatherly 010723710001, is a Colorado corporation, and a designated irrevocable beneficiary of 2.2400% of the face amount of Dumesco Policy II. This beneficiary's last known address to Transamerica is: P.O. Box 173785, Denver, Colorado 80217-3785.

Steel Hector & Davis LLP

44.     Upon information and belief, Retirement Accounts, Inc., for benefit of John M. Wermuth 010628630001, is a Colorado corporation, and a designated irrevocable beneficiary of 4.4800% of the face amount of Dumesco Policy II.  This beneficiary's  last known address to Transamerica is:  P.O. Box 173785, Denver, Colorado 80217-3785.

## III.  JURISDICTION AND VENUE

45.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1335 because Transamerica issued an insurance policy having a value in excess of Five Hundred Dollars ($500.00), two or more adverse claimants are of diverse citizenship, and Transamerica has agreed to deposit into the Court's registry the full value of the death benefit proceeds at issue.

46.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1397 because one or more of the claimants resides within the Southern District.  Venue in the Southern District is also proper because the underlying enforcement action, *SEC v. Mutual Benefits Corp., et al,* Case No. 04-60573,  is pending before the Honorable Judge Frederico Moreno.

47.     All conditions precedent to this action have occurred, have been satisfied, or have been waived.

## IV.  THE RECEIVERSHIP ENTITIES' AND OTHER DEFENDANTS' CONFLICTING CLAIMS TO PROCEEDS OF DUMESCO POLICY II

48.     On or about November 6, 1985, Transamerica issued Dumesco Policy II to Alan Neil Dumesco, a citizen of Maryland.  A copy of the Specimen of policy number 40208626 is attached hereto as Exhibit "H."  Policy number 40208626 was subsequently converted to policy number 60109065.  A copy of the Change of Plan Option/Conversion Application is attached hereto as Exhibit "I."

Steel Hector & Davis LLP

49.    The original beneficiary of Dumesco Policy II was Word Data Systems, Inc., the Dumesco family business. A copy of the Application for Individual Life Insurance is attached hereto as Exhibit "J." On July 18, 1990, the beneficiary designation was changed to Murray Dumesco and Constance Dumesco, Mr. Dumesco's mother and father. Transamerica recorded this designation on August 22, 1990. A copy of the July 18, 1990 Beneficiary Designation is attached hereto as Exhibit "K."

50.    On June 3, 1991, ownership of Dumesco Policy II was changed to Murray Dumesco and Connie Dumesco, as Joint Tenants with Rights of Survivorship. Transamerica recorded this assignment on July 12, 1991. A copy of the June 3, 1991 Multi-Company Assignment to Transfer Ownership is attached hereto as Exhibit "L." On June 4, 1991, the beneficiary designation was again changed to Murray Dumesco and Constance Dumesco, in equal shares if living, if not to the survivor, otherwise to the Trustee or successor in trust of the Jennifer Beth Dumesco Trust Agreement. Transamerica recorded this designation on June 12, 1991. A copy of the June 4, 1991 Beneficiary Designation is attached hereto as Exhibit "M."

51.    On May 20, 1997, ownership of Dumesco Policy II was changed to Mr. Dumesco. A copy of the May 20, 1997 Multi-Company Assignment to Transfer Ownership is attached hereto as Exhibit "N."

52.    On May 28, 1997, ownership of Dumesco Policy II was transferred to Livoti. Composite Exhibit "G," at 2. On May 30, 1997, Livoti notified Transamerica that an agreement had been entered into for the transfer of "absolute assignment of the above referenced policy [Insured: Alan N. Dumesco, Policy No. 40208626 (subsequently converted to Policy No. 60109065)] to Anthony M. Livoti, Jr., P.A., 721 NE 3rd Avenue, Fort Lauderdale, Florida 33304." Composite Exhibit "F," at 1.

53.     Livoti changed the beneficiary designations on Dumesco Policy II several times after 1997. The current irrevocable beneficiaries of Dumesco Policy II and their share amounts, as designated by Livoti on October 1, 2003, and as recorded by Transamerica on October 10, 2003, are identified in Composite Exhibit "E," and also in paragraphs 14 through 44 above.

54.     Alan N. Dumesco died on April 28, 2004. Mr. Dumesco's Certificate of Death is attached hereto as Exhibit "O."

55.     On May 3, 2004, the Securities and Exchange Commission ("SEC") filed its Complaint for Injunctive and Other Relief in the case styled *SEC v. Mutual Benefits Corp., et al,* Case No. 04-60573. The SEC sought and received a Temporary Injunction against the Defendants; the assets of the Defendants have been frozen. On February 14, 2005, the Court entered an Order Granting the SEC's Motion for Preliminary Injunction. A copy of the Preliminary Injunction Order is attached hereto as Exhibit "P."

56.     On May 4, 2004, the Court entered an Order Appointing Receiver. Exhibit "B." The Order Appointing Receiver empowers and directs the Receiver, *inter alia*, to take immediate possession of all property and assets of the Receivership Entities.

57.     On May 20, 2004, the Court entered an Amended Order Appointing Receiver. Exhibit "C." The Amended Order Appointing Receiver authorizes the Receiver, *inter alia*, "to require all . . . life insurance companies," such as Transamerica, "involved in paying and distributing benefits on any matured policies in which investors of [MBC or VBLLC] may have an interest, to pay such benefits directly to the Receiver," regardless of the terms of those policies. Exhibit "C."

Steel Hector & Davis LLP

58.    The Court further authorized the Receiver "to direct" insurance companies, such as Transamerica, to accept claim forms executed by the Receiver in lieu of their execution by any named beneficiaries of a matured policy.  Exhibit "C," ¶ 3.

59.    On or about November 9, 2004, Transamerica received a claim for death benefit proceeds payable on Dumesco Policy II from VSI, specifically Monica Ramdath, as "Operational Representative for Roberto Martinez, Court Appointed Receiver for Mutual Benefits Corp."  A copy of the letter from Ms. Ramdath to Transamerica, and its enclosed Claim Form is attached hereto as Composite Exhibit "Q."

60.    Under the terms of Dumesco Policy II and applicable contract law, its death benefits are payable to and only to its named beneficiaries of record with Transamerica.

## V. GROUNDS AND NECESSITY FOR INTERPLEADER

61.    The allegations in paragraphs 1 through 60 are incorporated herein.  Accordingly, the Receiver, Livoti, MBC, VSI and the entities and persons identified as Defendants may claim entitlement to the death benefits of Dumesco Policy II.

62.    Because of these potential conflicting claims, Transamerica is in great doubt as to the person or entity entitled to be paid the benefits of Dumesco Policy II.

63.    Transamerica has no beneficial interest in the death benefits to be paid pursuant to Dumesco Policy II, and is merely a stakeholder.

64.    Transamerica files this action to be relieved of multiple liability on the possible conflicting claims of the beneficiaries, "investors," and the Receiver to the death benefits to be paid pursuant to Dumesco Policy II.

65.    Transamerica agrees to pay into the Court registry the death benefit proceeds on Dumesco Policy II that are in dispute and will abide by the judgment of this Court, in order that the Defendants may interplead and settle their claims.

66.     Transamerica has retained the law firm of Steel Hector & Davis LLP to represent it in this action and has agreed to pay reasonable attorneys' fees and costs.  Transamerica is entitled to recover its attorneys' fees and costs pursuant to applicable law.

WHEREFORE, Transamerica requests:

a.   That Transamerica be permitted to pay into the registry of this Court the death benefit proceeds payable on Dumesco Policy II, policy number 60109065 in the amount of $518,575.58, which includes interest accrued through April 15, 2005, and that any fees charged by the Clerk of the Court or accrued in this account by operation of this Court's registry requirements shall be paid from the deposit and shall not be the separate responsibility of any party to this action;

b.   That each of the Defendants be restrained and enjoined, during the pendency of this interpleader action and permanently, from instituting any action against Transamerica for recovery of the amount in dispute or any part thereof;

c.   That the Defendants be required to interplead and settle among themselves their rights or claims to the Dumesco Policy II death benefit proceeds described above and that Transamerica be discharged from all liability for all payment made into the registry of this Court;

d.   That Transamerica recover its costs and attorneys' fees necessitated by this interpleader action; and,

e.   That Transamerica shall have such other and further relief as this Court deems just and proper.

Dated:  April 8th, 2005.

STEEL HECTOR & DAVIS LLP
200 South Biscayne Boulevard, Suite 4000
Miami, FL 33131-2398
Telephone:   305.577.7000
Facsimile:   305.577.7001
Email: gary.timin@steelhector.com
mayra.calzadilla@steelhector.com

*Attorneys for Plaintiff Transamerica*
*Occidental Life Insurance Company*

By:_____

    Gary P. Timin
    Florida Bar No. 0439071
    Mayra Calzadilla
    Florida Bar No. 0625744

MIA2001 385835v2

# Exhibit "A"


**TRANSAMERICA OCCIDENTAL LIFE** ® ⁓

Transamerica Occidental
Life Insurance Company
Home Office: Cedar Rapids, IA   52499
Marketing Office: Los Angeles, CA   90015
Administrative Office: P.O Box 419521
Kansas City, MO   64141-6521

**POLICY FORM   TU EX**
Individual Life Insurance

| INSURED | ALAN NEIL DUMESCO | | 60109065 | POLICY NUMBER |
|---|---|---|---|---|
| FACE AMOUNT | $500,000 | | NOV 06 1985 | DATE OF ISSUE |

Transamerica Occidental Life Insurance Company will pay the death benefit to the Beneficiary if the Insured dies while this policy is in force. All payments are subject to the provisions of this policy. Signed for the Company at Los Angeles, California, on the date of issue.

Secretary

President

**Right to Examine and Return Policy Within 10 Days** -- At any time within 10 days after you receive this policy, you may return it to us or the agent through whom you bought it. We will cancel the policy and void it from the beginning. We will refund to you any premiums paid.

**Adjustable Life Insurance**
**Minimum Premium Requirement**
**Shown in the Policy Data**
**Flexible Premiums Payable Thereafter**
**During Life of Insured Up to the Policy**
**Anniversary At Age 100**
**Subject to the Limitations Described**
**in the Premiums Provision**

**Death Benefit Payable at Death of Insured**

**Nonparticipating -- No Annual Dividends**

**THE BENEFITS, VALUES AND/OR INTEREST**
**RATES ARE ON A VARIABLE BASIS**

**FOR INFORMATION OR TO MAKE A COMPLAINT**
**CALL 1-800-852-4678**

1-11212102

P O L I C Y   D A T A

CLASS A LOAN
INTEREST RATE  5.21% IN ADVANCE                    FEB 11, 2003   POLICY DATE

CLASS B LOAN                                                      REINSTATEMENT
INTEREST RATE  7.40% IN ADVANCE                       6.00%   INTEREST RATE

POLICY NUMBER  000060109065                              48   AGE OF INSURED

        INSURED  ALAN NEIL DUMESCO

   FACE AMOUNT  $500,000                          NOV 06, 1985   DATE OF ISSUE

DEATH BENEFIT
        OPTION  OPTION 1                   PREFERRED NONSMOKER   CLASS OF RISK

         OWNER  ANTHONY M LIVOTI JR PA

----------------------------------------------------------------------------

MINIMUM INITIAL PREMIUM: $1,062
PLANNED PERIODIC PREMIUMS: $2,124      ANNUAL

REQUIRED PREMIUM PERIOD: 5 YEARS

REQUIRED PREMIUM PER YEAR FOR THE BASE POLICY: $2,124

REQUIRED PREMIUM PER YEAR FOR THE BASE POLICY AND ALL
ADDITIONAL RIDERS: $2,124

PREMIUM QUALIFICATION CREDIT PERIOD: 5 YEARS
PREMIUM QUALIFICATION CREDIT PERCENTAGE: 2%

GUARANTEED MAXIMUM MONTHLY POLICY FEE: POLICY YEARS 1-5: $6.00
                                       POLICY YEARS 6 AND LATER: $10.00

GUARANTEED MAXIMUM MONTHLY EXPENSE CHARGE PER THOUSAND:
                            YEARS 1-5: $0.1483
                            YEARS 6-10: $0.1125
                            YEARS 11 & LATER: $0.0766

GUARANTEED MINIMUM INTEREST RATE:  4.00%

ADMINISTRATIVE CHARGES:   7.00% OF EACH GROSS PREMIUM

----------------------------------------------------------------------------

NOTE: THIS POLICY MAY TERMINATE IF:
      (1)  THE CASH VALUE MINUS ANY LOAN(S) IS LESS THAN THE MONTHLY
           DEDUCTION DUE, OR
      (2)  THE REQUIRED PREMIUMS FOR THE BASE POLICY AND ANY
           ADDITIONAL RIDERS AND LAYERS ARE NOT PAID IN THEIR
           REQUIRED PREMIUM PERIOD.

P O L I C Y  D A T A  (C O N T I N U E D)

TABLE OF GUARANTEED MAXIMUM MONTHLY DEDUCTION RATES PER $1,000
FOR BASE POLICY*

| POLICY YEAR | POLICY EXCLUDING RIDERS | POLICY YEAR | POLICY EXCLUDING RIDERS | POLICY YEAR | POLICY EXCLUDING RIDERS |
|---|---|---|---|---|---|
| 1 | 0.0558 | 34 | 8.9375 | 67 | 0.0000 |
| 2 | 0.0850 | 35 | 9.8183 | | |
| 3 | 0.1066 | 36 | 10.7950 | | |
| 4 | 0.1275 | 37 | 11.8483 | | |
| 5 | 0.1466 | 38 | 12.9541 | | |
| 6 | 0.5633 | 39 | 14.0983 | | |
| 7 | 0.6208 | 40 | 15.2633 | | |
| 8 | 0.6850 | 41 | 16.4441 | | |
| 9 | 0.7550 | 42 | 17.6575 | | |
| 10 | 0.8291 | 43 | 18.9208 | | |
| 11 | 0.9116 | 44 | 20.2633 | | |
| 12 | 1.0041 | 45 | 21.7350 | | |
| 13 | 1.1075 | 46 | 23.4791 | | |
| 14 | 1.2225 | 47 | 25.8191 | | |
| 15 | 1.3550 | 48 | 29.3216 | | |
| 16 | 1.5050 | 49 | 35.0825 | | |
| 17 | 1.6716 | 50 | 45.0833 | | |
| 18 | 1.8541 | 51 | 62.0958 | | |
| 19 | 2.0516 | 52 | 83.3333 | | |
| 20 | 2.2633 | 53 | 0.0000 | | |
| 21 | 2.4933 | 54 | 0.0000 | | |
| 22 | 2.7483 | 55 | 0.0000 | | |
| 23 | 3.0366 | 56 | 0.0000 | | |
| 24 | 3.3658 | 57 | 0.0000 | | |
| 25 | 3.7458 | 58 | 0.0000 | | |
| 26 | 4.1758 | 59 | 0.0000 | | |
| 27 | 4.6483 | 60 | 0.0000 | | |
| 28 | 5.1533 | 61 | 0.0000 | | |
| 29 | 5.6866 | 62 | 0.0000 | | |
| 30 | 6.2441 | 63 | 0.0000 | | |
| 31 | 6.8291 | 64 | 0.0000 | | |
| 32 | 7.4600 | 65 | 0.0000 | | |
| 33 | 8.1566 | 66 | 0.0000 | | |

FOR ALL YEARS AFTER THOSE SHOWN, THE GUARANTEED MAXIMUM MONTHLY
DEDUCTION RATE PER $1,000 IS $0.0000.

---

* TO FIND THE AMOUNT OF MONTHLY DEDUCTION DURING EACH POLICY YEAR,
SEE THE GUARANTEED VALUES SECTION.  A POLICY FEE OF $6.00 WILL BE
ADDED INTO EACH MONTHLY DEDUCTION FOR THE FIRST FIVE POLICY YEARS.
IN SUBSEQUENT YEARS, THE POLICY FEE WILL NOT EXCEED $10.00. A
MONTHLY EXPENSE CHARGE PER THOUSAND WILL ALSO BE ADDED TO EACH
MONTHLY DEDUCTION.  THE GUARANTEED MAXIMUM MONTHLY EXPENSE CHARGE
PER THOUSAND IS SHOWN ON POLICY DATA PAGE 2.

1-11212102

P O L I C Y   D A T A   ( C O N T ᵢ N U E D )

ADDITIONAL BENEFITS

THE CHARGE FOR ANY ADDITIONAL BENEFITS WHICH ARE PROVIDED BY RIDER IS
SHOWN BELOW.  ONLY A BRIEF DESCRIPTION IS GIVEN.  THE COMPLETE PROVISIONS
ARE INCLUDED IN THE RIDER.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RIDER NUMBER     ADDITIONAL BENEFIT                    ANNUAL PREMIUM

1-056 11-101     FULL DEATH BENEFIT RIDER                  NO CHARGE

                 RIDER DATE: FEB 11, 2003
                 RIDER ISSUE DATE: NOV 06, 1985

                 EXPIRY DATE OF RIDER: FEB 11, 2070

         MONTHLY DEDUCTION RATE PER $1,000 FOR FULL DEATH BENEFIT RIDER

                          $0.00

1-11212102                                               PAGE  3A

TABLE OF POLICY VALUES AND BENEFITS

ILLUSTRATIVE PREMIUMS (1)
GUARANTEED BASIS (2)

| END OF POLICY YEAR | PLANNED ANNUALIZED PREMIUM | DEATH BENEFIT | ACCUMULATION VALUE (3) | CASH VALUE (4) |
|---|---|---|---|---|
| 1 | $2,124 | $500,000 | $730 | $0 |
| 2 | $2,124 | $500,000 | $1,356 | $0 |
| 3 | $2,124 | $500,000 | $1,876 | $0 |
| 4 | $2,124 | $500,000 | $2,290 | $0 |
| 5 | $2,124 | $500,000 | $2,605 | $0 |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |

AGE 60
AGE 65

--------------------------------------------------------------------------------

(1)  THE ACCUMULATION AND CASH VALUES RESULT FROM THE INTEREST RATES,
     MONTHLY DEDUCTIONS, PREMIUM QUALIFICATION CREDITS AND THE TIMELY
     PAYMENT OF THE PLANNED ANNUALIZED PREMIUMS.  PARTIAL SURRENDERS,
     SURRENDER-PENALTY-FREE WITHDRAWALS OR LOANS MAY CHANGE THESE
     RESULTS.

(2)  RESULTS CALCULATED ON A GUARANTEED BASIS REFLECT GUARANTEED
     MAXIMUM MONTHLY DEDUCTIONS AND THE GUARANTEED MINIMUM INTEREST
     RATE OF  4.00%.

(3)  ACCUMULATION VALUES ILLUSTRATED ON A GUARANTEED BASIS REFLECT
     ACCUMULATED NET PREMIUMS AND PREMIUM QUALIFICATION CREDIT AMOUNTS
     PLUS INTEREST AT THE GUARANTEED MINIMUM INTEREST RATE OF  4.00%
     LESS GUARANTEED MAXIMUM MONTHLY DEDUCTIONS WHICH INCLUDE THE
     POLICY FEE, THE GUARANTEED MAXIMUM MONTHLY EXPENSE CHARGE
     PER THOUSAND AND THE COST OF ANY RIDERS. WHILE A POLICY LOAN(S)
     EXISTS, THE INTEREST RATE APPLICABLE TO THE CASH VALUE SECURING
     THE LOAN(S) MAY DIFFER FROM THE INTEREST RATE APPLICABLE TO THE
     CASH VALUE NOT SECURING THE LOAN(S).

     PAID-UP LIFE INSURANCE VALUES (MAXIMUM NET SINGLE PREMIUMS AND
     FACE AMOUNT PER THOUSAND) ARE SHOWN ON POLICY DATA PAGES 4C AND 4D.

(4)  THE DIFFERENCE BETWEEN THE ACCUMULATION VALUE AND THE CASH VALUE
     IS THE SURRENDER PENALTY.

PREMIUMS ARE SUBJECT TO REFUND UNDER CONDITIONS DESCRIBED IN THE POLICY.

1-11212102                                                    PAGE   4

P O L I C Y   D A T A   (C O N T I N U E D)

TABLE OF SURRENDER PENALTIES PER $1,000 OF
BASE POLICY FACE AMOUNT

SURRENDER PENALTY PERIOD:   12 YEARS

| POLICY YEAR | SURRENDER PENALTY FACTOR |
|---|---|
| 1 | 34.10 |
| 2 | 33.40 |
| 3 | 32.60 |
| 4 | 31.90 |
| 5 | 31.10 |
| 6 | 30.40 |
| 7 | 29.70 |
| 8 | 24.70 |
| 9 | 19.80 |
| 10 | 14.80 |
| 11 | 9.90 |
| 12 | 4.90 |
| 13+ | 0.00 |

TO CALCULATE THE FULL SURRENDER PENALTY FOR THE BASE POLICY, FIND
THE FACTOR FOR THE CURRENT POLICY YEAR.  MULTIPLY THIS FACTOR BY
THE NUMBER OF THOUSANDS OF FACE AMOUNT OF THE BASE POLICY.

1-11212102                                                      PAGE   4A

P O L I C Y   D A T A   (C O N T I N U E D)

TABLE OF DEATH BENEFIT FACTORS

| POLICY YEAR | DEATH BENEFIT FACTOR | POLICY YEAR | DEATH BENEFIT FACTOR | POLICY YEAR | DEATH BENEFIT FACTOR |
|---|---|---|---|---|---|
| 1 | 2.90 | 34 | 1.27 | | |
| 2 | 2.81 | 35 | 1.25 | | |
| 3 | 2.73 | 36 | 1.23 | | |
| 4 | 2.65 | 37 | 1.22 | | |
| 5 | 2.57 | 38 | 1.21 | | |
| 6 | 2.40 | 39 | 1.19 | | |
| 7 | 2.33 | 40 | 1.18 | | |
| 8 | 2.26 | 41 | 1.17 | | |
| 9 | 2.20 | 42 | 1.16 | | |
| 10 | 2.13 | 43 | 1.15 | | |
| 11 | 2.07 | 44 | 1.14 | | |
| 12 | 2.01 | 45 | 1.13 | | |
| 13 | 1.96 | 46 | 1.12 | | |
| 14 | 1.91 | 47 | 1.11 | | |
| 15 | 1.86 | 48 | 1.10 | | |
| 16 | 1.81 | 49 | 1.08 | | |
| 17 | 1.76 | 50 | 1.07 | | |
| 18 | 1.72 | 51 | 1.06 | | |
| 19 | 1.68 | 52 | 1.04 | | |
| 20 | 1.64 | 53 | | | |
| 21 | 1.60 | 54 | | | |
| 22 | 1.57 | 55 | | | |
| 23 | 1.53 | 56 | | | |
| 24 | 1.50 | 57 | | | |
| 25 | 1.47 | 58 | | | |
| 26 | 1.44 | 59 | | | |
| 27 | 1.41 | 60 | | | |
| 28 | 1.39 | 61 | | | |
| 29 | 1.37 | 62 | | | |
| 30 | 1.34 | 63 | | | |
| 31 | 1.32 | 64 | | | |
| 32 | 1.30 | 65 | | | |
| 33 | 1.28 | 66 | | | |

FOR ALL POLICY YEARS AFTER THOSE SHOWN, THE DEATH BENEFIT FACTOR IS 1.00.

1-11212102

P O L I C Y   D A T A   (C O N T I N U E D)

TABLE OF PAID-UP INSURANCE PER $1,000 OF NET CASH VALUE

| POLICY YEAR | PAID-UP INSURANCE | POLICY YEAR | PAID-UP INSURANCE | POLICY YEAR | PAID-UP INSURANCE |
|---|---|---|---|---|---|
| 1 | 2801.43 | 34 | 1261.12 | 67 | 1000.00 |
| 2 | 2713.77 | 35 | 1244.40 | | |
| 3 | 2629.50 | 36 | 1228.80 | | |
| 4 | 2548.41 | 37 | 1214.34 | | |
| 5 | 2470.59 | 38 | 1201.01 | | |
| 6 | 2395.89 | 39 | 1188.69 | | |
| 7 | 2324.39 | 40 | 1177.23 | | |
| 8 | 2255.91 | 41 | 1166.46 | | |
| 9 | 2190.38 | 42 | 1156.17 | | |
| 10 | 2127.61 | 43 | 1146.11 | | |
| 11 | 2067.52 | 44 | 1136.09 | | |
| 12 | 2009.96 | 45 | 1125.80 | | |
| 13 | 1954.91 | 46 | 1114.97 | | |
| 14 | 1902.26 | 47 | 1103.29 | | |
| 15 | 1851.95 | 48 | 1090.64 | | |
| 16 | 1804.01 | 49 | 1077.17 | | |
| 17 | 1758.36 | 50 | 1063.37 | | |
| 18 | 1715.00 | 51 | 1050.29 | | |
| 19 | 1673.75 | 52 | 1040.00 | | |
| 20 | 1634.52 | 53 | 1000.00 | | |
| 21 | 1597.13 | 54 | 1000.00 | | |
| 22 | 1561.52 | 55 | 1000.00 | | |
| 23 | 1527.58 | 56 | 1000.00 | | |
| 24 | 1495.32 | 57 | 1000.00 | | |
| 25 | 1464.81 | 58 | 1000.00 | | |
| 26 | 1436.08 | 59 | 1000.00 | | |
| 27 | 1409.16 | 60 | 1000.00 | | |
| 28 | 1383.98 | 61 | 1000.00 | | |
| 29 | 1360.41 | 62 | 1000.00 | | |
| 30 | 1338.29 | 63 | 1000.00 | | |
| 31 | 1317.41 | 64 | 1000.00 | | |
| 32 | 1297.63 | 65 | 1000.00 | | |
| 33 | 1278.88 | 66 | 1000.00 | | |

FOR ALL POLICY YEARS AFTER THOSE SHOWN, THE PAID-UP INSURANCE PER
$1,000 OF NET CASH VALUE IS $1,000.00.

1-11212102

P O L I C Y   D A T A   (C O N T I N U E D)

TABLE OF MAXIMUM NET SINGLE PREMIUMS FOR PAID-UP INSURANCE PER $1,000

| POLICY YEAR | NET SINGLE PREMIUM | POLICY YEAR | NET SINGLE PREMIUM | POLICY YEAR | NET SINGLE PREMIUM |
|---|---|---|---|---|---|
| 1 | 356.96 | 34 | 792.94 | 67 | 1000.00 |
| 2 | 368.49 | 35 | 803.60 | | |
| 3 | 380.30 | 36 | 813.80 | | |
| 4 | 392.40 | 37 | 823.49 | | |
| 5 | 404.76 | 38 | 832.63 | | |
| 6 | 417.38 | 39 | 841.26 | | |
| 7 | 430.22 | 40 | 849.45 | | |
| 8 | 443.28 | 41 | 857.29 | | |
| 9 | 456.54 | 42 | 864.92 | | |
| 10 | 470.01 | 43 | 872.51 | | |
| 11 | 483.67 | 44 | 880.21 | | |
| 12 | 497.52 | 45 | 888.25 | | |
| 13 | 511.53 | 46 | 896.88 | | |
| 14 | 525.69 | 47 | 906.38 | | |
| 15 | 539.97 | 48 | 916.89 | | |
| 16 | 554.32 | 49 | 928.35 | | |
| 17 | 568.71 | 50 | 940.40 | | |
| 18 | 583.09 | 51 | 952.11 | | |
| 19 | 597.46 | 52 | 961.53 | | |
| 20 | 611.80 | 53 | 1000.00 | | |
| 21 | 626.12 | 54 | 1000.00 | | |
| 22 | 640.40 | 55 | 1000.00 | | |
| 23 | 654.63 | 56 | 1000.00 | | |
| 24 | 668.75 | 57 | 1000.00 | | |
| 25 | 682.68 | 58 | 1000.00 | | |
| 26 | 696.34 | 59 | 1000.00 | | |
| 27 | 709.64 | 60 | 1000.00 | | |
| 28 | 722.55 | 61 | 1000.00 | | |
| 29 | 735.07 | 62 | 1000.00 | | |
| 30 | 747.22 | 63 | 1000.00 | | |
| 31 | 759.06 | 64 | 1000.00 | | |
| 32 | 770.63 | 65 | 1000.00 | | |
| 33 | 781.93 | 66 | 1000.00 | | |

FOR ALL POLICY YEARS AFTER THOSE SHOWN, THE NET SINGLE PREMIUM FOR $1,000 OF PAID-UP INSURANCE IS $1,000.00.

E N D   O F   P O L I C Y   D A T A

1-11212102

PAGE   4D

**DEFINITIONS**

In this policy:

**We, our** or **us** means Transamerica Occidental Life Insurance Company.

**You** and **your** means the Owner of this policy.

**Accumulation Value** of the policy means the sum of the Accumulation Value of the Base Policy and the Accumulation Value of each Layer as described in the Accumulation Values provision.

**Administrative Office** means Transamerica Occidental Life Insurance Company, Box 419521, Kansas City, Missouri 64141-6521.

**Age** means the Insured's age in years on the Policy Date, Layer Date, policy anniversary or Layer anniversary, as applicable, if the Insured's birthday is on that date. Otherwise, it means the Insured's age in years on his or her last birthday prior to the Policy Date, Layer Date, policy anniversary or Layer anniversary, as applicable.

The **Base Policy** is this policy excluding any Layers and any Riders.

The **Beneficiary** is the person you designate to receive the death benefit under this policy.

**Cash Value** means the Accumulation Value less any applicable Surrender Penalty.

**Free-Look Period** means the initial period of time after you first receive this policy and during which you have the right to examine and return this policy for a full refund of any premiums paid. This period is shown on page 1 of the policy.

A **Gross Premium** is 100% of any premium you pay.

**Home Office** means Transamerica Occidental Life Insurance Company, 4333 Edgewood Road, N.E., Cedar Rapids, Iowa 52499.

**Insured** means the person whose life is covered under this policy. The Insured is shown in the Policy Data.

**Lapse** means termination of the policy at the end of the Grace Period due to insufficient premium, unloaned Accumulation Value or unloaned Cash Value. If there is remaining Net Cash Value at the end of the Grace Period, it will be applied to the Nonforfeiture Option.

A **Layer** is the coverage provided by an increase in the face amount of this policy.

A **Layer Date** is the effective date of a Layer of coverage. We will use the Layer Date to determine the Layer anniversaries and Layer years.

**Marketing Office** means Transamerica Occidental Life Insurance Company, Box 512101, Los Angeles, California 90015-0101.

**Exercising Policy Rights** -- If ownership of this policy is shared by more than one person, all such persons must sign each Written Request to exercise any right under this policy.

**How to Change the Owner** -- You may change the Owner while the Insured is living by notifying us in a form and manner acceptable to us. The change will not be effective until we record it at our Administrative Office.

**Assignment of the Policy** -- We are not responsible for the adequacy of any assignment. However, if you file the assignment with us and we record it at our Administrative Office, your rights and those of any revocable Beneficiary will be subject to it.

**THE BENEFICIARY**

**Who Receives the Death Benefit** -- If the Insured dies while this policy is in force, we will pay the death benefit to the Beneficiary. The Beneficiary is as designated in the application, unless changed as shown under "How to Change a Beneficiary" below. If the Beneficiary is a partnership, we will pay the death benefit to the partnership as it existed when the Insured died.

**Protection of the Death Benefit** -- To the extent permitted by law, no death benefit will be subject to the claims of the Beneficiary's creditors or to any legal process against the Beneficiary.

**If the Beneficiary Dies** -- If any Beneficiary dies before the Insured, that Beneficiary's interest in the death benefit will end. If any Beneficiary dies at the same time as the Insured, or within 30 days after the Insured, that Beneficiary's interest in the death benefit will end if no benefits have been paid to that Beneficiary. If the interest of all designated beneficiaries has ended when the Insured dies, we will pay the death benefit to you. If you are not living at that time, we will pay the death benefit to your estate.

**How to Change a Beneficiary** -- You may change the designated Beneficiary while the Insured is living by notifying us in a form and manner acceptable to us. The change will not be effective until we record it at our Administrative Office. Even if the Insured is not living when we record the change, the change will take effect as of the date it was signed. However, any benefits we pay before we record the change will not be subject to the change.

A Beneficiary designated irrevocably may not be changed without the written consent of that Beneficiary.

**PAYMENT OF THE DEATH BENEFIT**

**Proof of Death** -- We will pay any benefit payable because of death when we receive due proof of the Insured's death while this policy was in force. The proof must be sent to us at our Administrative Office. We will send appropriate forms to the Beneficiary upon request. Any of our agents will help the Beneficiary fill out the forms without charge.

**Death Benefit** -- The amount of the death benefit may be affected by other policy provisions, such as Policy Loans, Misstatement of Age or Sex and Partial Surrenders.

To the extent that the death benefit is increased to maintain qualification as a life insurance policy, appropriate adjustments will be made in any Monthly Deductions or supplemental benefits as of that time, retroactively or otherwise, that are consistent with such an increase. Retroactive adjustments to the Monthly Deduction may be deducted from the Accumulation Value or may be made by right of setoff against any death benefits payable. Prospective adjustments will be reflected in the Monthly Deduction.

If the policy is changed to Paid-Up Life Insurance, the death benefit will be as described in the Nonforfeiture Options provision under Option 1. Paid-Up Life Insurance.

**PREMIUMS**

We will accept any amount you send us as a premium payment while this policy is in force, subject to the Premium Limitation provision and these conditions:

1. The minimum initial premium shown in the Policy Data is payable on or before the Policy Date. Subsequent premiums may be sent to our Administrative Office or you may pay them to an agent we authorize. We will give you a receipt if you ask for one. Premiums received on or before the Policy Date will only begin to earn interest as of the Policy Date.

2. You must pay the Required Premium for the Base Policy for the Required Premium Period shown in the Policy Data. These premiums may be paid cumulatively in advance. At the end of each policy year in the Required Premium Period, we will calculate the cumulative total of all Gross Premiums paid for the Base Policy less any refunds, Partial Surrenders and Surrender Penalty Free Withdrawals. This amount must equal or exceed the cumulative sum of the Required Premium for the Base Policy for the number of policy years completed, or your policy will enter the Grace Period.

   If you request an increase in the face amount of this policy, then you must also pay the Layer's Required Premium for that Layer's Required Premium Period. The Layer's Required Premium Period begins on the Layer effective date. These premiums may be paid cumulatively in advance. At the end of each Layer year in the Layer's Required Premium Period, we will calculate the cumulative total of all Gross Premiums paid for that Layer less any refunds, Partial Surrenders and Surrender Penalty Free Withdrawals taken from that Layer. This amount must equal or exceed the cumulative sum of the Layer's Required Premium for the number of Layer years completed. If this amount is less than the cumulative sum of the Layer's Required Premium for the number of Layer years completed, we will: (i) determine the cumulative total of all Gross Premiums paid for the Base Policy and all Layers less any refunds, Partial Surrenders and Surrender Penalty Free Withdrawals; and (ii) compare that total to the corresponding cumulative sum of the required premiums for the Base Policy and all Layers for the number of policy and Layer years completed. If the amount in (i) is less than the amount in (ii), then your policy will enter the Grace Period.

3. You may pay premiums at any time prior to policy anniversary at Age 100. Each premium must be at least $25 and may not exceed the limits described in the Premium Limitation provision below.

If you stop paying premiums after the Required Premium Period, your coverage will continue until the Net Cash Value is insufficient to pay the Monthly Deduction due. At that time, your policy will enter the Grace Period. (See Grace Period provision.)

Beginning with the policy anniversary at Age 100, billing will cease and no further premium payments will be accepted.

1-11212102                                                                    PAGE 9

2. a monthly policy date when the policy's Accumulation Value minus any existing loan is less than the total Monthly Deductions due.

After all Required Premium Periods and prior to the policy anniversary at Age 100, a Grace Period is a period of 61 days beginning on a monthly policy date when the policy's Cash Value minus any existing loan is less than the total Monthly Deductions due.

After the policy anniversary at Age 100, a Grace Period is a period of 61 days beginning on a policy anniversary on which any loan interest due has not been paid in cash, and the policy's Accumulation Value minus any existing loan is less than the loan interest due.

If this policy enters the Grace Period, we will let you know by sending you a Notice. The Notice will tell you the amount you must pay to keep the policy in force. You must pay this amount before the Grace Period ends.  If you do not pay enough, this policy will Lapse at the end of the 61 days, subject to the Nonforfeiture Options provision. At the end of the Grace Period, we will calculate the Net Cash Value of this policy. This amount will be applied to the Nonforfeiture Option that you choose. (See Nonforfeiture Options provision.)

During the Grace Period, we will not charge interest on the amount due.  If the Insured dies during the Grace Period and before you pay the amount due, we will subtract from the death benefit the amount required to provide insurance to the date the Insured died.

**Premium Qualification Credit** -- On each policy anniversary during the Required Premium Period for the Base Policy, if you have paid the cumulative Required Premiums for the Base Policy as described in the Premiums provision, you will qualify for the Premium Qualification Credit for that policy year. We will add the Premium Qualification Credit to the Accumulation Value of the Base Policy at the beginning of the following policy year. The credit will be a percentage of the Base Policy s required premium as shown in the Policy Data.

On each Layer anniversary during the Required Premium Period for each Layer, if you have paid the cumulative Required Premiums for the Layer as described in the Premiums provision, you will qualify for the Premium Qualification Credit for that Layer year. We will add the Premium Qualification Credit to the Accumulation Value of that Layer at the beginning of the following Layer year. The credit will be a percentage of the Layer s Required Premium as shown in the Policy Data.

**Reinstatement** -- If this policy lapses or is changed to Paid-Up Life Insurance, it may be reinstated provided it was not surrendered. To Reinstate the policy, you must meet the following conditions:

1. You must request Reinstatement in writing within three years after the date of Lapse or change to Paid-Up Life Insurance.

2. The Insured must provide evidence of insurability satisfactory to us.

3. If any loans existed when the policy lapsed or was changed to Paid-Up Life Insurance, you must repay or Reinstate them, with interest. Interest will be compounded annually from the date of Lapse or change to Paid-Up Life Insurance. Interest will be at the loan Reinstatement Interest Rate of 5.50% (5.21% in advance) for a Class A loan and 8.00% (7.40% in advance) for a Class B loan.

plus 3. all Net Premiums paid into it less any refunds since the last monthly policy date, plus interest from the date each premium is received in the Administrative Office to the monthly policy date;

minus 4. the Monthly Deduction charged against it on the last monthly policy date, plus interest on that amount;

minus 5. any Partial Surrenders and Surrender Penalty Free Withdrawals charged against it, including pro rata Surrender Penalties, since the last monthly policy date, plus interest on that amount from each Partial Surrender date and/or Surrender Penalty Free Withdrawal date to the monthly policy date.

The Accumulation Value of the policy (or any Layer) on any specified date that falls between any two monthly policy dates is equal to:

1. the Accumulation Value on the last monthly policy date, plus accrued interest from the last monthly policy date to the specified date;

plus 2. any Premium Qualification Credit amount deposited to it on the last monthly policy date, plus accrued interest on that amount;

plus 3. all Net Premiums paid into it less any refunds since the last monthly policy date, plus accrued interest from the date each premium is received in the Administrative Office to the specified date;

minus 4. the Monthly Deduction charged against it on the last monthly policy date, plus accrued interest on that amount;

minus 5. any Partial Surrenders and Surrender Penalty Free Withdrawals charged against it, including pro rata Surrender Penalties, since the last monthly policy date, plus accrued interest on that amount from each Partial Surrender date and/or Surrender Penalty Free Withdrawal date to the specified date.

A Table of Policy Values is included in this policy. It is based on the information you gave us when the policy was issued. The values shown may change as the declared interest rates, your premium payments, and other factors change from the illustrated data. Every year, we will send you a statement of actual policy values.

**Guaranteed Interest Rates** -- Except for premium received before the Policy Date, the Net Premium accrues interest from the date we receive it in the Administrative Office. Interest is credited monthly on each monthly policy date.

Premiums received on or before the Policy Date will only begin to earn interest as of the Policy Date. The guaranteed minimum interest rate for all policy years is shown in the Policy Data.

Prior to the policy anniversary at Age 100, we may declare an interest rate higher than the guaranteed minimum at any time. We will never declare an interest rate that is lower than the guaranteed minimum interest rate. We may change this rate at any time without notice.

Beginning at the policy anniversary at Age 100, the policy Accumulation Value will accrue interest at the guaranteed minimum interest rate.

For Class A loans, the interest rate for any portion of the Accumulation Value equal to the amount of any existing policy loan will be the effective annual loan interest rate.

1-11212102                                                                    PAGE 13

**CASH VALUE**

You may borrow the Net Cash Value, or take part of it or all of it as a partial or full surrender of the policy. All of these transactions are described in this section. We guarantee that the Cash Value always equals or exceeds the amount required by the law in effect at the time of issue in the jurisdiction in which the application for this policy was signed. Policy loans, Partial Surrenders and Surrender Penalty Free Withdrawals will be allocated proportionately among the Cash Values of the Base Policy and any Layer(s).

**Policy Loans** -- If you request a policy loan prior to the end of the Surrender Penalty Period, we will handle it as a Class B loan, subject to the limitation shown in number 1 under the Class B Policy Loan provision. After the end of the Surrender Penalty Period, we will handle one loan request per year as a Class A loan, subject to the limitation shown in number 3 under the Class A Policy Loan provision. After the end of the Surrender Penalty Period, we will treat any loan request after the first request in any policy year as a Class B loan, subject to the limitation shown in number 1 under the Class B Policy Loan provision.

**Class A Policy Loan** -- After the Surrender Penalty Period, we will make Class A loans subject to the following conditions:

1. Such a loan will only be allowed one time during a policy year.

2. The maximum amount allowed as a Class A loan in any one policy year will be the lesser of 10% of the Accumulation Value as of the request date or the maximum loan amount, as described in number 3 below.

3. The maximum loan amount is the policy's Accumulation Value as of the date of the loan request, minus:

    a. any existing policy loan(s); and

    b. interest on the amount of the loan to the end of the policy year; and

    c. the full Surrender Penalty or two Monthly Deductions, whichever is greater.

    We will calculate the maximum loan amount for the Base Policy and each Layer in a similar manner.

4. You must pay interest on the total loan balance each year in advance. The interest is due on the policy anniversary. The annual loan interest rate is 5.50% (5.21% in advance). If you do not pay the interest when it is due, we will add the amount of interest to the loan. We will charge interest on this amount at the same interest rate being charged on the loan.

5. You must assign the policy to us to the extent of the outstanding loan. If the Insured dies, we will deduct the outstanding loan from the death benefit before we pay the death benefit to the Beneficiary.

6. We will allocate the net loan amount to the Accumulation Values of the Base Policy and any Layers in the same proportion that the maximum loan amount for each bears to the total of the maximum loan amounts for the Base Policy and all Layers.

7. The loan will be secured by that portion of the Accumulation Value equal to the amount of the loan.

If the policy loan interest due is not paid in cash by you, a new loan of the same class (A or B) will be created to cover the interest. The new loan will have the same interest rate as the loan to which it is added (Class A or B). Any loan interest paid in cash by you will apply first to Class B loans, and then to Class A loans.

**Partial Surrender** -- At any time after the Free-Look Period, you may surrender a portion of this policy's Net Cash Value by sending us a Written Request, subject to the limitations described below. We will deduct the surrender amount and any Surrender Penalty from the policy's Accumulation Value.

In any policy year, the maximum amount that you may receive by Partial Surrender is:

        1) the Accumulation Value;

minus  2) any existing policy loans;

minus  3) the sum of 3 Monthly Deductions;

minus  4) the greater of $25 or the full Surrender Penalty.

If you request a Partial Surrender larger than the maximum described above, we will treat it as a request for a full surrender of the policy.

We will calculate the maximum Partial Surrender amount for the Base Policy and each Layer in the same manner.

We will allocate the Partial Surrender among the Accumulation Values of the Base Policy and any Layers based on the proportion that the maximum Partial Surrender amount for each bears to the total of the maximum Partial Surrender amounts for the Base Policy and all Layers. The amounts so allocated will be deducted from the Accumulation Value(s) of the Base Policy and Layer(s).

During the Surrender Penalty Period for the policy or Layer(s), a pro rata Surrender Penalty will be assessed on any surrender amount you request that exceeds the amount eligible for Surrender Penalty Free Withdrawal as described below. The minimum pro rata Surrender Penalty is $25. After all Surrender Penalty Periods have expired, we will assess a $25 Surrender Penalty on any surrender amount you request that exceeds the amount available for Surrender Penalty Free Withdrawal. The Surrender Penalty will be deducted from the Accumulation Value of the newest Layer. If the Accumulation Value of that Layer is insufficient, the remainder will be deducted successively from the Accumulation Value of the next most recent Layer(s) and then from the Accumulation Value of the Base Policy as necessary until the Surrender Penalty has been fully deducted.

If the Death Benefit Option is option 1, we will also reduce the total face amount of the policy by the amount of the Partial Surrender that exceeds the Surrender Penalty Free Withdrawal amount and by the Surrender Penalty. If the Death Benefit Option is option 3, we will also reduce the total face amount of the policy by the Surrender Penalty on the amount that exceeds the amount eligible for a Surrender Penalty Free Withdrawal and the amount of the Partial Surrender that exceeds the greater of:

1. the amount eligible for a Surrender Penalty Free Withdrawal; or

During any Required Premium Period, the sum of all Surrender Penalty Free Withdrawals and Partial Surrenders may not exceed the sum of all Gross Premiums Paid less the sum of all refunds and the sum of all Required Premiums since the Policy Date. (See number 2 of the Premiums provision.)

Whenever you request a Partial Surrender after the first policy year, we will process the amount that is eligible as a Surrender Penalty Free Withdrawal. The remainder of any amount you request will be processed as a Partial Surrender.

We will deduct the full Partial Surrender amount you request from the policy's Accumulation Value. We will not deduct that portion of your request that we treat as a Surrender Penalty Free Withdrawal from the policy's face amount.

**OPTION TO CHANGE THE FACE AMOUNT**

**Decreasing the Face Amount** -- You may request a decrease in the face amount of this policy if all the following conditions are met:

1. You must make a Written Request to us.
2. At the request date, this policy must be in force and the Insured must be living.
3. The amount of the reduction in face amount must be at least $25,000.
4. The new face amount may not be less than our published minimum face amount for this plan.

The decrease of the face amount of this policy may cause a change in the Monthly Deduction rates and monthly expense charge per thousand rates.

A Surrender Penalty will result from the decrease in the face amount if the decrease is made during the Surrender Penalty Period of the Base Policy or any Layer. The Surrender Penalty for the Base Policy or a Layer is equal to A times B divided by C, where:

A   is the full Surrender Penalty for the current policy or Layer year;
B   is the amount of the decrease allocated to the Base Policy or Layer; and
C   is the face amount of the Base Policy or Layer before the decrease.

If you request an increase in the face amount of this policy, and then at a later time you request a decrease in the face amount of this policy, we will apply the decrease in the following order. We will first apply the decrease to the newest Layer. We will then successively apply the decrease in reverse order to any previous increases; we will begin with the next most recent Layer. If the amount of the decrease is greater than the total of all previous increases, we will then apply the remaining decrease to a portion of the original face amount of this policy.

We will issue new Policy Data pages showing the new face amount(s). After the decrease, the Monthly Deduction rates, monthly expense charge per thousand rates, and any future Surrender Penalties will be based on the new total face amount of this policy.

If the face amount of this policy is decreased during any Required Premium Period, we will recalculate the Required Premium for the remainder of the Required Premium Period based on the new face amount.

**Option 1. Paid-Up Life Insurance** -- Subject to the conditions of this option, this policy may be continued as single premium Paid-Up Life Insurance. The following conditions will apply:

1. If the policy has not reached the end of the Grace Period as described above and you wish to continue it as Paid-Up Life Insurance, the policy must be in force on the date that you request the change.

2. When you exercise this option, this policy will be continued as Paid-Up Life Insurance.

3. The amount of Paid-Up Life Insurance is calculated by using the Net Cash Value divided by the Net Single Premium, times $1,000. The Net Single Premium is based on the Insured's sex, smoker or nonsmoker status and attained age. The Net Single Premiums are shown in the Policy Data.

   The Insured must submit satisfactory evidence of insurability if the difference between the amount of Paid-Up Life Insurance and the Net Single Premium (Net Cash Value of this policy) for the Paid-Up Life Insurance is greater than the difference under this policy between the death benefit and the Accumulation Value on the date this option is exercised.

   If we do not receive satisfactory evidence of insurability, the amount of the Paid-Up Life Insurance elected under this option will be reduced so that the difference between the amount of Paid-Up Life Insurance and the Net Single Premium is equal to the difference between the death benefit and the Accumulation Value of the policy immediately before the paid-up option is elected. Any excess Net Cash Value remaining after the purchase of Paid-Up Life Insurance will be refunded to you.

4. The effective date of the Paid-Up Life Insurance will be the date the premium was due before entering the Grace Period.

5. The Net Single Premiums used for the single premium Paid-Up Life Insurance will be those in effect as of the date this option was exercised. However, they will not exceed the rates in the Table of Maximum Net Single Premiums for Paid-Up Life Insurance per $1,000 in the Policy Data.

6. There is a Table of Paid-Up Life Insurance per $1,000 of Net Cash Value in the Policy Data.

7. The Paid-Up Life Insurance will have cash values based on interest at the Guaranteed Minimum Interest Rate shown in the Policy Data. The cash value of the Paid-Up Life Insurance is equal to the Net Single Premium for the face amount of the Paid-Up Life Insurance, less any loans made after the effective date of the paid-up life insurance. The Net Single Premium is based on the Insured's sex, smoker or nonsmoker status and attained age.

8. When you exercise this option, the following provisions of this policy will not apply to the Paid-Up Life Insurance: Monthly Deductions, Partial Surrender and Surrender Penalty Free Withdrawal. After you exercise this option, you may not pay any additional premiums and you will not receive any additional Premium Qualification Credits.

You may purchase Alternative Paid-Up Life Insurance if you meet these conditions:

1. You must send a Written Request and the policy to us. We must receive the request within 60 days of the date you signed it and while this option is still in force. You will surrender all rights under this policy in exchange for the Alternative Paid-Up Life Insurance.

2. This policy must have Net Cash Value above any existing loan and Surrender Penalty when you request the option.

3. You must agree to accept a new policy loan interest rate provision. The new rate may be a variable one.

4. You must agree that all Riders attached to this policy will terminate. We will add the Cash Value, if any, of the Riders attached to this policy to the policy's Cash Value. We will use the total amount to determine the amount of Alternative Paid-Up Life Insurance you may purchase.

5. The Insured must not have reached his or her 100th birthday.

**Evidence of Insurability** -- When you request this option, we may require evidence of insurability. To determine whether evidence of insurability is required, we must perform a calculation. If you have one or more Layers of coverage in addition to the base coverage, you may have more than one amount of Alternative Paid-Up Life Insurance.

A = the sum of the amounts of Alternative Paid-Up Life Insurance.
B = the sum of the Net Cash Values used to purchase the Alternative Paid-Up Life Insurance.
C = the sum of the death benefits payable under this Base Policy and any Layers on the date you choose this option.
D = the sum of the Accumulation Values under this Base Policy and any Layers on the date you choose this option.

If (A − B) is greater than (C − D), then the Insured must provide evidence of insurability satisfactory to us. In all other situations, evidence of insurability is not required.

If the Insured does not provide evidence, satisfactory to us, that the Insured is still insurable, we will reduce the amount of Alternative Paid-Up Life Insurance accordingly. If there is any Net Cash Value left over after you purchase Alternative Paid-Up Life Insurance, we will refund it to you.

**Alternative Paid-Up Life Insurance Policy** -- We will issue and date the Alternative Paid-Up Life Insurance policy as of the date you exercise this option. If your request occurs within 30 days after a policy anniversary, the surrender value of the Alternative Paid-Up Life Insurance will not be less than the surrender value on that anniversary, less any loans, Partial Surrenders (including pro rata surrender penalties), and Surrender Penalty Free Withdrawals made after the last policy anniversary.

**Amount We Pay is Limited in the Event of Suicide** -- If the Insured dies by suicide, while sane or insane, within two years from the date of issue, we will be liable only for the amount of premiums paid, less any Partial Surrenders, Surrender Penalty Free Withdrawals, loans and loan interest due.

If you request an increase in the face amount of this policy, this suicide provision will start anew with respect to the increase, beginning on the Layer Date. The new suicide period will be applicable only to the face amount of that Layer.

**Misstatement of Age or Sex in the Application** -- If there is a misstatement of the Insured's age or sex in the application, we will adjust the excess of the death benefit over the Accumulation Value to that which would be purchased by the most recent Monthly Deduction at the correct age or sex. There will be no adjustment beyond the Insured's 100th birthday.

**The Policy is our Contract with You** -- We have issued this policy in consideration of the application and your initial premium payment. A copy of the application is attached and is part of this policy. The policy, including the application and any endorsements and Riders, forms our contract with you. All statements made by or for the Insured will be considered representations and not warranties. We will not use any statement made by or for the Insured to deny a claim unless the statement is in the application and the application is attached to this policy when we issue, deliver or Reinstate the policy or Layer.

**Who Can Make Changes in the Policy** -- Only our President or a Vice President together with our Secretary have the authority to make any change in this policy. Any change must be in writing.

**Termination of Insurance** -- This policy will terminate at the earliest of:

1.    the date of your Written Request to surrender or terminate; or

2.    the date of Lapse.

**No Dividends are Payable** -- This is nonparticipating insurance. It does not participate in our profits or surplus. We do not distribute past surplus or recover past losses by changing the Monthly Deduction rates.

**SETTLEMENT PROVISIONS**

When the Insured dies while the policy is in force, we will pay the death benefit in a lump sum unless you or the Beneficiary choose a settlement option. You may choose a settlement option while the Insured is living. The Beneficiary may choose a settlement option after the Insured has died. The Beneficiary's right to choose will be subject to any settlement agreement in effect at the Insured's death.

You may also choose one of these options as a method of receiving the surrender proceeds, if any are available under this policy.

## TABLE B
### Monthly Installment for Each $1,000 Payable under Option B

**Male Payee**

| Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | $2.90 | $2.89 | 26 | $3.20 | $3.19 | 41 | $3.77 | $3.71 | 56 | $4.92 | $4.59 | 71 | $7.27 | $5.42 |
| 12 | 2.91 | 2.91 | 27 | 3.22 | 3.21 | 42 | 3.82 | 3.76 | 57 | 5.03 | 4.66 | 72 | 7.48 | 5.45 |
| 13 | 2.93 | 2.92 | 28 | 3.25 | 3.24 | 43 | 3.88 | 3.81 | 58 | 5.15 | 4.73 | 73 | 7.68 | 5.46 |
| 14 | 2.94 | 2.94 | 29 | 3.28 | 3.27 | 44 | 3.94 | 3.86 | 59 | 5.27 | 4.80 | 74 | 7.88 | 5.48 |
| 15 | 2.96 | 2.96 | 30 | 3.31 | 3.30 | 45 | 4.00 | 3.91 | 60 | 5.40 | 4.87 | 75 | 8.08 | 5.49 |
| 16 | 2.98 | 2.97 | 31 | 3.34 | 3.33 | 46 | 4.07 | 3.97 | 61 | 5.53 | 4.94 | 76 | 8.27 | 5.50 |
| 17 | 3.00 | 2.99 | 32 | 3.38 | 3.36 | 47 | 4.14 | 4.02 | 62 | 5.68 | 5.00 | 77 | 8.46 | 5.50 |
| 18 | 3.01 | 3.01 | 33 | 3.41 | 3.39 | 48 | 4.21 | 4.08 | 63 | 5.83 | 5.07 | 78 | 8.63 | 5.51 |
| 19 | 3.03 | 3.03 | 34 | 3.45 | 3.43 | 49 | 4.28 | 4.14 | 64 | 5.98 | 5.13 | 79 | 8.79 | 5.51 |
| 20 | 3.05 | 3.05 | 35 | 3.49 | 3.46 | 50 | 4.36 | 4.20 | 65 | 6.15 | 5.18 | 80 | 8.94 | 5.51 |
| 21 | 3.08 | 3.07 | 36 | 3.53 | 3.50 | 51 | 4.44 | 4.26 | 66 | 6.32 | 5.24 | 81 | 9.07 | 5.51 |
| 22 | 3.10 | 3.09 | 37 | 3.57 | 3.54 | 52 | 4.53 | 4.32 | 67 | 6.50 | 5.28 | 82 | 9.18 | 5.51 |
| 23 | 3.12 | 3.11 | 38 | 3.62 | 3.58 | 53 | 4.62 | 4.39 | 68 | 6.68 | 5.33 | 83 | 9.28 | 5.51 |
| 24 | 3.14 | 3.14 | 39 | 3.67 | 3.62 | 54 | 4.71 | 4.46 | 69 | 6.88 | 5.36 | 84 | 9.36 | 5.51 |
| 25 | 3.17 | 3.16 | 40 | 3.72 | 3.67 | 55 | 4.81 | 4.52 | 70 | 7.07 | 5.40 | 85 | 9.42 | 5.51 |

**Female Payee**

| Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | $2.83 | $2.83 | 26 | $3.08 | $3.07 | 41 | $3.54 | $3.52 | 56 | $4.51 | $4.35 | 71 | $6.73 | $5.36 |
| 12 | 2.84 | 2.84 | 27 | 3.10 | 3.10 | 42 | 3.59 | 3.56 | 57 | 4.61 | 4.42 | 72 | 6.94 | 5.40 |
| 13 | 2.86 | 2.85 | 28 | 3.12 | 3.12 | 43 | 3.63 | 3.60 | 58 | 4.71 | 4.50 | 73 | 7.16 | 5.43 |
| 14 | 2.87 | 2.87 | 29 | 3.15 | 3.14 | 44 | 3.68 | 3.65 | 59 | 4.82 | 4.57 | 74 | 7.38 | 5.48 |
| 15 | 2.88 | 2.88 | 30 | 3.17 | 3.17 | 45 | 3.73 | 3.69 | 60 | 4.94 | 4.65 | 75 | 7.60 | 5.47 |
| 16 | 2.90 | 2.90 | 31 | 3.20 | 3.19 | 46 | 3.78 | 3.74 | 61 | 5.06 | 4.72 | 76 | 7.82 | 5.48 |
| 17 | 2.91 | 2.91 | 32 | 3.23 | 3.22 | 47 | 3.84 | 3.79 | 62 | 5.19 | 4.80 | 77 | 8.04 | 5.49 |
| 18 | 2.93 | 2.93 | 33 | 3.26 | 3.25 | 48 | 3.90 | 3.85 | 63 | 5.33 | 4.88 | 78 | 8.25 | 5.50 |
| 19 | 2.95 | 2.94 | 34 | 3.29 | 3.28 | 49 | 3.96 | 3.90 | 64 | 5.47 | 4.95 | 79 | 8.45 | 5.51 |
| 20 | 2.96 | 2.96 | 35 | 3.32 | 3.31 | 50 | 4.03 | 3.96 | 65 | 5.63 | 5.02 | 80 | 8.64 | 5.51 |
| 21 | 2.98 | 2.98 | 36 | 3.35 | 3.34 | 51 | 4.10 | 4.02 | 66 | 5.79 | 5.09 | 81 | 8.82 | 5.51 |
| 22 | 3.00 | 2.99 | 37 | 3.39 | 3.37 | 52 | 4.17 | 4.08 | 67 | 5.96 | 5.15 | 82 | 8.97 | 5.51 |
| 23 | 3.02 | 3.01 | 38 | 3.42 | 3.41 | 52 | 4.25 | 4.14 | 68 | 6.14 | 5.21 | 83 | 9.11 | 5.51 |
| 24 | 3.04 | 3.03 | 39 | 3.46 | 3.44 | 54 | 4.33 | 4.21 | 69 | 6.33 | 5.27 | 84 | 9.23 | 5.51 |
| 25 | 3.06 | 3.05 | 40 | 3.50 | 3.48 | 55 | 4.42 | 4.28 | 70 | 6.53 | 5.32 | 85 | 9.32 | 5.51 |

Ages younger than 11 are the same as shown for age 11, and ages older than 85 are the same as shown for age 85.

**TRANS     ERICA OCCIDENTAL LIFE INSUR/    E COMPANY**

## FULL DEATH BENEFIT RIDER

**Transamerica Occidental Life Insurance Company** has issued this rider as part of the policy to which it is attached. It is subject to all of the provisions, definitions, and conditions of the policy that do not conflict with this rider. In case of conflict between the policy and this rider, the rider will control.

### DEFINITIONS

In this rider:

**Age** as used in this rider means the insured's age, or exact age, if any, as defined in the policy.

The **Insured** under this rider means the insured, or joint insureds, if any, as defined in the policy.

The **Monthly Deduction** for this rider is an amount we withdraw from the policy's accumulation value at the beginning of each policy month.

**Reinstate** means to restore coverage after the policy and this rider have lapsed.

### DEATH BENEFIT

Beginning with the policy anniversary nearest age 100, the death benefit will be the death benefit as defined and determined by the policy on the day before the policy anniversary nearest age 100. The death benefit will be subject to the adjustments and conditions stated in this rider. We will reduce the death benefit by any existing loans. The death benefit will be subject to adjustment after age 100 for misstatement of age or sex or gender, as applicable.

### REINSTATEMENT

This rider is subject to the Reinstatement provision of the policy.

### RIDER MONTHLY DEDUCTIONS

We will take the monthly deduction for this rider starting on the policy anniversary nearest age 90. We will continue to take the monthly deduction for this rider until the policy anniversary nearest age 100. The amount of the monthly deduction will be no more than $1.00 times .001, times the difference between the death benefit and the accumulation value of the policy at the beginning of the policy month.

### GENERAL PROVISIONS

**Grace Period** -- This rider is subject to the Grace Period provision of the policy.

**Termination of Insurance** -- This rider will terminate at the earliest of:

1. the date the insured dies under an individual policy; or

2. the date the survivor dies under a joint and last survivor policy; or

3. the date the policy lapses; or

4. the date the policy is continued under a nonforfeiture option; or

5. the date we receive your written request to surrender or terminate the policy or this rider; or

6. the maturity date of the policy, if any.

**Consideration** -- We have issued this rider in consideration of: (1) the application; and (2) payment of the premium. A copy of the application is attached to the policy.

Signed for the Company at Los Angeles, California and effective on the date of issue of the policy to which this rider is attached, unless a different date is shown here.

Secretary

President

1-056 11-101

**TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY**

### EXTRA SURRENDER PENALTY FREE WITHDRAWAL ENDORSEMENT

Transamerica Occidental Life Insurance Company has issued this endorsement as part of the policy to which it is attached.

Wherever the term "Surrender Penalty Free Withdrawal" appears in the policy to which this endorsement is attached, it is also meant to include the term "Extra Surrender Penalty Free Withdrawal". There is only one exception; that is in the section of the policy titled "Surrender Penalty Free Withdrawal", "(a)". That calculation of the eligible amount for surrender without penalty will NOT include "Extra Surrender Penalty Free Withdrawals".

### DEFINITIONS

In this endorsement:

**Extra Withdrawal** means Extra Surrender Penalty Free Withdrawal.

**We** means Transamerica Occidental Life Insurance Company.

**Withdrawal** means Surrender Penalty Free Withdrawal.

**You** means the Owner.

This Extra Withdrawal may be taken in addition to the Withdrawal in the policy to which this endorsement is attached. If requested at the same time, the Extra Withdrawal will be processed first. Then, the Withdrawal will be processed based on the remaining accumulation value.

At any time after the first policy year, you may make an Extra Withdrawal without a partial surrender penalty; the limits are outlined below.

Your Extra Withdrawals may only be taken if we receive written proof that the Insured requires medical care for one of these conditions: heart attack; stroke; cancer (malignant tumor); renal failure; or major organ transplant. This proof will consist of a doctor's certification acceptable to us. We may request additional medical information from the doctor submitting the certification or any doctor we deem qualified. While a request is pending, we reserve the right to obtain a second medical opinion; we also reserve the right to have the Insured examined at our expense.

The minimum amount of an Extra Withdrawal is $100.

When you request an Extra Withdrawal, we will calculate the maximum amount eligible for surrender without a Company imposed penalty, as follows:

1) 10% of the policy's current accumulation value as of the request date;

less  2) the sum of all Extra Withdrawals since the last policy anniversary.

The total amount available from all Withdrawals, Extra Withdrawals and partial surrenders shall not exceed:

1) the current accumulation value as of the request date;

less  2) any existing policy loans;

less  3) the sum of three monthly deductions;

less  4) the greater of $25 or the full surrender penalty.

During any required premium period, the total amount available from all Withdrawals, Extra Withdrawals and partial surrenders also may not exceed:

    1) the sum of all gross premiums paid;

less    2) the sum of all required premiums since the policy date.

(See # 2 of the Premiums provision in the policy.)

We will process an Extra Withdrawal for the eligible amount. The remainder, if any, of the amount you request will be processed first as a Withdrawal; any excess over that amount will be processed as a partial surrender.

We will deduct the amount withdrawn from the policy's accumulation value.

Signed for Transamerica Occidental Life Insurance Company at Los Angeles, California on the date of issue of this policy.

Secretary

President

## ACCEL ATED DEATH BENEFIT OPTION EI. )RSEMENT

Transamerica Occidental Life Insurance Company has issued this endorsement as a part of policy number 60109065 ("the policy").

**NOTICE:** Benefits advanced under this option may be taxable. As with all tax matters, the Owner should consult a personal tax advisor to assess the impact of this benefit on the Owner and the policy.

While the policy is in force, we will pay an Accelerated Death Benefit to you, upon your request, subject to all the provisions and limitations of this endorsement.

### DEFINITIONS

In this endorsement:

**Accelerated Death Benefit** is the amount we pay under this option.

**Administrative Fee** is the $250.00 that will be charged at the time each Accelerated Death Benefit is paid.

**Effective Date** is the date we approve your written request to exercise this option.

**Immediate Family Members** are members of either the Insured's or Owner's family who may be described as follows: spouse (includes common law spouse), children, stepchildren, parents, grandparents, grandchildren, brothers and sisters and their spouses (includes common law spouse).

**Insured** means only the Insured covered under the policy and not any other individuals covered for additional riders or benefits.

**Physician** is an individual, other than the Insured, the Owner, or Immediate Family Member, who is a doctor of medicine or osteopathy, licensed in the jurisdiction in which the advice is given or diagnosis is made and who is acting within the scope of that license.

**Policy Basic Death Benefit** means the death benefit provided by the policy, any policy layer, any Supplemental Adjustable Life Insurance Rider and any level term rider on the life of the Insured. It does not include any death benefit provided by any other riders or benefits attached to the policy.

**Policy Charges** means any monthly deductions, any surrender charges or surrender penalties, or any other charges specified in the policy.

**Terminal Illness** is a medical condition, resulting from bodily injury or disease, or both, and:

-- which has been diagnosed by a Physician after the issue date of the policy; and,

-- for which the diagnosis is supported by clinical, radiological, laboratory or other evidence of the medical condition which is satisfactory to us; and,

-- which is not curable by any means available to the medical profession; and,

-- which a Physician certifies is expected to result in death within 12 months of diagnosis and the certification is within 30 days of the Accelerated Death Benefit request.

**"You" and "Your"** mean the Owner

### LIMITATIONS

1. The availability of this option is subject to all the terms of the policy, including contestability and suicide.

2. No benefit will be paid if Terminal Illness results from intentionally self-inflicted injury(ies) at any time.

3. At each request to exercise this option, there must be at least 2 years remaining from the Effective Date to the expiry or maturity date of each portion of the Policy Basic Death Benefit.

4. The Owner may not exercise this option:

   a) if required by law to use the Accelerated Death Benefit to meet the claims of creditors, whether in bankruptcy or otherwise, or

   b) if required by a government agency to use the Accelerated Death Benefit in order to apply for, obtain, or otherwise keep a government benefit or entitlement, or

   c) until there is only one surviving Joint Insured if the policy is a Joint and Last Survivor policy.

5. This option is not available if the maximum Accelerated Death Benefit has been paid.

6. The face amount of the policy on which this option is exercised must be at least $50,000 at the time of the first written request.

1-005 84-195                                                                    PAGE 1

## AMOUNT OF THE ACCELERATED DEATH BENEFIT

1. The Owner can request an Accelerated Death Benefit payment in any amount subject to the following minimum and maximum. The minimum Accelerated Death Benefit allowed will be $10,000. The maximum Accelerated Death Benefit allowed for all policies combined covering the Insured issued by the Company will be the lesser of $250,000 or 75% of the combined Policy Basic Death Benefit for those policies as of the first Accelerated Death Benefit payment. If the first Accelerated Death Benefit payment is less than the maximum, then no more than the remaining balance of the maximum can be paid out later as an Accelerated Death Benefit.

2. If there is an outstanding loan on the policy, the Accelerated Death Benefit payment may be reduced to repay a prorata portion of the policy loan.

3. At the time we pay the Accelerated Death Benefit, if the policy is in the grace period, we will deduct any unpaid premium in accordance with the grace period provision in the policy.

4. The $250.00 Administrative Fee will be deducted from each Accelerated Death Benefit payment.

### PREMIUM

Premium billing and premium payment requirements will continue, subject to the adjustments described below.

## EFFECT OF THE ACCELERATED DEATH BENEFIT PAYMENT ON THE POLICY

After an Accelerated Death Benefit is paid, the policy and any riders and benefits will remain in force subject to the following adjustments:

1. The Policy Basic Death Benefit after payment of an Accelerated Death Benefit will equal the amount of the Policy Basic Death Benefit before the payment of the Accelerated Death Benefit minus the result of multiplying (a) by (b), where:

   (a) is the Accelerated Death Benefit; and

   (b) is 1 (one) plus an interest rate that is the greater of,

       (i) the federal interest rate under Internal Revenue Code (IRC) section 846(c)(2), or

       (ii) the policy loan effective interest rate.

2. The Policy Basic Death Benefit, and, if applicable, the policy's face amount, accumulation value, cash value, policy loan, and required premium will be adjusted as of the Effective Date. The adjustments to the Policy Basic Death Benefit will be made in the following order: (1) level term rider(s) on the Insured, if any, beginning with the most recent rider; (2) policy layer(s), if any, beginning with the most recent layer; and, (3) remaining portions of the Policy Basic Death Benefit. New Policy Charges and premiums will be based on the rates in effect for the policy's resulting face amount.

3. We will provide new policy data pages showing the reduced coverage amount resulting from the Accelerated Death Benefit payment.

### EXERCISING THE OPTION

We must receive a written request to exercise this option at the Home Office or our designated Administrative Office within 30 days after the certification of diagnosis of the Terminal Illness, or as soon as reasonably possible. The request should include the name of the Insured, the policy number and, must be signed and dated by the Owner. If the policy has an irrevocable beneficiary, that person(s) must also sign the request. If the policy is assigned, we must receive a completed and signed release of assignment. If the policy was issued in a community property state, we may require your spouse to sign the request.

### PROOF OF TERMINAL ILLNESS

We must receive written proof of the Insured's Terminal Illness before we make an Accelerated Death Benefit payment. This proof will consist of a Physician's certification acceptable to us. We may request additional medical information from the Physician submitting the certification or any Physician we consider qualified.

### PHYSICAL EXAMINATION

While a claim is pending, we reserve the right to obtain a second medical opinion and to have the Insured examined at our expense.

### TIME OF PAYMENT OF CLAIMS

After we receive satisfactory written proof of Terminal Illness, we will pay the Accelerated Death Benefit due.

1-005 84-195

## PAYMENT OF CLAIMS

If approved, the Accelerated Death Benefit will be paid in a lump sum to the Owner. If the Insured dies before payment is made, we will pay the entire death benefit of the policy to the Beneficiary in accordance with the policy provisions.

## LEGAL ACTIONS

No legal action may be brought to recover the payment requested under this option within 60 days after written proof of Terminal Illness has been given to us. No such action may be brought after 3 years from the time written proof of the Insured's Terminal Illness has been given to us.

## LIVING BENEFIT RIDER

If the policy contains a Living Benefit Rider and there is a simultaneous request to exercise the Living Benefit and the Accelerated Death Benefit Option, the Living Benefit request will be processed first; the Accelerated Death Benefit Option request will be processed second and will be based on the adjusted policy values resulting after payment of the Living Benefit.

## TAX QUALIFICATION

Any amount payable under this option is intended to qualify for federal income tax exclusion (to the maximum extent possible). To that end, the provisions of this endorsement and the policy to which it is attached are to be interpreted to ensure or maintain such tax qualification, notwithstanding any other provisions to the contrary. The Company reserves the right to amend this endorsement and the policy to which it is attached to reflect any clarifications that may be needed or are appropriate to maintain such qualification, or to conform this endorsement and the policy to which it is attached to any applicable changes in the tax qualification requirements. You will be sent a copy of any such amendment.

Signed for the Company at Los Angeles, California, on the date of issue of the policy unless a different date is shown here.

Secretary

President

1-005  84-195

PAGE 3

## AUTOMATIC PREMIUM LOAN ENDORSEMENT
### (for policies containing a Required Annual Premium)

Transamerica Occidental Life Insurance Company has issued this endorsement as a part of the policy to which it is attached.

When the Automatic Premium Loan provision is made effective by the owner in the application at the time of issue, any portion of the required annual premium which remains unpaid at the end of a grace period will be paid by automatic premium loan. These rules will apply:

(1) We will process an automatic premium loan if there is enough net cash value to pay both the required annual premium due <u>and</u> interest due on the automatic premium loan. If there is not enough net cash value to pay both the required annual premium due <u>and</u> the interest on the automatic premium loan, we will not make an automatic premium loan. The policy will then lapse subject to the nonforfeiture provision.

(2) The Automatic Premium Loan will also be subject to all sections of this policy that pertain to policy loans.

(3) If the Automatic Premium Loan provision is made ineffective by the owner in the application at the time of issue, this provision may be requested by the owner. The request must be in the form of a written notice filed at our Home Office. This provision may also be cancelled by written notice by the owner filed in our Home Office.

The Automatic Premium Loan Provision will terminate at the end of the required annual premium period.

Signed for the Company at Los Angeles, California, on the date of issue of the policy.

Secretary

President

1-002 65-187

Transamerica Occidental
Life Insurance Company
Home Office:  Los Angeles, CA     **APPLICATION AMENDMENT**

*Life Insured:* ALAN NEIL DUMESCO

The Application for Policy No.  60109065          is amended as follows:

QUESTION 1 PART 1:  PLAN APPLIED FOR TRANSULTRA EX,
PREFERRED NON-SMOKER, KIND CODE 2261.

It is agreed that this amendment shall be part of the application for the policy.

Signed at_____on_____
                                                                                                                     Date

(Witness Donald signatures/Diceased Resident Agent, as required)          ALAN NEIL DUMESCO

PE 1-185

Transamerica Occidental
Life Insurance Company
Home Office: Cedar Rapids, IA  52499
Marketing Office: Los Angeles, CA  90015
Administrative Office: P.O. Box 419521
Kansas City, MO  64141-6521

Policy Form  **TU EX**
Individual Life Insurance

**Adjustable Life Insurance**
**Minimum Premium Requirement**
**Shown in the Policy Data**
**Flexible Premiums Payable Thereafter**
**During Life of Insured Up to the Policy**
**Anniversary At Age 100**
**Subject to the Limitations Described**
**in the Premiums Provision**

**Death Benefit Payable at Death of Insured**

**Nonparticipating -- No Annual Dividends**


**THE BENEFITS, VALUES AND/OR INTEREST**
**RATES ARE ON A VARIABLE BASIS**

1-11212102



# Exhibit "B"

04-60573

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA-MORENO

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

MUTUAL BENEFITS CORP.,
JOEL STEINGER a/k/a JOEL STEINER,
LESLIE STEINGER a/k/a LESLIE STEINER,
and PETER LOMBARDI,

Defendants,

VIATICAL BENEFACTORS, LLC,
VIATICAL SERVICES, INC.,
KENSINGTON MANAGEMENT, INC.,
RAINY CONSULTING CORP.,
TWIN GROVES INVESTMENTS, INC.,
P.J.L. CONSULTING, INC.,
SKS CONSULTING, INC., and
CAMDEN CONSULTING, INC.

Relief Defendants.

/

MAGISTRATE JUDGE
GARBER



FILED by ___ D.C.

MAY 0 4 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

## ORDER APPOINTING RECEIVER

WHEREAS, Plaintiff Securities and Exchange Commission ("SEC" or "Commission") has filed an emergency motion for the appointment of a Receiver for Defendant Mutual Benefits Corp. ("MBC") and Relief Defendants Viatical Benefactors, LLC ("VBLLC") and Viatical Services, Inc. ("VSI"), with full and exclusive power, duty, and authority to: administer and manage the business affairs, funds, assets, choses in action and any other property of MBC, VBLLC and VSI; marshal and safeguard all of the assets of MBC, VBLLC and VSI; and take whatever actions are necessary for the protection of the investors; and

WHEREAS, the Commission has made a sufficient and proper showing in support of the relief requested by evidence demonstrating a prima facie case of violations of the federal securities laws by MBC, VBLLC and VSI; and

WHEREAS, the Commission has submitted the credentials of a candidate to be appointed as Receiver of all of the assets, properties, books and records, and other items of MBC, VBLLC and VSI including any properties, assets and other items held in the names of MBC's, VBLLC's and VSI's principals, and the Commission has advised the Court that this candidate is prepared to assume this responsibility if so ordered by the Court;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Roberto Martinez a Colson + Hicks P.A. is hereby appointed the Receiver for MBC, VBLLC and VSI, their subsidiaries, successors and assigns, and is hereby authorized, empowered, and directed to:

1.      Take immediate possession of all MBC, VBLLC and VSI property, assets and estate, and all other property of MBC, VBLLC and VSI of every kind whatsoever and wheresoever located belonging to or in the possession of MBC, VBLLC and VSI, including but not limited to all offices maintained by MBC, VBLLC and VSI, rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of MBC, VBLLC and VSI wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court;

2.      To use funds currently held in escrow to preserve assets, including for the payment of viatical premiums, subject to reimbursement of legitimately escrowed funds.

3.     Investigate the manner in which the affairs of MBC, VBLLC and VSI were conducted and institute such actions and legal proceedings, for the benefit and on behalf of MBC, VBLLC and VSI and their investors and other creditors, as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations, which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors in MBC, VBLLC and VSI, including against MBC, VBLLC and VSI, their officers, directors, employees, affiliates, subsidiaries or any persons acting in concert or participation with them, or against any transfers of monies or other proceeds directly or indirectly traceable from investors in MBC, VBLLC and VSI; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute § 726.101, et. seq. or otherwise, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order;

4.     Present to this Court a report reflecting the existence and value of the assets of MBC, VBLLC and VSI and of the extent of liabilities, both those claimed to exist by others and those which the Receiver believes to be legal obligations of MBC, VBLLC and VSI;

5.     Appoint one or more special agents, employ legal counsel, actuaries, accountants, claims administrators, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses of taking possession of MBC's, VBLLC's and VSI's assets and business, and exercising the power granted by this Order, and approval by this Court at the time the Receiver accounts to the Court for such expenditures and compensation;

3

6.      Engage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities, including, but not limited to, the United States Marshals Service or a private security firm;

7.      Defend, compromise, enter pleas, or settle legal actions, including the instant proceeding, in which MBC, VBLLC and VSI or the Receiver is a party, commenced either prior to or subsequent to this Order, with authorization of this Court; except, however, in actions where MBC, VBLLC and VSI is a nominal party, as in certain foreclosure actions where the action does not effect a claim against or adversely affect the assets of MBC, VBLLC and VSI, the Receiver may file appropriate pleadings in the Receiver's discretion. The Receiver may waive any attorney-client or other privilege held by MBC, VBLLC and VSI;

8.      Assume control of, and be named as authorized signatory for, all accounts at any bank, brokerage firm, escrow agent, or financial institution which has possession, custody or control of any assets or funds, wherever situated, of MBC, VBLLC and VSI and, upon, order of this Court, of any of their subsidiaries or affiliates; provided that the Receiver deems it necessary;

9.      Make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by the Receiver, and incur, or authorize the incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary and advisable in discharging the Receiver's duties;

10.     Have access to and review all mail of MBC, VBLLC and VSI and the mail of Defendants Joel Steinger, Leslie Steinger and Peter Lombardi (except for mail that appears on its face to be purely personal or attorney-client privileged) received at any office of MBC, VBLLC and VSI. All mail addressed to Joel Sternger, Leslie Steinger or Peter Lombardi that is opened by the

4

Receiver that, upon inspection, is determined by the Receiver to be personal or attorney-client privileged, shall be promptly delivered to the addressee and the Receiver shall not retain any copy.

IT IS FURTHER ORDERED that, in connection with the appointment of the Receiver provided for above:

11.   MBC, VBLLC and VSI, and all of their directors, officers, agents, employees, attorneys, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any assets, books, records, or other property of MBC, VBLLC and VSI shall deliver forthwith upon demand such property, monies, books and records to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of MBC, VBLLC and VSI;

12.   All banks, brokerage firms, financial institutions, and other business entities which have possession, custody or control of any assets, funds or accounts in the name of, or for the benefit of, MBC, VBLLC and VSI shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Receiver;

13.   Unless authorized by the Receiver, MBC, VBLLC and VSI and their principals shall take no action, nor purport to take any action, in the name of or on behalf of MBC, VBLLC and VSI;

14.   MBC, VBLLC and VSI and their principals, and their respective officers, agents, employees, attorneys, and attorneys-in-fact, shall cooperate with and assist the Receiver, including, if deemed necessary by the Receiver, appear for deposition testimony and produce documents upon two (2) business days' notice (by facsimile). MBC, VBLLC and VSI and their principals, and their respective officers, agents, employees, attorneys, and attorneys-in-fact shall take no action, directly

5

or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of the Receiver's duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Receiver of the funds, assets, premises, and choses in action described above;

### Retention of Professionals

15.     The Receiver, or any attorney, accountant, consultant, agent or other professional being engaged by the Receiver pursuant to the provisions of the Receivership Order (a "Professional") shall file with the Court a notice indicating the Receiver's intent to retain a Professional (a "Notice of Intention to Retain Professional"). The Notice of Intention to Retain Professional shall identify the name of the professional firm, the individual(s) who will render professional services, the scope of terms of the retention of such Professional, the effective date of the retention, and the proposed hourly rates to be charged by such Professional. Any material additional engagement terms shall be disclosed or attached to the Notice of Intention to Retain Professional along with an affidavit of the Professional stating that the Professional does not hold or represent any interest adverse to the Receivership Estate and is a "disinterested" person.

16.     The Receiver may retain a Professional that has represented the Receivership Entities prior to the Receiver's appointment if such Professional does not represent or hold any interest adverse to the Receiver or the Receivership Estate with respect to the matter on which such Professional is to be employed.

17.     If no objection to a Notice of Intention to Retain Professional is timely filed within ten (10) days, then the engagement proposed in the Notice of Intention to Retain Professional shall be deemed approved by the Court in all respects without further order.

6

## Compensation of Professionals

18.     The Receiver, and any Professional whom the Receiver may select, are entitled to reasonable compensation from the assets now held by or in the possession or control of or which may be received by MBC, VBLLC and VSI; said amount or amounts of compensation shall be commensurate with their duties and obligations under the circumstances, subject to approval by the Court. In connection with any third party litigation or other collateral actions, the Receiver shall seek the approval of the staff of the Commission for the hourly rates and/or fee structure for said litigation, to the extent such hourly rates or structure differ(s) from those charged in connection with the initial investigation and receivership administration, which fees shall also be subject to approval of the Court;

## Applications for Compensation of Professionals

19.     Any Professional or the Receiver, on its own behalf or on behalf of any Professional, may file a Request for Interim Compensation or a Notice of Intention to Pay Interim Compensation (both a "Notice of Compensation") no more frequently than every sixty (60) days. All Notices of Compensation shall set forth the amount of fees and costs requested; a summary of prior Notices of Compensation reflecting the amount of fees previously requested, awarded and paid; and a brief summary of the services rendered during the relevant period. All Notices of Compensation shall have attached as an exhibit a schedule broken down into categories pre-determined by the Receiver showing the amount of fees and costs requested in each category, including a list of the billing persons, the hourly rates and amount of time spent in each category. All objections must be filed and served within ten (10) days of the Application. No compensation will be paid by the Receiver before twenty (20) days of service of a Notice of Compensation to ensure that even if no party in interest objects within ten (10) days of service,

7

the Court will have an additional ten (10) days to consider the Notice of Compensation and, if the Court deems necessary, schedule a hearing on the Notice of Compensation. Within ten (10) days of the expiration of the time to file an objection, the Court shall either: (i) issue an order allowing in full, allowing in part, or disallowing the requested compensation; or (ii) set the Notice of Compensation for hearing on a date the Court deems appropriate. If the Court does not enter an order on an unopposed Notice of Compensation or set an unopposed Notice for hearing, within the period prescribed herein then the compensation requested in the unopposed Notice of Compensation shall be deemed allowed as requested, without further order of the Court.

20. During the period of this receivership, all persons, including creditors, banks, investors, or others, with actual notice of this Order, are enjoined from filing a petition for relief under the United States Bankruptcy Code without prior permission from this Court, or from in any way disturbing the assets or proceeds of the receivership or from prosecuting any actions or proceedings which involve the Receiver or which affect the property of MBC, VBLLC and VSI;

21. The Receiver is fully authorized to proceed with any filing the Receiver may deem appropriate under the Bankruptcy Code as to MBC, VBLLC and VSI;

### Injunction Against Other Proceedings

22. The Court hereby enjoins any party (excluding the Receiver, the SEC, the National Association of Securities Dealers (the "NASD"), and/or any other regulatory body or law enforcement agency of the United States or its constituent states) with notice of this Order from initiating, maintaining, or in any way prosecuting in any other court any proceeding, suit, or action against any of the above-named Defendants and/or Relief Defendants. Additionally, the Court hereby enjoins any party (excluding the Receiver, the SEC, the NASD, any other regulatory body or law enforcement agency of the United States or its constituent states or any

8

party with the express written consent of the Receiver or this Court) with notice of this Order from initiating, maintaining, or in any way prosecuting in any court any proceeding, suit or action that may diminish or usurp property of the Receiver or the Receivership Entities' estates, including, but not limited to, causes of action that the Receiver may have standing to bring or that may belong to the Receiver, or that may belong to any investors or any class or group of investors against the Receivership Entities' former principals, professionals or against other third parties. Unless otherwise expressly authorized by the Receiver or the Court, such proceedings, suits, and actions must be brought in the form of a proceeding ancillary to this Proceeding pursuant to this Order. The Receiver may provide effective notice of this injunction contained in this Order by publication as provided for in the Federal Rules of Civil Procedure, or by filing notice of this Order in any such proceedings, suits and actions brought prior to the entry of this Order.

23. Title to all property, real or personal, all contracts, rights of action and all books and records of MBC, VBLLC and VSI and their principals, wherever located within or without this state, is vested by operation of law in the Receiver;

24. Upon request by the Receiver, any company providing telephone services to MBC, VBLLC and VSI shall provide a reference of calls from the number presently assigned to MBC, VBLLC and VSI to any such number designated by the Receiver or perform any other changes necessary to the conduct of the receivership;

25. Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to MBC, VBLLC and VSI shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver;

9

26.    The United States Postal Service is directed to provide any information requested by the Receiver regarding MBC, VBLLC and VSI, and to handle future deliveries of the mail of MBC, VBLLC and VSI as directed by the Receiver;

27.    No bank, savings and loan association, other financial institution, or any other person or entity shall exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

28.    No bond shall be required in connection with the appointment of the Receiver; however, the Receiver is permitted, at her discretion, to use Receivership Assets to obtain a bond should she so chose. Except for an act of gross negligence, the Receiver shall not be liable for any loss or damage incurred by MBC, VBLLC and VSI or by the Receiver's officers, agents or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of the Receiver's duties and responsibilities;

29.    Service of this Order shall be sufficient if made upon MBC, VBLLC and VSI and their principals by facsimile or overnight courier;

30.    In the event that the Receiver discovers that funds of persons who have invested in MBC, VBLLC and VSI have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, extending this receivership over any person or entity holding such investor funds;

31.    Immediately upon entry of this Order, the Receiver may take depositions upon oral examination of, and obtain the production documents from, parties and non-parties subject to two (2) business days notice. In addition, immediately upon entry of this Order, the Receiver shall be entitled to serve interrogatories, requests for the production of documents and requests for

10

admissions.  The parties shall respond to such discovery requests within five (5) calendar days of service.  Service of discovery requests shall be sufficient if made upon the parties by facsimile or overnight courier.  Depositions may be taken by telephone or other remote electronic means.

32.    This Court shall retain jurisdiction of this matter for all purposes.

DONE AND ORDERED this __4th__ day of ___May___, 2004, at ___Miami___, Florida.

_____

UNITED STATES DISTRICT JUDGE

Copies to:

Teresa J. Verges
Alise M. Johnson
Linda S. Schmidt
Ryan Dwight O'Quinn

801 Brickell Avenue, Suite 1800
Miami, Florida 33131
*Counsel for Securities and Exchange Commission*
Phone: (305) 982-6300
1) Fax: (305) 536-4146

2) Receiver, Roberto Martinez

11



# Exhibit "C"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60573 CIV-MORENO
Magistrate Judge Garber



SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

MUTUAL BENEFITS CORP.,
JOEL STEINGER a/k/a JOEL STEINER.
LESLIE STEINGER a/k/a LESLIE STEINER,
and PETER LOMBARDI,

Defendants,

VIATICAL BENEFACTORS, LLC,
VIATICAL SERVICES, INC.,
KENSINGTON MANAGEMENT, INC.,
RAINY CONSULTING CORP.
TWIN GROVES INVESTMENTS, INC.,
P.J.L. CONSULTING, INC.,
SKS CONSULTING, INC., and
CAMDEN CONSULTING, INC.,

Relief Defendants.

_____/

## ORDER AMENDING ORDER APPOINTING RECEIVER REGARDING MAINTENANCE OF INSURANCE POLICIES AND BENEFITS

THIS CAUSE came on before the Court upon the Receiver's Emergency Motion to Amend Order Appointing Receiver Regarding Maintenance of Insurance Policies and Benefits. Having reviewed the Emergency Motion and being duly advised in the premises, it is ORDERED and ADJUDGED the Receiver's motion is GRANTED:

1.     The Receiver's powers are clarified to authorize the Receiver to require



CASE NO. 04-60573 CIV-MORENO
Magistrate Judge Garber

all insurance companies that have policies issued in which investors of Mutual Benefits Corp. or Viatical Benefactors, LLC may assert an interest to provide prior notice in accordance with the policy to the Receiver in the event any policy is subject to lapse for failure to pay, or a delay in paying, premiums on the policy. Notice should be sent to the Receiver at 255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134.

2.      The Receiver's powers are clarified to authorize the Receiver to require all trustees, banks, financial institutions and life insurance companies involved in paying and distributing benefits on any matured policies in which investors of Mutual Benefits Corp. or Viatical Benefactors, LLC may have an interest to pay such benefits directly to the Receiver. The Receiver shall maintain any benefits received in an interest bearing account, and further maintain an accounting as to the identity of all investors and beneficiaries who may claim an interest in such matured policy.

3.      The Receiver's powers are further clarified to direct all insurance companies that have issued policies in which investors of Mutual Benefits Corp. or Viatical Benefactors, LLC, assert an interest, to accept claim forms executed by the Receiver in lieu of execution by any beneficiaries named therein.

DONE and ORDERED in chambers, Southern District of Florida , this _20_ day of ___May___, 2004 at 2:05 p. m.

_____
HONORABLE FEDERICO MORENO
U.S. District Court Judge

Copies furnished to:
All parties listed on the attached service list

239665.1

# Exhibit "D"

LAW OFFICES
## KOZYAK TROPIN & THROCKMORTON, P.A.

PROFESSIONAL ASSOCIATION

2800 FIRST UNION FINANCIAL CENTER

200 SOUTH BISCAYNE BOULEVARD

MIAMI, FLORIDA 33131-2335

KENNETH R. HARTMANN
DIRECT DIAL (305) 377-0657

TELEPHONE (305) 372-1800
TELECOPIER (305) 372-3508

July 15, 2004

Transamerica Occidental Life Insurance
P.O. Box 740559
Atlanta, GA 30374-0559

> Re:    Policy Nos.    40072669, 60109065 and/or 60108208
>          Insured:       Alan N. Dumesco

Dear Sir/Madam:

We represent Roberto Martinez who has been appointed by the Federal Court in Miami, Florida to serve as Receiver for Mutual Benefits Corp. and related companies. I enclose an Order Appointing Receiver, along with two collateral orders relating to the Receiver's authority to collect benefits on the above-described policies, which we understand have matured. Another receivership entity, Viatical Services, Inc. will be submitting a benefits claim shortly, as soon as it receives the death certificate reflecting the insured's passing away.

On behalf of the Receiver, we request that you make the benefits under the above-described policies and any other distribution relating to the policy payable to the Receiver as follows:

> Roberto Martinez, Esq., Receiver
> c/o Viatical Services, Inc.
> 2755 E. Oakland Park Blvd., Suite 230
> Ft. Lauderdale, FL 33306

Records available to the Receiver reflect that the above-described policies are owned by Anthony M. Livoti and/or his law firm. I enclose documentation including a form agreement reflecting Mr. Livoti's status as "trustee" whereby he serves as custodial owner of the policy in question. The enclosed documentation reflects that the Dumesco policies are encompassed by the receivership and the enclosed orders. If you need the actual documents relating to the specific policies, we can provide those within a reasonable time.

Should you have any further questions in this regard, please contact me.

Very truly yours,

Kenneth R. Hartmann

KRH/lmm/Enclosures
cc:    Roberto Martinez, Receiver (w/o encls.)
         Monica Bruce-Ramdath (w/o encls.)
         Glenn S. Gitomer, Esq. (w/encls.)

3298/101/241687.1



# Exhibit "E"

**TRANSAMERICA**
**INSURANCE & INVESTMENT GROUP**

Transamerica Occidental
Life Insurance Company
1100 Walnut St., Ste. 2400
Kansas City, Missouri 64106-2152

*Mailing Address:*
P.O. Box 419521
Kansas City, MO 64141-6521

## NOTICE OF CHANGE

October 10, 2003

**Anthony Livoti Jr PA**
**2755 E Oakland Park Blvd Suite 230**
**Fort Lauderdale, FL 03330**

Insured:       Alan Neil Dumesco
Policy No.:    60109065

We have received your requested change and have recorded it as submitted. Such recording does not mean that we have passed on the legal adequacy or validity of this transaction. This is your responsibility.

*The following recorded form(s) is(are) enclosed:*

Beneficiary Designation

*We are also providing this information:*

*Additional Requirements:*

Please direct all inquiries to our Customer Service Department at (800) 852-4678.
We are pleased to have been of service to you. Thank you for choosing Transamerica.

Mikel John
Claims Department, Beneficiary & Title



TRANSAMERICA
LIFE COMPANIES

# Beneficiary Designation
## for Life Insurance Policies



☐ Transamerica Occidental Life Insurance Company
P.O. Box 419521
Kansas City, MO 64141-6521

☐ Transamerica Assurance Company
P.O. Box 30852
Los Angeles, CA 90030

☐ Transamerica Life Insurance & Annuity Company
P.O. Box 419521
Kansas City, MO 64141-6521

This Policy of Insurance is issued or assumed by one of the companies shown above, herein called the "Company"

**Policy Number:** 60109065   **Insured's Name:** Alan N. Dumesco   CF# 99-2920

| Owner's Name | | | The recorded designation form will be mailed to the address shown at the left, unless otherwise indicated below and initialed by the owner. |
|---|---|---|---|
| Anthony M. Livoti, Jr., P.A. | | | |
| Address | | | *Return Owner's Copy to*:   *Owner's Initials* |
| 721 N.E. 3rd Avenue | | | ☐ General Agency/GA Code_____ |
| City | State | Zip | ☐ Fax to: (       )_____ |
| Ft. Lauderdale, | Fl | 33304 | |

This Beneficiary Designation cancels all prior Beneficiary Designations and settlement agreements for the policy, identified by the number above, herein called the 'Policy. Please see instructions, signature requirements, special provisions and sample Beneficiary Designations before completing this Form The Policy's Death Benefit shall be paid in one sum to the designated beneficiary (ies), unless otherwise requested.

**BENEFICIARY:** *Print full name, address and relationship to Insured. For multiple beneficiaries of unequal shares, indicate each beneficiary's share in parts or as a percentage of the Policy's Death Benefit next to their names. (See reverse for additional instructions)*

**Primary Beneficiary (ies):** If more than one beneficiary is named, payment will be made in equal shares to the survivor(s), unless otherwise indicated.

| *Name* | *Address* | *City, State, Zip Code* | *Relationship* |
|---|---|---|---|

PLEASE SEE ATTACHED LIST OF IRREVOCABLE BENEFICIARIES, THEIR SHARE AMOUNT AND CONTINGENTS.

**Contingent Beneficiary (ies):** Receives proceeds at the death of the Insured only if all of the Primary Beneficiaries predecease the Insured.

| *Name* | *Address* | *City, State, Zip Code* | *Relationship* |
|---|---|---|---|

**Signatures** (Signature Requirements on Reverse Side)

DATE SIGNED: 10/01/03

Anthony M. Livoti, Jr., P.A.
Print Current Owner's Complete Name

(800) 896-7990
Current Owner's Daytime Telephone Number

Tax ID#
Current Owner's Social Security Number Tax ID Number

X _____
Witness Signature

X _____
Current Owner's Signature (include Title, if Business or Trust)

X 5880 Chester Lane, Davie, FL 33331
Address of Witness

X _____
Current Owner's Signature (include Title, if Business or Trust)

This Beneficiary Designation has been recorded by the Company's Administrative Offices. The Company assumes no legal responsibility for the sufficiency or validity of the Beneficiary Designation

Date recorded. _____   by _____

**BENEFICIARY DESIGNATION**   TOB 306 MED 0799

LAW OFFICES
OF

# ANTHONY M. LIVOTI, JR., P.A.

ATTORNEYS AND COUNSELORS AT LAW

721 N.E. 3RD AVENUE

FORT LAUDERDALE, FL. 33304

(954) 463-3777

ANTHONY M. LIVOTI, JR.
MEMBER OF FLORIDA, NEW YORK
& WASHINGTON D C BARS

MICHAEL E. COVIELLO
MEMBER OF FLORIDA BAR

OF COUNSEL

DONALD E. OSWALD
MEMBER OF FLORIDA BAR

JASON BARNETT
MEMBER OF FLORIDA BAR

**IRREVOCABLE BENEFICIARIES ON POLICY #**     60109065
Insured: **Alan N. Dumesco**
Total Death Benefit: **$500,000.00**
Insurance Company: **Transamerica Occidental Life Ins Co**
Case Number: **99-0002920**

Page -1of 6

| | | | |
|---|---|---|---|
| Rose E. MacKinlay Trust<br>Dated: 10/11/96<br>Rose MacKinlay, TTEE<br>8531 Park Shore<br>Sarasota, FL  34238<br>Tel#: (941) 493-6981 SS#: | REDACTED | Non-Relative | 11.2000 % |
| Bliss Fitzgerald<br>431 West 50 North<br>American Fork, UT  84003<br>Tel#: (801) 835-8112 SS#:<br>If living, otherwise to the estate of Bliss Fitzgerald | | Non-Relative | 1.5262 % |
| Michael S. & Hazel G. Hargrove (JTROS)<br>5131 Flintridge Drive<br>Hyattsville, MD  20784<br>Tel#: (301) 773-4285 SS#:<br>Equally, or to the survivor, otherwise to the estate of the last to survive for such share. | | Non-Relative | 1.2000 % |
| John Gause<br>4290 Meadow View Drive<br>Boynton Beach, FL  33436<br>Tel#: (561) 734-8444 SS#:<br>If living, otherwise to the estate of John Gause | | Non-Relative | 2.2400 % |
| Marion Thompson<br>RR # 3<br>Norwich, Canada  N0J 1P0<br>Tel#:  SS#:<br>If living, otherwise to Robert G. Thompson, George B. Thompson and Edward L. Thompson, equally. | | Non-Relative | 7.5736 % |
| Retirement Accounts, Inc.<br>FBO Thad J. Detillio<br>010009040001<br>PO Box 3017<br>Winter Park, FL  32790-3017<br>Tel#: (800) 325-4352 SS#: | | Non-Relative | 2.2560 % |
| Retirement Accounts, Inc.<br>FBO Garland V. Inzer<br>053869<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352 SS#: | | Non-Relative | 2.9286 % |

LAW OFFICES
OF

# ANTHONY M. LIVOTI, JR., P.A.

ATTORNEYS AND COUNSELORS AT LAW

721 N.E. 3RD AVENUE

FORT LAUDERDALE, FL. 33304

(954) 463-3777

ANTHONY M. LIVOTI, JR.
MEMBER OF FLORIDA, NEW YORK
& WASHINGTON D.C. BARS

MICHAEL E. COVIELLO
MEMBER OF FLORIDA BAR

OF COUNSEL

DONALD E. OSWALD
MEMBER OF FLORIDA BAR

JASON BARNETT
MEMBER OF FLORIDA BAR

## IRREVOCABLE BENEFICIARIES ON POLICY #   60109065

Insured:  Alan N. Dumesco
Total Death Benefit:  $500,000.00
Insurance Company:  Transamerica Occidental Life Ins Co
Case Number:  99-0002920

Page -2 of 6

REDACTED

| | | |
|---|---|---|
| Retirement Accounts, Inc.<br>FBO Barbara J. Pellet<br>031038021267<br>P.O. Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | Non-Relative | 2.2956 % |
| Retirement Accounts, Inc.<br>FBO John O. Kimmel<br>010609280001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS# | Non-Relative | 2.2400 % |
| Retirement Accounts, Inc.<br>FBO Linda Lee<br>062237<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS# | Non-Relative | 1.1164 % |
| Retirement Accounts, Inc.<br>FBO Lawrence H. Meyer<br>010622940001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS# | Non-Relative | 2.2400 % |
| Retirement Accounts, Inc.<br>FBO Douglas E. Abrams<br>031038031816<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | Non-Relative | 3.0740 % |
| Retirement Accounts, Inc.<br>FBO George E. Breton<br>010627230001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | Non-Relative | 6.7200 % |

LAW OFFICES
OF
## ANTHONY M. LIVOTI, JR., P.A.
ATTORNEYS AND COUNSELORS AT LAW
721 N.E. 3RD AVENUE
FORT LAUDERDALE, FL. 33304
(954) 463-3777

ANTHONY M LIVOTI, JR.
MEMBER OF FLORIDA, NEW YORK
& WASHINGTON D C BARS

MICHAEL E. COVIELLO
MEMBER OF FLORIDA BAR

OF COUNSEL

DONALD E. OSWALD
MEMBER OF FLORIDA BAR

JASON BARNETT
MEMBER OF FLORIDA BAR

**IRREVOCABLE BENEFICIARIES ON POLICY #**       60109065
Insured:  Alan N. Dumesco
Total Death Benefit:  $500,000.00
Insurance Company:  Transamerica Occidental Life Ins Co
Case Number:  99-0002920

Page -3of 6

REDACTED

| | | |
|---|---|---|
| Retirement Accounts, Inc.<br>FBO John M. Wermuth<br>010628630001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | Non-Relative | 4.4800 % |
| Retirement Accounts, Inc.<br>FBO Norman A. Benson<br>010660620001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | Non-Relative | 2.2400 % |
| Retirement Accounts, Inc.<br>FBO Jack Gathercoal<br>010660780001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | Non-Relative | 4.4172 % |
| Retirement Accounts, Inc.<br>FBO Sherry Foley<br>010704460001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | Non-Relative | 2.3968 % |
| Retirement Accounts, Inc.<br>FBO David W Hayes<br>010708260001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | Non-Relative | 2.2094 % |
| Retirement Accounts, Inc.<br>FBO Samuel J Bennett<br>070824<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | Non-Relative | 2.2400 % |

LAW OFFICES
OF
## ANTHONY M. LIVOTI, JR., P.A.
ATTORNEYS AND COUNSELORS AT LAW
721 N.E. 3RD AVENUE
FORT LAUDERDALE, FL. 33304
(954) 463-3777

ANTHONY M. LIVOTI, JR
MEMBER OF FLORIDA, NEW YORK
& WASHINGTON D.C. BARS

MICHAEL E. COVIELLO
MEMBER OF FLORIDA BAR

OF COUNSEL

DONALD E. OSWALD
MEMBER OF FLORIDA BAR

JASON BARNETT
MEMBER OF FLORIDA BAR

**IRREVOCABLE BENEFICIARIES ON POLICY #**     60109065
Insured:  Alan N. Dumesco
Total Death Benefit:  $500,000.00
Insurance Company:  Transamerica Occidental Life Ins Co
Case Number:  99-0002920

Page -4 of 6

| | | | |
|---|---|---|---|
| Retirement Accounts, Inc.<br>FBO Robert P. Rettig<br>010719960001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | REDACTED | Non-Relative | 6.7200 % |
| Retirement Accounts, Inc.<br>FBO Johanna J. Crowley<br>010719990001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | | Non-Relative | 2.5760 % |
| Retirement Accounts, Inc.<br>FBO Joan M. Suzio<br>010721460001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | | Non-Relative | 3.3940 % |
| Retirement Accounts, Inc.<br>FBO Joan R. Weatherly<br>010723710001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | | Non-Relative | 2.2400 % |
| Retirement Accounts, Inc.<br>FBO Donald J. Burnett<br>010725970001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | | Non-Relative | 2.0160 % |
| Retirement Accounts, Inc.<br>FBO David L. Pease<br>010726290001<br>PO Box 173785<br>Denver, CO  80217-3785<br>Tel#: (800) 325-4352  SS#: | | Non-Relative | 3.9200 % |

LAW OFFICES
OF

# ANTHONY M. LIVOTI, JR., P.A.

ATTORNEYS AND COUNSELORS AT LAW

721 N.E. 3RD AVENUE

FORT LAUDERDALE, FL 33304

(954) 463-3777

ANTHONY M. LIVOTI, JR.
MEMBER OF FLORIDA, NEW YORK
& WASHINGTON D.C BARS

MICHAEL E. COVIELLO
MEMBER OF FLORIDA BAR

OF COUNSEL

DONALD E. OSWALD
MEMBER OF FLORIDA BAR

JASON BARNETT
MEMBER OF FLORIDA BAR

**IRREVOCABLE BENEFICIARIES ON POLICY #**     60109065
Insured: Alan N. Dumesco
Total Death Benefit: $500,000.00
Insurance Company: Transamerica Occidental Life Ins Co
Case Number: 99-0002920

Page -5of 6

REDACTED

| | | |
|---|---|---|
| Retirement Accounts, Inc.<br>FBO Beulah W. Sheets<br>031038018284<br>PO Box 173785<br>Denver, CO 80217-3785<br>Tel#: (800) 325-4352 SS#: | Non-Relative | 1.7920 % |
| Retirement Accounts, Inc.<br>FBO Vola I. Clare<br>010727790001<br>PO Box 173785<br>Denver, CO 80217-3785<br>Tel#: (800) 325-4352 SS#: | Non-Relative | 2.2400 % |
| Retirement Accounts, Inc.<br>FBO Dan Bonham<br>010729320001<br>PO Box 173785<br>Denver, CO 80217-3785<br>Tel#: (800) 325-4352 SS#: | Non-Relative | 4.4912 % |
| Retirement Accounts, Inc.<br>FBO Kenneth R. Calderwood<br>010733080001<br>PO Box 173785<br>Denver, CO 80217-3785<br>Tel#: (800) 325-4352 SS#: | Non-Relative | 2.2252 % |
| Retirement Accounts, Inc.<br>FBO Jeff R. Hallows<br>031050000524<br>P.O. Box 173785<br>Denver, CO 80217-3785<br>Tel#: (800) 325-4352 SS#: | Non-Relative | 1.2384 % |

LAW OFFICES
OF

# ANTHONY M. LIVOTI, JR., P.A.

ATTORNEYS AND COUNSELORS AT LAW

721 N.E. 3RD AVENUE

FORT LAUDERDALE, FL 33304

(854) 463-3777

ANTHONY M. LIVOTI, JR.
MEMBER OF FLORIDA, NEW YORK
& WASHINGTON D.C. BARS

MICHAEL E. COVIELLO
MEMBER OF FLORIDA BAR

OF COUNSEL

DONALD E. OSWALD
MEMBER OF FLORIDA BAR

JASON BARNETT
MEMBER OF FLORIDA BAR

**IRREVOCABLE BENEFICIARIES ON POLICY #**     60109065

Insured:  Alan N. Dumesen
Total Death Benefit:  $500,000.00
Insurance Company:  Transamerica Occidental Life Ins Co
Case Number:  99-0002920

Page -6of 6

Retirement Accounts, Inc.
FBO Lillian V. Lopez
031037997222
P.O. Box 173785
Denver, CO 80217-3785
Tel#: (800) 325-4352  SS#:

REDACTED          Non-Relative          2.5534 %

10/01/03          .: Date

Anthony M. Livoti, Jr., P.A.

: Date

Authorized Representative for:     Transamerica Occidental Life Ins Co

Oct 10, 2003



# Exhibit "F"

LAW OFFICES

OF

## ANTHONY M. LIVOTI, JR., P.A.

ATTORNEYS AND COUNSELORS AT LAW

721 N.E. 3RD AVENUE

FORT LAUDERDALE, FLORIDA 33304

(954) 463-3777

ANTHONY M. LIVOTI, JR.
MEMBER OF FLORIDA, NEW YORK
& WASHINGTON D.C. BARS

ROBERT P. BISSONNETTE
MEBER OF FLORIDA BAR

OF COUNSEL

DONALD E. OSWALD
MEMBER OF FLORIDA BAR

KENNETH D. TAGUE
MEMBER OF FLORIDA
& TEXAS BARS

| | | | |
|---|---|---|---|
| Date | May 30, 1997 | Policy Number: | 40208626 |
| Name | Transamerica | Certificate #: | |
| Address | 1100 Walnut | Policy Face Amount: | $500,000.⁰⁰ |
| | Kansas City, MO 64106 | Social Security #: | |
| Tel | (800) 852-4678 | Insured: | Alan N. Dumesco |
| Attn: | Laurie Weyer | | |

REDACTED

Dear Ms. Weyer:

This will serve as official notification to you that an agreement has been entered into for the absolute assignment of the above referenced insurance policy to:

Anthony M. Livoti, Jr., P.A.
721 NE 3rd Ave
Fort Lauderdale, FL 33304

Enclosed are the executed forms for Transfer of Ownership and Change of Beneficiary for the above referenced policy.

If there has been any lapse in coverage, or the coverage is in the process of lapsing which would result in the reinstatement of contest ability and/or suicide clauses or there are any new outstanding loans, please notify Barbara with Mutual Benefits at 1-800-896-7990 immediately prior to recording these changes.

If the above does not apply then, please:
1) Complete recording
2) Change mode of premium payment to annual if availible
3) Complete a cover letter including:
    a) The amount and method of payment for annual premiums
    b) Date through which premiums are paid
    c) Next due date

Please record these forms as soon as possible and fax a copy to 954-564-0606 and use the pre-paid Federal Express air bill I've enclosed for your convenience in returning the original forms.

This letter authorizes you to direct all forms, information and questions to Mutual Benefits Corp. Should you have any questions, please feel free to contact **Barbara** at **Mutual Benefits Corp, 2881 E. Oakland Park Blvd #200, Fort Lauderdale, FL 33306, at 1-800-896-7990.**

Thank you for your cooperation in this matter.

Very truly yours,

Anthony M. Livoti, Jr.

AML/bm
Enclosures

MULTI-COMPANY
ASSIGNMENT TO TRANSFER OWNERSHIP
(This form does not change the Beneficiary of the policy)



Policy No. __40208626__ , Insured __Alan N. Dumesco__

Issued or assumed by
☐ Transamerica Occidental Life Insurance Company
☐ Transamerica Assurance Company
☐ Transamerica Life Insurance and Annuity Company

(herein called "the Company")

THIS FORM WILL NOT BE RECORDED IF MODIFIED UNLESS APPROVED BY THE HOME OFFICE OF THE COMPANY.

☑ For good and sufficient consideration,       ☐ As a gift for love and affection with no valuable consideration.
all rights, title and interest of the undersigned in this policy are hereby assigned for the purpose of transferring ownership to:

**NAME OF NEW OWNER:**       Anthony M. Livoti, Jr., P.A.

**ADDRESS OF NEW OWNER:**       721 NE 3rd Ave., Fort Lauderdale, FL   33304

The new Owner is:   ☐ Individual   ☒ Corporation   ☐ Partnership   ☐ Trust _____   ☐ Other _____
                                                                            (indicate date)              (specify)

Individual Owner's Social Security or Tax I.D. No.                  Corporation, Partnership, Trust, Other Tax I.D. No.

|  |  |
|---|---|
| (Include all Hyphens) | REDACTED |

Before the death of the Insured, the Owner of this policy alone shall be entitled to all rights granted by this policy or allowed by the Company under this policy. If the Owner is a Partnership, all rights of the Owner belong to the partnership as constituted at the time a right is exercised. If the Owner is an individual and dies before the Insured, all rights of the Owner belong to the executor or administrator of the Owner.

**BENEFICIARY NOT CHANGED:** Without in any way restricting the right of the Owner to change the beneficiary, this assignment does not change the beneficiary of the policy. Unless the right to change the beneficiary is specifically exercised by the Owner, the beneficiary of the policy shall be as designated at the date of this assignment.

This assignment includes any rider or supplementary agreement attached to or relating to the policy. This assignment shall apply to and be effective under any policy issued in exchange for or as a conversion of the policy.

If this assignment is made upon any trust, the Company shall not be bound by any trust agreement nor responsible for the application of any payments made under the policy. The Company may rely solely upon the signature of the Owner under this assignment to any receipt, release, waiver of any transfers or other instruments, to whomsoever made.

The validity of this assignment is hereby guaranteed by the undersigned.

The signature to this assignment is a warranty that the undersigned is legally capable of executing this assignment and that no proceedings in insolvency or bankruptcy have been instituted by or against the undersigned.

DATE SIGNED: __May 28__ 19 __97__

Witness _Sally W Larson_
Address of witness _12808 Crisfield Rd S/Sp MD 20906_

Witness _____
Address of witness _____

**ASSIGNMENT BY:**
(Signature Requirements on Reverse Side)

_ALAN NEIL DUMESCO_
Print Policy Owner's Complete Name

_Alan Neil Dum_
Owner's Signature (Title, if Business or Trust)

_____
Owner's Signature (Title, if Business or Trust)

Corporations must complete Resolution to Assign on reverse side.

This assignment has been recorded at the Home Office of the Company in Los Angeles, California. The Company assumes no legal responsibility for the sufficiency or validity of the assignment.

Date recorded __JUN 0 9 1997__

_Carolyn L. Reli_ Team Manager
By Policy Change & Technical Services Department

TRANSFER OF OWNERSHIP

TOA 50-044-893



# Exhibit "G"

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number:  04-60573-CIV-MORENO

SECURITIES    AND    EXCHANGE
COMMISSION,

      Plaintiff,

vs.

MUTUAL BENEFITS CORP., JOEL STEINGER
a/k/a JOEL STEINER, LESLIE STEINGER a/k/a
LESLIE STEINER, and PETER LOMBARDI,
VIATICAL BENEFACTORS, LLC, VIATICAL
SERVICES,    INC.,    KENSINGTON
MANAGEMENT, INC., RAINY CONSULTING
CORP., TWIN GROVES INVESTMENTS, INC.,
P.J.L.    CONSULTING,    INC.,    SKS
CONSULTING,    INC.,    and    CAMDEN
CONSULTING, INC.,

      Defendants.

_____/



FILED by _____ D.C.

FEB - 2 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

## ORDER GRANTING MOTION TO EXPAND RECEIVERSHIP
## TO INCLUDE LIVOTI ENTITIES

THIS CAUSE came before the Court upon Receiver's Motion to Expand Receivership to

Include Livoti Entities (**D.E. No. 356**), filed on **August 9, 2004**.

THE COURT has considered the motion and the pertinent portions of the record, and being

otherwise fully advised in the premises, it is

      **ADJUDGED** that the motion is GRANTED.

DONE AND ORDERED in Chambers Open Court at Miami, Florida, this 31 day of February, 2005.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

c: Service List



# Exhibit "H"

Transamerica Occidental
Life Insurance Company
Home Office: Los Angeles, CA

Policy Form    T-20
Individual Life Insurance

INSURED    ALAN NEIL DUMESCO                    40208626    POLICY NUMBER

FACE AMOUNT    $500,000                        NOV 06 1985    DATE OF ISSUE

If the Insured dies while this policy is in force, Transamerica Occidental Life Insurance Company will pay the face amount to the beneficiary, subject to the provisions of this policy.

Signed for the Company at Los Angeles, California, on the date of issue.

EXECUTIVE VICE-PRESIDENT, GENERAL COUNSEL
AND CORPORATE SECRETARY

PRESIDENT

**Right to Examine and Return Policy Within 10 Days** -- The owner may, at any time within 10 days after receipt of this policy, return it for cancellation to us or to the agent through whom it was purchased. The return of the policy will void it from the beginning and any premium paid will be refunded to the owner.

Graded Premium Life Insurance to Age 100

Premiums Increase Annually for 15 Years
or to Age 75, Whichever is Later
Premiums Payable During Life of Insured to Age 100

Face Amount Payable at Age 100
or at Death of Insured

Non-Participating - No Annual Dividends Payable

1-122 24-186                                            PAGE 1

P O L I C Y   D A T A

```
LOAN INTEREST
         RATE        7.40% IN ADVANCE              NOV 06 1985  POLICY DATE

REINSTATEMENT
INTEREST RATE        6.00%                                  32  AGE OF INSURED


       INSURED       ALAN NEIL DUMESCO                40208626  POLICY NUMBER



   FACE AMOUNT       $500,000                       NOV 06 1985  DATE OF ISSUE


       OWNER         ANTHONY M LIVOTI JR PA            PREFERRED  CLASS OF RISK
                                                     NON-SMOKER
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE CHARGE FOR ANY ADDITIONAL BENEFITS WHICH ARE PROVIDED BY RIDER IS SHOWN
BELOW.  ONLY A BRIEF DESCRIPTION IS GIVEN.  THE COMPLETE PROVISIONS ARE
INCLUDED IN THE RIDER.

RIDER NUMBER    SCHEDULE OF ADDITIONAL BENEFITS              ANNUAL PREMIUM
------------    -------------------------------              --------------

                NONE                                          NO CHARGE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TOTAL FIRST YEAR PREMIUMS (SEE FOLLOWING PAGES FOR PREMIUMS FOR LATER YEARS):

```
    ANNUAL          SEMI-ANNUAL         QUARTERLY          MONTHLY
    $505.00         $262.60             $135.58            * * *
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    NO CASH VALUES UNTIL AFTER INSURED'S AGE 75.

POLICY DATA ( CONTINUED )

SCHEDULE OF GUARANTEED PREMIUMS
- ANNUAL PREMIUMS -

| POLICY YEAR BEGINNING | POLICY EXCLUDING RIDERS | POLICY YEAR BEGINNING | POLICY EXCLUDING RIDERS |
|---|---|---|---|
| NOV 06 1986 | $560.00 | NOV 06 2020 | $19,805.00 |
| NOV 06 1987 | 620.00 | NOV 06 2021 | 21,695.00 |
| NOV 06 1988 | 685.00 | NOV 06 2022 | 23,735.00 |
| NOV 06 1989 | 755.00 | NOV 06 2023 | 28,385.00 |
| NOV 06 1990 | 830.00 | NOV 06 2024 | 33,035.00 |
| NOV 06 1991 | 895.00 | NOV 06 2025 | 38,170.00 |
| NOV 06 1992 | 955.00 | NOV 06 2026 | 44,065.00 |
| NOV 06 1993 | 1,025.00 | NOV 06 2027 | 50,190.00 |
| NOV 06 1994 | 1,140.00 | NOV 06 2028 | 56,590.00 |
| NOV 06 1995 | 2,085.00 | NOV 06 2029 | 56,590.00 |
| NOV 06 1996 | 2,270.00 | NOV 06 2030 | 56,590.00 |
| NOV 06 1997 | 2,465.00 | NOV 06 2031 | 56,590.00 |
| NOV 06 1998 | 2,685.00 | NOV 06 2032 | 56,590.00 |
| NOV 06 1999 | 2,935.00 | NOV 06 2033 | 56,590.00 |
| NOV 06 2000 | 3,205.00 | NOV 06 2034 | 56,590.00 |
| NOV 06 2001 | 3,505.00 | NOV 06 2035 | 56,590.00 |
| NOV 06 2002 | 3,840.00 | NOV 06 2036 | 56,590.00 |
| NOV 06 2003 | 4,210.00 | NOV 06 2037 | 56,590.00 |
| NOV 06 2004 | 4,625.00 | NOV 06 2038 | 56,590.00 |
| NOV 06 2005 | 5,070.00 | NOV 06 2039 | 56,590.00 |
| NOV 06 2006 | 5,555.00 | NOV 06 2040 | 56,590.00 |
| NOV 06 2007 | 6,090.00 | NOV 06 2041 | 56,590.00 |
| NOV 06 2008 | 6,675.00 | NOV 06 2042 | 56,590.00 |
| NOV 06 2009 | 7,315.00 | NOV 06 2043 | 56,590.00 |
| NOV 06 2010 | 8,030.00 | NOV 06 2044 | 56,590.00 |
| NOV 06 2011 | 8,815.00 | NOV 06 2045 | 56,590.00 |
| NOV 06 2012 | 9,670.00 | NOV 06 2046 | 56,590.00 |
| NOV 06 2013 | 10,610.00 | NOV 06 2047 | 56,590.00 |
| NOV 06 2014 | 11,595.00 | NOV 06 2048 | 56,590.00 |
| NOV 06 2015 | 12,675.00 | NOV 06 2049 | 56,590.00 |
| NOV 06 2016 | 13,845.00 | NOV 06 2050 | 56,590.00 |
| NOV 06 2017 | 15,125.00 | NOV 06 2051 | 56,590.00 |
| NOV 06 2018 | 16,535.00 | NOV 06 2052 | 56,590.00 |
| NOV 06 2019 | 18,085.00 | | |

1-122 24-186

CONTINUED ON THE FOLLOWING PAGE

PAGE 2A

P O L I C Y   D A T A   ( C O N T I N U E D )

SCHEDULE OF NON-GUARANTEED PREMIUMS
- ANNUAL PREMIUMS -

| POLICY YEAR BEGINNING | POLICY EXCLUDING RIDERS | POLICY YEAR BEGINNING | POLICY EXCLUDING RIDERS |
|---|---|---|---|
| NOV 06 1986 | $560.00 | NOV 06 2020 | $11,890.00 |
| NOV 06 1987 | 620.00 | NOV 06 2021 | 13,065.00 |
| NOV 06 1988 | 685.00 | NOV 06 2022 | 14,535.00 |
| NOV 06 1989 | 755.00 | NOV 06 2023 | 16,395.00 |
| NOV 06 1990 | 830.00 | NOV 06 2024 | 18,845.00 |
| NOV 06 1991 | 895.00 | NOV 06 2025 | 21,980.00 |
| NOV 06 1992 | 955.00 | NOV 06 2026 | 25,705.00 |
| NOV 06 1993 | 1,025.00 | NOV 06 2027 | 29,820.00 |
| NOV 06 1994 | 1,140.00 | NOV 06 2028 | 34,350.00 |
| NOV 06 1995 | 1,240.00 | NOV 06 2029 | 34,350.00 |
| NOV 06 1996 | 1,355.00 | NOV 06 2030 | 34,350.00 |
| NOV 06 1997 | 1,480.00 | NOV 06 2031 | 34,350.00 |
| NOV 06 1998 | 1,650.00 | NOV 06 2032 | 34,350.00 |
| NOV 06 1999 | 1,800.00 | NOV 06 2033 | 34,350.00 |
| NOV 06 2000 | 1,965.00 | NOV 06 2034 | 34,350.00 |
| NOV 06 2001 | 2,145.00 | NOV 06 2035 | 34,350.00 |
| NOV 06 2002 | 2,365.00 | NOV 06 2036 | 34,350.00 |
| NOV 06 2003 | 2,605.00 | NOV 06 2037 | 34,350.00 |
| NOV 06 2004 | 2,870.00 | NOV 06 2038 | 34,350.00 |
| NOV 06 2005 | 3,165.00 | NOV 06 2039 | 34,350.00 |
| NOV 06 2006 | 3,480.00 | NOV 06 2040 | 34,350.00 |
| NOV 06 2007 | 3,825.00 | NOV 06 2041 | 34,350.00 |
| NOV 06 2008 | 4,200.00 | NOV 06 2042 | 34,350.00 |
| NOV 06 2009 | 4,610.00 | NOV 06 2043 | 34,350.00 |
| NOV 06 2010 | 5,060.00 | NOV 06 2044 | 34,350.00 |
| NOV 06 2011 | 5,540.00 | NOV 06 2045 | 34,350.00 |
| NOV 06 2012 | 6,055.00 | NOV 06 2046 | 34,350.00 |
| NOV 06 2013 | 6,600.00 | NOV 06 2047 | 34,350.00 |
| NOV 06 2014 | 7,185.00 | NOV 06 2048 | 34,350.00 |
| NOV 06 2015 | 7,800.00 | NOV 06 2049 | 34,350.00 |
| NOV 06 2016 | 8,460.00 | NOV 06 2050 | 34,350.00 |
| NOV 06 2017 | 9,165.00 | NOV 06 2051 | 34,350.00 |
| NOV 06 2018 | 9,960.00 | NOV 06 2052 | 34,350.00 |
| NOV 06 2019 | 10,860.00 | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

1-122 24-186                CONTINUED ON THE FOLLOWING PAGE                PAGE 2B

P O L I C Y   D A T A   ( C O N T I N U E D )

TABLE OF GUARANTEED VALUES

| DATE | CASH VALUE | PAID-UP INSURANCE |
|------|-----------|-------------------|
| NOV 06 1985 | $0 | $0 |
| NOV 06 1986 | $0 | $0 |
| NOV 06 1987 | $0 | $0 |
| NOV 06 1988 | $0 | $0 |
| NOV 06 1989 | $0 | $0 |
| NOV 06 1990 | $0 | $0 |
| NOV 06 1991 | $0 | $0 |
| NOV 06 1992 | $0 | $0 |
| NOV 06 1993 | $0 | $0 |
| NOV 06 1994 | $0 | $0 |
| NOV 06 1995 | $0 | $0 |
| NOV 06 1996 | $0 | $0 |
| NOV 06 1997 | $0 | $0 |
| NOV 06 1998 | $0 | $0 |
| NOV 06 1999 | $0 | $0 |
| NOV 06 2000 | $0 | $0 |
| NOV 06 2001 | $0 | $0 |
| NOV 06 2002 | $0 | $0 |
| NOV 06 2003 | $0 | $0 |
| NOV 06 2004 | $0 | $0 |
| NOV 06 2005 | $0 | $0 |

| POLICY ANNIVERSARY NEAREST AGE | CASH VALUE | PAID-UP INSURANCE |
|------|-----------|-------------------|
| 60 | $0 | $0 |
| 65 | 0 | 0 |

- - - - - - - - - - - - - - - - - - - - - - - - -

TABLE OF NONFORFEITURE FACTORS
FOR EACH $1000 OF FACE AMOUNT

| BEGINNING | FACTOR | BEGINNING | FACTOR | BEGINNING | FACTOR |
|-----------|--------|-----------|--------|-----------|--------|
| NOV 06 1986 | 1.53691 | NOV 06 1987 | 1.73335 | NOV 06 1988 | 1.94136 |
| NOV 06 1989 | 2.19558 | NOV 06 1990 | 2.42669 | NOV 06 1991 | 2.61159 |
| NOV 06 1992 | 2.79648 | NOV 06 1993 | 2.95826 | NOV 06 1994 | 3.18937 |
| NOV 06 1995 | 3.46671 | NOV 06 1996 | 3.80182 | NOV 06 1997 | 4.19471 |
| NOV 06 1998 | 4.61072 | NOV 06 1999 | 5.20006 | NOV 06 2000 | 5.67384 |
| NOV 06 2001 | 6.21696 | NOV 06 2002 | 6.78319 | NOV 06 2003 | 7.49964 |
| NOV 06 2004 | 8.27387 | NOV 06 2005 | 9.10588 | AND THEREAFTER | |

- - - - - - - - - - - - - - - - - - - - - - - - -

## DEFINITIONS

In this policy:

**We**, us and our refer to Transamerica Occidental Life Insurance Company.

A **rider** is an attachment to the policy which provides additional benefits.

**Age** means age on the nearest birthday.

**Lapse** means termination of the policy or continuation of the policy under a non-forfeiture option if any premium remains unpaid after the grace period.

**Reinstate** means to restore coverage after the policy has lapsed.

The **beneficiary** is the person to receive the proceeds in the event of the Insured's death.

**Cash Value** means the cash value shown in the policy data pages.

**Loan Value** means the maximum amount which may be borrowed under the loans provision.

**Indebtedness** is indebtedness to us for loans secured by this policy.

**Net Cash Value** means the cash value less any indebtedness.

## POLICY SUMMARY

This policy pays benefits in the event of the Insured's death before age 100, or at age 100 if the Insured is then living. The amount of the insurance is the face amount shown in the policy data. The premium increases each year for 15 years or to Insured's age 75, whichever is later. Premiums remain level thereafter and are payable to age 100.

Additional benefits, if any, are provided by rider.

This is a brief description. The insurance is fully described in the various provisions of the policy.

## PREMIUM PAYMENT AND REINSTATEMENT OF LAPSED POLICY

**Premiums** -- To keep this policy in force each premium must be paid in advance. All premiums must be paid at our Home Office or to an agent or cashier authorized by us. We will issue a receipt upon request. The first premium is due as of the policy date. Subsequent premiums are payable while the Insured is living and within the grace period. If any premium remains unpaid after the grace period, this policy will lapse subject to the non-forfeiture provisions. If a part of the premium ceases to be payable under the provisions of a rider, the premium will be reduced accordingly. The mode of premium payment may be changed on any policy anniversary to any other mode shown in the policy data.

**Schedules of Premiums** -- The guaranteed annual premium for each policy year is shown in the policy data under Schedule of Guaranteed Premiums. For any policy year we will not charge an annual premium greater than the guaranteed annual premium shown in the Schedule for that year.

We may reduce the guaranteed annual premium for a policy year exclusive of any riders, by mailing notice to the last known address of the owner and any assignee of record. The reduced annual premiums are not guaranteed, and the current scale of reduced annual premiums is shown in the Schedule of Non-Guaranteed Premiums for this policy. The reduced annual premium will be effective for one year beginning on the policy anniversary immediately following the date we mail the notice. Any reduction in the annual premium will apply to all policies having the same plan, issue year and premium schedule as this policy. The premiums for this policy will not be changed to an amount which would cause any cash value of this policy to be less than the minimum required by law.

The semi-annual, quarterly and monthly premiums for each policy year will be determined on the same basis used to determine the initial semi-annual, quarterly and monthly premiums.

1-122  24-186

PAGE 3

## GUARANTEED VALUES

The cash values shown in the policy data pages assume no indebtedness. The value between any two consecutive policy anniversaries shown will be determined by interpolation with allowance for the premiums paid for the period between such consecutive policy anniversaries.

The values may be borrowed, used to provide paid-up insurance, or taken in cash upon surrender of this policy, subject to the following provisions.

**Loans** -- After this policy has a cash value, we will make a loan subject to the following conditions:

1.  The maximum amount loaned will be the cash value of the policy at the end of the policy year in which the loan is made less:

    a.  any existing loan,
    b.  interest on the amount of the loan to the end of the policy year,
    c.  premiums payable under this policy to the end of the policy year.

2.  Interest at the loan interest rate of 8% (7.4% in advance) must be paid annually in advance on the loan. Interest not paid when due will be added to the loan and will bear interest at the same rate.

3.  The loan must be secured by satisfactory assignment of the policy. The loan will constitute a first lien on the policy in our favor.

Unless the loan has been repaid under a non-forfeiture option, any part of the loan may be repaid during the life of the Insured. Failure to repay the loan will not terminate this policy unless the loan exceeds the loan value of the policy and until 31 days after we have mailed notice of termination to the last known address of the owner and any assignee of record.

**Automatic Premium Loans** -- If this provision is effective, any premium which remains unpaid at the end of a grace period will be paid by automatic loan subject to the following conditions:

1.  If the loan value of this policy is insufficient to pay the premium, the next smaller premium payable, but never less than the quarterly premium, will be paid by automatic loan. If the loan value of this policy is insufficient to pay a premium under this provision, no automatic loan will be made and the policy will lapse subject to the non-forfeiture provisions.

2.  If on a policy anniversary the two premiums due immediately before that anniversary have been paid by automatic loan, we may change the frequency of premium payment to annual provided the loan value of this policy is sufficient to pay the annual premium.

3.  The automatic premium loan will be subject to the Loans provision.

This provision will only be effective if requested in the application or in a written notice filed at our Home Office. This provision may be made ineffective by written notice filed at our Home Office.

**Non-Forfeiture Provisions** -- After this policy has a cash value, if any premium remains unpaid after the grace period, the policy may be continued or surrendered under one of the following options:

> **Option 1. Cash Surrender** -- This policy may be surrendered for its net cash value.
>
> **Option 2. Reduced Paid-up Life Insurance** -- This policy may be continued from the due date of the unpaid premium as non-participating paid-up life insurance for a reduced amount. The amount of insurance will be determined by applying the net cash value as a net single premium for such insurance.

The following conditions will apply:

1.  If no option is selected, Option 2 will apply.

2.  No insurance continued under Option 2 will include additional benefits provided by any rider attached to this policy.

3.  Any insurance provided under Option 2 may be surrendered for its net cash value. If the surrender is made within 31 days after any policy anniversary, the cash value of the insurance used to determine the net cash value will not be less than its cash value on that anniversary.

4.  Option 1 may be selected in writing within 3 months following the due date of the unpaid premium.

**Payment of the Cash Value and Loans** -- We may delay the payment of the cash value and the making of a loan for a period of not more than six months after we receive written request for the cash value or loan. This provision will not apply to any loan made to pay premiums due us.

Owner of the Policy -- Before the Insured's death, only the owner will be entitled to the rights granted by this policy. If the owner is an individual and dies before the Insured, the rights of the owner belong to the executor or administrator of the owner unless otherwise provided in this policy. If the owner is a partnership, the rights belong to the partnership as it exists when a right is exercised.

Assignment of the Policy -- We are not responsible for the adequacy of any assignment. However, when an assignment is filed with us and recorded by us at our Home Office, the owner's rights and those of any revocable beneficiary will be subject to it.

Indebtedness -- Indebtedness will be deducted in any settlement under this policy.

No Dividends are Payable -- This policy does not participate in our profits or surplus.

## SETTLEMENT PROVISIONS

All policy proceeds will be paid when due in a lump sum, unless a settlement option is selected. Surrender, maturity or death benefit proceeds may be applied under a settlement option by the owner prior to the Insured's death. Death benefit proceeds may be applied under a settlement option by the beneficiary after the Insured's death, subject to any settlement agreement in effect at the time of the Insured's death. Upon satisfactory written request, we will pay any proceeds in accordance with one of the following settlement options:

Option A: Instalments for a Guaranteed Period -- We will pay the proceeds and accumulated interest in equal instalments for a guaranteed period of from one to thirty years, as requested. The instalments may be paid monthly, quarterly, semi-annually or annually. See Table A on page 8.

Option B: Instalments for Life with Guaranteed Period -- We will pay the benefits in equal monthly instalments as long as the payee is living, but in no event for a lesser period than the guaranteed period selected. The guaranteed period may be either 10 years or 20 years. See Table B on page 8.

Option C: Proceeds Deposited with Interest -- We will hold the proceeds on deposit with interest earned at the annual interest rate being paid as of the date of death, surrender or maturity. In no event will we pay less than 2 1/2% annual interest. Earned interest may be paid annually, semi-annually, quarterly or monthly as selected. The benefit and earned interest may be withdrawn in whole or in part at any time.

Option D: Instalments of a Selected Amount -- We guarantee to pay instalments of a selected amount until all of the benefit and accumulated interest have been fully paid.

Option E: Annuity -- We will apply the proceeds as a single premium to buy an annuity payable to one or two payees for life with or without a guaranteed period, as selected. The annuity payment will not be less than what our current annuity contracts are then paying.

Any other method of settlement may be arranged subject to our agreement.

The payee must be an individual receiving payment in his or her own right. The amount applied under any option must be at least $1,000 and must provide payments of at least $10 to each payee.

The first instalment under an option will be payable on the date of death, maturity or surrender, whichever is applicable. Any unpaid balance held under Options A or D will accumulate interest at the rate being paid at the time of settlement, but in no event will we pay less than 3% annual interest. Any benefit held by us will be combined with our general assets.

If the payee does not live to receive all guaranteed payments under Options A, B, D or E or any proceeds on deposit under Option C, plus any accumulated interest, we will pay the remaining benefit in a lump sum, unless otherwise directed. The lump sum will be the present value of any future guaranteed payments, commuted at a rate equal to the guaranteed interest rate.

## PREMIUM DEPOSIT AGREEMENT
### ENDORSEMENT

Transamerica Occidental Life Insurance Company has issued this endorsement as a part of the policy to which it is attached.

**Deposits** – We will accept deposits for the purpose of paying future premiums on the policy, subject to the provisions of this endorsement. The accumulation of such deposits or any remainder is called "the deposit fund" in this endorsement. Each deposit must be made to us in exchange for an official receipt signed by our President or Secretary. Deposits may be combined with our general assets.

**Limit on Deposits** – Each deposit must be at least $5. The amount of the deposit fund may not exceed the sum of the future premiums for the policy. Any deposits which are not acceptable under this provision will be refunded to the owner of the policy.

**Automatic Premium Payment** – Any premium for the policy which remains unpaid at the end of the grace period will be paid automatically from the deposit fund. If the deposit fund is insufficient to pay such premium, the next smaller premium payable will be paid automatically from the deposit fund. If the deposit fund is insufficient to pay a premium under this provision, the deposit fund will be refunded to the owner of the policy, and the premium for the policy will remain unpaid, subject to the provisions of the policy. Premiums will be paid from the deposit fund before payment is made under any provision for automatic premium loan under the policy.

**Interest** – Interest will be allowed daily from the date of deposit at the rate determined by us. In no event will the interest rate be less than 2 % per year. Interest will be compounded annually on the policy anniversary

**Settlement** – Upon death of the Insured, the deposit fund will be paid in one sum to the owner of the policy, except if the Insured is the owner, the deposit fund will be paid in one sum to the beneficiary of the policy. If the policy is surrendered or is continued under a non-forfeiture option, or if a premium for the policy is waived under any rider providing a waiver of premium benefit, the deposit fund will be paid in one sum to the owner of the policy.

**Withdrawal** – Upon written request to us, the owner of the policy may make withdrawals from the deposit fund. Each withdrawal must be at least $50 except for full withdrawal of the deposit fund. We may defer payment of withdrawals in cash for a period of not more than 90 days or any shorter period required by law.

**Assignment** – No assignment of the rights under this endorsement may be made except in an assignment of the policy. Any assignment of the policy will include the rights under this endorsement unless specifically excluded in such assignment.

Signed for the Company at Los Angeles, California, on the date of issue of the policy unless a different date is shown here.

Secretary                                    President

1-006 17-178

## CONDITIONAL EXCHANGE OPTION

Transamerica Occidental LIfe Insurance Company has issued this option as part of the policy to which it is attached.

This policy may be exchanged for a new policy on the life of the Insured. The exchange can only be made on the 10th, 11th, 12th, 13th, 14th, or 15th policy anniversary, but not beyond age 80. The selected policy anniversary will be the date of the exchange.

The exchange is subject to the following conditions:

1. Written request must be made to us within 60 days before or after the proposed date of exchange.

2. Premiums for this policy must be paid to the date of exchange.

3. The exchange is subject to evidence of insurability of the Insured satisfactory to us. Upon receipt of a request to exchange this policy, we will inform the owner of the evidence of insurability required.

   The evidence of insurability which we require will be paid for by us with an initial request for exchange of this policy, whether the request is approved or denied. If the initial request is denied, we will also pay for the evidence of insurabilty which we require for a later request, but only is such request is approved.

4. The policy date of the new policy will be the date of exchange.

5. The new policy will be the same plan of insurance as this policy. The face amount of the new policy cannot exceed the face amount of this policy.

6. Premiums for the new policy will be based on the Insured's age nearest birthday to the date of exchange.

7. If an exchange is made after age 70 of the Insured, the new policy will not include a Conditional Exchange Option.

8. The first five guaranteed premiums for the new policy will be no greater than the published guaranteed premiums for this plan of insurance as if originally issued at the Insured's age on the date of exchange.

   The first annual premium rate per $1,000 face amount for the new policy will be discounted by 10 percent. This discount will not apply to any riders.

9. The contestability provison will start anew in the new policy, but only to the extent that the face amount of the new policy will exceed the amount that could have been provided under this policy if the premiums paid for the new policy had been applied to premium payments due on this policy. As a result, a lower death benefit may be payable.

10. Any rider attached to this policy may be continued in the new policy at the premiums shown in the policy data of this policy, subject to the provisions of the rider. Any provision in the rider providing for automatic termination of the rider solely because of the termination of this policy shall not prevail.

11. The new policy will not become effective unless and until the full first premium is paid to us, and the new policy is delivered to the owner during the lifetime and continued insurability (as stated in the request for exchange) of the Insured.

12. Until the new policy becomes effective, this policy will continue in force subject to its provisions. This policy will automatically terminate when the new policy becomes effective. In no event will we provide insurance under both this policy and a new policy at the same time.

Signed for the Company at Los Angeles, California, on the date of issue of the policy.

EXECUTIVE VICE PRESIDENT, GENERAL COUNSEL
AND CORPORATE SECRETARY

PRESIDENT

1-003 04-182

COMPLAINT NOTICE: Should any dispute arise about your premium or about a claim that you have filed, contact the agent or write to the company that issued the policy. If the problem is not resolved, you may also write to the State Board of Insurance, Department C, 1110 San Jacinto, Austin, Texas 78786. This notice of complaint procedure is for information only and does not become a part or condition of this policy.

9-002 44-184

Transamerica Occidental
Life Insurance Company
Home Office: Los Angeles, CA

Policy Form        T-20
Individual Life Insurance

Graded Premium Life Insurance to Age 100

Premiums Increase Annually for 15 Years
or to Age 75, Whichever is Later
Premiums Payable During Life of Insured to Age 100

Face Amount Payable at Age 100
or at Death of Insured

Non-Participating - No Annual Dividends Payable

1-122 24-186

# Exhibit "I"



## TRANSAMERICA
### ⊿ LIFE COMPANIES

Transamerica Center
1150 South Olive
Los Angeles, CA 90015

# Change of Plan Option/
# Conversion Application

**(Check One)**

☑ Transamerica Occidental Life Insurance Company          ☐ Transamerica Life Insurance and Annuity Company

Insured: _ALAN N. OLLHESCO_

Owner: _ANTHONY M. LIVOTI, JR., P.A._

_ANTHONY M. LIVOTI, JR., P.A._
_C/o V91_

Insured's Address: _c/o V91 2755 E.OAKLAND PK. BLVD._
_STE. 230_
_FORT LAUDERDALE, FL 33306_    REDACTED

Owner's Address: _2755 E. OAKLAND PARK BLVD._
_STE. 230_
_FORT LAUDERDALE, FL 33306_

Social Security No.: _

Social Security No.: ____ —

Birthdate: _02.12.54_          Sex: ☑ Male ☐ Female

Tax or Employer ID No.: _____

I WISH TO EXCHANGE MY CURRENT POLICY, NUMBER _4020862Y6_____, FOR THE FOLLOWING POLICY:

1. Plan Name: _TRANSULTRA EX_          Kind Code: _____

2. Face Amount: _1,500,000_          New Policy Date: _____

3. ☐ Smoker ☑ Nonsmoker *(Complete a Nonsmoker Questionnaire if applicable.)*

4. If the plan applied for has cash values and the Automatic Premium Loan provision is available, the APL provision is to be:
   ☑ Effective ☐ Not Effective.

5. Riders to be included:

   ☑ All riders currently allowed under present policy and available for continuance under new plan of insurance.

   ☐ Only the following riders: (Specify) _____

   ☐ Do not carry over any riders or options to the new policy.

6. Complete for Flexible Premium Plans:
   Required Annual Premium (RAP) (or Committed RAP)          $ _2,124.00_
   Single Premium          $_____

   Planned Periodic Premium          $ _2,124.00_
   Per: ☑ A ☐ S ☐ Q ☐ M *(If available)*
   Plus Initial Lump Sum          + $_____
   Equals Total Initial Payment          = $_____

7. Mode of Premium Payment: ☑ A ☐ S ☐ Q ☐ M *(If available)*
   NOTE: Any premium refund on your current policy will be ~~credited towards the premium due on your new policy.~~ _REFUNDED TO POLICY OWNER._

8. Billing Type: ☑ Direct Collection
   ☐ Pre-authorized Withdrawal *(Quarterly or Monthly only)*

9. Unless designated otherwise, any new plan shall have the same beneficiary as the present policy. If a different beneficiary designation is desired, complete the following. *(State the full name of the new beneficiary and the beneficiary's relationship to the insured. If more than one beneficiary is designated, then proceeds will be payable equally to the survivors unless otherwise indicated.)*
   _BENEFICIARY DESIGNATIONS TO REMAIN AS LAST RECORDED UNDER PF 4020862Y6_

10. Additional Instructions: _CK# 34557 AMT. $2,124.00 ATTACHED_

Signed at: _____          On: _____ 2003

Witness: _____          Insured: _ANTHONY M. LIVOTI, JR., PRESIDENT, P.A._

Address of Witness: _2755 E. Oakland Park Blvd -_          Owner(s): _ANTHONY M. LIVOTI, JR., PRES._
_Ste. 230 Ft. Lauderdale, FL 33306_

AGENT: _DANIEL_ (LAST)          _ALAN_ (FIRST)

GA/SA CODE: _9159_ (4 DIGITS)   _908656_ (6 DIGITS)   SHARE % _100_

**APPLICATION (CHANGE)**

TOS 370 M-694



Exhibit "J"

**Application Part 1**

Los An    , CA 90015     40208626-8     dividual Life Insurance

☑ Transamerica Occidental Life Insurance Company      ☐ Transamerica Assurance Company   { check one }

| Questions 1 through 7 relate to: | Questions 1a through 7a relate to: |
|---|---|
| ☐ Proposed Insured under individual policy<br>☐ Proposed Insured under juvenile policy (Also complete 1a - 7a)<br>☐ First Proposed Insured under joint life policy | ☐ Spouse of Insured if Family Insurance is applied for<br>☐ Applicant for a juvenile policy<br>☐ Second Proposed Insured under joint life policy |

**1. Name:** ALAN    N.

First
**DUMESCO**    Middle **MD**

Last     Title (Mr., Mrs., Ms., Dr.)

Social Security Number

**1a. Name:**

First     Middle

Last     Title (Mr., Mrs., Ms., Dr.)

Social Security Number

**2. Residence Address:** Give No., Street, City, State and Zip Code
2308 McCORMACK RD     REDACTED
Rockville, MD   20850

**2a. Residence Address:** Give No., Street, City, State and Zip Code

**3. Sex:** ☑Male ☐ Female
**4. Date of Birth:** Month 2 Day 12 Year 54

**3a. Sex:** ☐ Male ☐ Female
**4a. Date of Birth:** Month  Day  Year

**5. Age:** (Nearest Birthday) 32
**6. Place of Birth:** NEW YORK  NY

**5a. Age:** (Nearest Birthday)
**6a. Place of Birth:**

**7. Occupation (Industry & Duties):** Exec. V-Pres
How long in this occupation? ____ Yrs.
Name of Employer: WORLD DATA SYSTEMS INC.
Address: 5810 HUBBARD DR.
Rockville, MD  20852

**7a. Occupation (Industry & Duties):** ____
How long in this occupation? ____ Yrs.
Name of Employer: ____
Address: ____

**8. Telephone No.** { Business ( ____ ) ____
{ Residence ( ____ ) ____

**9. Name and Amount of Plan Applied For** (Complete 11, 12 or 15):

| | |
|---|---|
| T-20 | $500,000 |

**10. Class of Risk Applied For:** N|S

**11. Whole Life or Endowment Insurance** (Including Trendsetter 20)
a. Automatic Premium Loan: ☐ Effective ☐ Ineffective
b. Dividend Option (for Participating Plans only):
☐ Cash     ☐ Paid-Up Additions
☐ Premium Reduction   ☐ Accumulations
☐ Other: Specify ____

**12. Term Insurance - Non Participating**
a. Term Period ____ Years
b. ☐ Convertible
☐ Non-Convertible
c. Face Amount ☐ Level ☐ Decreasing
d. Move Over Option ☐ Yes ☐ No
e. Amortization Rate ____ %

**13. Additional Benefits by Rider:**

| ☐ WP | ☐ Convertible<br>☐ Non-Convertible | ☐ FR (2 Parent) | Units |
|---|---|---|---|
| ☐ AI | $ | ☐ FR (1 Parent) | Units |
| ☐ GIR | Per Option<br>$ | ☐ CR | Units |

☐ Other (Specify Amount) ____

☐ PI (Juvenile Policy only)   ☐ Death   ☐ Death or Disability

☐ Monthly Income Rider  (Complete APE-11)

JOINT LIFE PLANS: The benefits desired apply to: ☐ Both Proposed Insureds
☐ One Proposed Insured   Name: ____

**14. Children to be covered under Family or Children's Rider**
(Show additional children & details in Remarks on Page 2):

| | Name | Sex | Ins. Age | Birthdate |
|---|---|---|---|---|
| Child | | | | |
| Child | | | | |
| Child | | | | |
| Child | | | | |

a. Are there any children on whom coverage is not being requested?   ☐ Yes ☐ No
b. Are there any children shown above who do not live with the applicant?   ☐ Yes ☐ No
(If "Yes", give name and reason in Remarks on Page 2).

**15. Complete For Flexible Premium Plans**
Planned Periodic Premium   $ ____
Per: ☐ A ☐ S ☐ Q ☐ M
Plus Initial Lump Sum   + ____
Equals Total Initial Payment   = ____

**16a. Mode of Premium Payment:**
☑ Annually
☐ Semi-Annually
☐ Quarterly } If available
☐ Monthly }

**16b. Billing Type will be Direct Collection unless otherwise noted.**
☐ Pre-authorized Check (Q&M only)
☐ Salary Deduction No. ____
☐ Mortgage Franchise No. ____
☐ Government Allotment (M only)

**17. Special Information for Premium Notices:**
a. (Complete if other than address on Question 2 is to be used.)
Name: ____
Address: ____
b. Is combined billing requested?  ☐ Yes  ☐ No
If "Yes", give details in REMARKS on Page 2.

MPA 6-185

Page 1

**18. OWNER:** Complete if Proposed Insured is an adult. If Proposed Insured is under age 16, complete instead Questions 25 - 27.

The owner will be
☐ Proposed Insured   ☐ The Joint Insureds   ☐ Other (Complete below)
If "Other" the owner is:
☐ Individual ) S.S. or Tax No. _____
☑ Corporation
☐ Partnership } Employer Identification No. 52-1117135
☐ Trustee

Full Name: WORD DATA SYSTEMS INC

Address: 40208626-8

---

Complete questions 20 through 24 with respect to all persons to be covered.

**20. Foreign Travel, Aviation and Military:**                        Yes  No
a. Except for vacation trips, does any person to be covered intend to travel outside the U.S. or Canada within the next two years? . . . . . . . . . . . . . . . . . . . . . . .  ☐  ☑
If "Yes", give details in Remarks.
b. Does any person to be covered intend to fly other than as a passenger or has he or she flown other than as a passenger during the past two years? . . . . . . . . . . . . . . .  ☐  ☑
If "Yes", complete Aviation Questionnaire.
c. Is any person to be covered a member, or does he or she intend to become a member, of the armed forces including reserves? . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐  ☑
If "Yes" give details in Remarks.

**21. Avocation and Sports:**                                        Yes  No
Does any person to be covered participate in recreational activities involving:
a. Aeronautics (including hang-gliding, ultra light, soaring, sky diving, ballooning)? . . . . . . . . . . . . . . . . . . . .  ☐  ☑
b. Powered racing or competitive vehicles (including motor-cycles, automobiles and motor boats)? . . . . . . . . . . .  ☐  ☑
c. Recreational vehicles over open terrain, trails, sand, snow or ice (including snowmobiles, dirt bikes and dune buggies)?  ☐  ☑
d. Any of the following – skin or scuba diving, mountain climbing, rodeos, competitive skiing? . . . . . . . . . . . .  ☐  ☑
If "Yes", to any of the above, complete an Avocation and Sports Questionnaire.

**22. Other Insurance:**                                             Yes  No
a. Has any company declined to issue, reinstate or renew, rated, modified, postponed or cancelled, any life or health insurance on any person to be covered? . . . . . . . . . .  ☐  ☑
b. Will insurance, including annuities, in any company be discontinued or changed if the insurance applied for is issued? . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐  ☑
c. Is any application for life or health insurance on any person to be covered pending in any other company?  ☐  ☑
Explain any "Yes" in Remarks. Give name of company and person affected.
d. Life Insurance now in force  (Personal) . . $ 1,000,000
(All companies)           (Business) . . $ _____
e. Accidental Death insurance now in force . $ _____
f. Disability Income insurance (Group and Individual coverage) now in force. . . . . . $ _____

**23. Smoking Habits:**                                              Yes  No
a. Has any person to be covered smoked tobacco cigarettes in the past year?. . . . . . . . . . . . . . . . . . . . . . . . .  ☐  ☑
If "Yes", indicate in Remarks the person and number of cigarettes per day.
b. Is tobacco other than cigarettes used by any person to be covered? . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐  ☑
If "Yes", give details in Remarks including frequency of use.

---

**19. Beneficiary:** Print full name and relationship to Proposed Insured. If more than one, then equally to the survivors unless otherwise indicated.

WORD DATA SYSTEMS, INC

If the policy or rider provides monthly income payments, the beneficiary has the right, unless withdrawn, to receive the commuted value of such payments in one sum. Indicate if the right is to be withdrawn: _____

**24. Driving Record:**
a. What is your Driver's License No. _____ State _____
Within the past 3 years, has any person to be covered been convicted of or pleaded guilty to:                    Yes  No
b. Three or more moving violations and/or accidents?. . . . .  ☐  ☑
c. Driving under the influence of alcohol and/or drugs?. . . .  ☐  ☑
If "Yes", give name of person(s) affected and explain in Remarks.

---

Complete questions 25 through 27 with respect to juvenile policies only.

**25. Owner of Policy on a Juvenile:**
The applicant identified in Questions 1a through 7a on page 1 will be the owner unless a different owner is specifically shown in Remarks.

Relationship to Proposed Insured (child) _____
If other than parent or grandparent, either a parent or guardian must sign this application in addition to the Applicant.

**26. Give full name of parents:**
Father _____
Mother _____

**27.** State the total amount of life insurance on each brother and sister of the child.
Name _____ Amount _____
Name _____ Amount _____
If more space is required, answer in Remarks.

**Remarks:**

**Home Office Changes in the Application:**

NOT APPLICABLE IN MARYLAND

---

MPA 6-185                                   N⁰ 014385        Page 2

It is represent    nat the statements and    /ers given in this applic.    are true, complete, an.    .rectly recorded to the  _   . of my (our) knowledge and belief. It is agreed that. (1) This application shall consist of Part I and Part II and shall be the basis for any policy issued on this application; (2) Except as otherwise provided in the conditional receipt, if issued, with the same number as Part I of this application, any policy issued on this application shall not take effect unless all of the following conditions are met: (a) The full first premium is paid, (b) The policy is delivered to the owner during the lifetime of the person(s) to be covered by such policy; and (c) All of the statements and answers given in this application to the best of my (our) knowledge and belief continue to be true and complete as of the date of delivery of the policy; (3) No waiver or modification shall be binding upon the Company unless in writing and signed by the President or a Vice President and the Secretary or an Assistant Secretary; (4) The Company may indicate changes in the space for Home Office Changes in the Application for administrative purposes only. Any other changes in this application shall be subject to written consent by the owner.

Amount paid with this Application: $ _____ - O - _____

Signed at __Rockville MD_____ on ___9/24_____, 19 85

X X _Xames D. Craig_____     X X _____
Witness to all signatures (Licensed Resident Agent, is required)          Signature of adult to be insured

Countersigned
(if your state requires) _____
                         (Licensed Resident Agent)          _____
                                                             Printed name of above

_____          X _____
(Owner, if other than Proposed Insured, must sign above.)      Signature of other adult to be insured, if any
Murry Dumesco , President
Word Data Systems, Inc.
If owner is a corporation, an authorized officer other than the       _____
Proposed Insured must sign on the "Owner" line. Give title and              Printed name of above
full name of the corporation on the next line.

## AUTHORIZATION TO OBTAIN INFORMATION

☐ TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY     } ("the Company")
☐ TRANSAMERICA ASSURANCE COMPANY

I/we authorize any physician, medical practitioner, hospital, clinic, other medical or medically related facility, insuring or reinsuring company, the Medical Information Bureau, Inc., consumer reporting agency, or employer having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or treatment of me (us) or my (our) minor children and any other non-medical information of me (us) or my (our) minor children to give the Company or its legal representative, any and all such information.

I (we) understand the information obtained by use of the Authorization will be used by the Company to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by the Company to any person or organization except to reinsuring companies, the Medical Information Bureau, Inc., or other persons or organizations performing business or legal services in connection with my (our) application, claim, or as may be otherwise lawfully required or as I (we) may authorize.

I (we) know that I (we) may request to receive a copy of this Authorization.

I (we) agree that a photographic copy of this Authorization shall be as valid as the original.

I (we) agree this Authorization shall be valid for two and one half years from the date shown below.

I (we) understand that if an investigative consumer report is ordered in connection with this application, I (we) may elect to be interviewed in connection with the preparation of the report and, upon request, I (we) will be provided with a copy of the report. I (we) elect to be interviewed if an investigative consumer report is prepared:          ☐ Yes          ☐ No

I (we) acknowledge receipt of the Notice of Disclosure of Information.

Signed this __24__ day of __Sept_____ 19 85

                                             X _X_ _____
                                                  Signature of Proposed Insured
                                                  (or parent or guardian if proposed insured is a minor)

_____
Name of Minor Child

_____
Name of Minor Child

_____          X _____
Name of Minor Child                              Signature of Spouse, if to be covered

MPA 6-185                                    № 014385          Page 3

# Exhibit "K"

TRANSAMERICA
LIFE COMPANIES

☒ Transamerica Occidental Life Insurance Company
☐ Transamerica Assurance Company
☐ Transamerica Life Insurance & Annuity Company

**Beneficiary Designation**

HOME OFFICE: Los Angeles

Policy No.: 40208626
Insured: Alan Neil Dumesco

This beneficiary designation cancels all prior beneficiary designations and settlement agreements for the policy. Please see instructions, signature requirements, special provisions and sample beneficiary designations before completing beneficiary designation form. The proceeds shall be paid in one sum to the designated beneficiary(ies), unless otherwise requested.

**BENEFICIARY:** (Print full name, address and relationship to Insured) If more than one beneficiary is named, payment will be made in equal shares to the survivor(s), unless otherwise indicated.

Murray Dumesco - Father

Constance Dumesco - Mother

Signed at _____ Rockville, MD _____ on _____ July 18 _____ 19 90

_Dally W. Gunson_
Witness
_12808 Crisfield Rd Silver Spring MD 20906_
Address of Witness

X _Alan Neil Dum_
Owner(s)

This beneficiary designation has been recorded at the Home Office of the Company, _____ Manager
Policy Change Department

Date Recorded _____ AUG 2 2 1990 _____ By _____

**INSTRUCTIONS**

The owner of the policy must change the beneficiary in accordance with the terms of the policy.

If the policy requires that a change of beneficiary be endorsed on the policy, you do not have to submit the policy with the designation form. Upon recording the beneficiary designation, the Company will send you an endorsement, modifying the change of beneficiary terms of the policy. The endorsement should be attached to your policy.

If a beneficiary designation is desired for more than one policy, complete a separate form for each policy.

Living children must be named whenever unborn children of the Insured are designated as beneficiaries.

Full name, address and relationship of beneficiary must be shown.

If a beneficiary is a married woman furnish her given name, e.g. "Mary S. Doe," not "Mrs. John A. Doe."

Requests for special settlement agreements should be sent to the Home Office for preparation of the proper request form.

**SIGNATURE REQUIREMENTS**

INDIVIDUAL IS THE OWNER — Individual must sign on the line provided for "Owner."

PARTNERSHIP IS THE OWNER — Two authorized partners must sign below the name of the partnership, the title "Partner" must follow their names.

CORPORATION IS THE OWNER — One officer other than the Insured must sign below the name of the corporation. The officer's title (President, General Manager, Vice President, Secretary or Assistant Secretary) must follow the signature. A resolution is required to support any other signature. A beneficiary change to someone other than the corporation requires the signature of two authorized officers, other than the Insured, or a resolution.

TRUSTEE(S) IS THE OWNER — The trustee(s) must sign above wording similar to the following: "John Doe, Trustee under Trust Agreement dated June 1, 1984."

BENEFICIARIES — Any beneficiary designated irrevocable must sign any subsequent beneficiary designation.

COMMUNITY PROPERTY STATES — In states having community property laws, (Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas and Washington) or states having marital property laws (Wisconsin), the spouse of the policyowner should also sign this form.

TOB-306 M Ed. 189 Printed in U.S.A.

# SPECIAL PROVISIONS

IF THE BENEFICIARY DIES — The interest of any beneficiary who dies be[fore] [...] the [insured] shall terminate at the death of the bene[fi]ciary. The interest of any beneficiary who dies at the time of, or within 30 [day]s after, the insured's death will also terminate if no proceeds have been paid to the beneficiary. If the interest of a designated ben[eficiary] ... [h]as terminated, any proceeds payable will be paid to the owner of this policy. If the owner is not living at that time, any p[roce]eds payable will be paid to the executor or administrator of the Owner's estate.

PROTECTION OF THE PROCEEDS — To the extent permitted by law, no [pay]ment of proceeds or interest will be subject to the claims of any creditors of the beneficiary or to any legal process against the ben[eficiary].

RIGHT OF COMMUTATION — If the policy provides monthly income payments [no] beneficiary of [poli]cy shall have the right to commute payments unless such right is withdrawn from such beneficiary in writing and recorded at the Home Office of the Company.

The Company may rely on an affidavit by any responsible person to determine the identity, or the non-existence of any beneficiaries not identified by name. If a beneficiary is a partnership, such beneficiary shall [be] the partnership as constituted at the death of the Insured.

If any trustee is named as beneficiary, the Company shall not be responsible [for] the disposition by the trustee of any proceeds paid to such trustee.

Payment of proceeds to any beneficiary is subject to the interest of any assignee.

Any payment to a minor beneficiary shall be made to the legally appointed guardian of the minor, unless otherwise permitted by law.

## SAMPLE BENEFICIARY DESIGNATIONS

INSURED'S ESTATE — The Executor or Administrator of the Insured's estate.

IRREVOCABLE BENEFICIARY — Jane Doe, Former Wife of the Insured, 123 Main St., Anytown, CA 12345, irrevocably designated.

ONE BENEFICIARY — Jane Doe, Wife, 123 Main St., Anytown, CA 12345.

TWO BENEFICIARIES — John Doe, Father and Jane Doe, Mother, 123 Main St., Anytown, CA 12345.

ONE PRIMARY AND ONE CONTINGENT — Jane Doe, Wife, 123 Main St., Anytown, CA 12345, if living, otherwise to John Doe, Jr., Son, 123 Main St., Anytown, CA 12345.

SPOUSE OTHERWISE CHILDREN — Jane Doe, Wife, 123 Main St., Anytown, CA 12345, if living, otherwise to any children born of the marriage of the Insured and said wife. (Living children must be named).

Jane Doe, Wife, 123 Main St., Anytown, CA 12345, if living otherwise to John Doe, Jr., Son, 123 Main St., Anytown, CA 12345, and any other children of the Insured. (Living children must be named).

PER STIRPES DESIGNATIONS — Jane Doe, Wife, 123 Main St., Anytown, CA 12345, if living, otherwise to John Doe, Jr., Son, 123 Main St., Anytown, CA 12345, and any other children of the marriage of the Insured and said wife who are living and per stirpes to the children who are living of any deceased children of the Insured by said wife.

Jane Doe, Wife, 123 Main St., Anytown, CA 12345, if living otherwise in equal shares to John Doe, Jr., Son, 123 Main St., Anytown, CA 12345, and Mary Doe, Daughter, 123 Main St., Anytown, CA 12345, who are living and per stirpes to the children who are living of any deceased children of the Insured. If there be no surviving beneficiaries, payment shall be made to Mary Doe, Mother of the Insured, 123 Main St., Anytown, CA 12345.

TWO BENEFICIARIES IN UNEQUAL AMOUNTS — Payable in 3 equal parts: 2 parts to Jane Doe, Mother, 123 Main St., Anytown, CA 12345; and 1 part to John Doe, Brother, 123 Main St., Anytown, CA 12345.

TRUSTEE UNDER LIVING TRUST — ABC Bank, Anytown, CA 12345 Trustee under Trust Agreement dated February 1, 1984, as a[men]ded.

TRUSTEE UNDER LAST WILL AND TESTAMENT — The trustee or successor trustee, under the last will and testament of the Insured as admitted to probate. However, should the Insured d[ie] intestate or if no trust is created, then to the executor or administrator of the Insured's estate.

SPECIFIC AMOUNT — $50,000 of the proceeds or the entire proceeds, less than $50,000 shall be paid to ABC Co., Inc., 123 Main [St.], Anytown, CA 12345, Employer of the Insured, remainder [if any] to Jane Doe, Wife, 123 Main St., Anytown, CA 12345.

INDIVIDUAL CREDITOR — John Doe, 123 Main St., Anytown, CA 12345, Creditor, as his interest may appear, if living otherwise to the executor or administrator of said creditor's estate as [his] interest may appear, remainder if any, to Jane Doe, Wife, 123 Main St., Anytown, CA 12345.

CORPORATE CREDITOR — ABC Co., Inc., 123 Main St., Anytown, CA 12345 Creditor of the Insured, a California corporation its successors and assigns, as its interest may appear, remainder [if] any, to Jane Doe, Wife, 123 Main St., Anytown, CA 12345.

JOINT-POLICY — The beneficiary for John Doe, is Jane Doe, Wife, 123 Main St., Anytown, CA 12345 if living, otherwise to Mary Doe, Daughter, 123 Main St., Anytown, CA 12345. The beneficiary for Jane Doe, is John Doe, Husband, 123 Main St., Anytown, CA 12345, if living, otherwise to Mary Doe, Daughter, 123 Main St., Anytown, CA 12345.

Case 1:05-cv-20973-FAM   Document 1   Entered on FLSD Docket 04/11/2005   Page 99 of 120

# Exhibit "L"

(ORIGINAL)

# MULTI-COMPANY
# ASSIGNMENT TO TRANSFER OWNERSHIP
(This form does not change the beneficiary of the policy)

Policy No. ....... 40208626 ..................... Insured ........... Alan Neil Dumesco .................................

issued or assumed by

☒ TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY
☐ TRANSAMERICA ASSURANCE COMPANY
☐ TRANSAMERICA LIFE INSURANCE & ANNUITY COMPANY
(herein called "the Company")

For good and sufficient consideration, all right, title and interest of the undersigned in this policy is hereby assigned for the purpose of transferring owner-ship to

**NAME OF NEW OWNER:**   Murray Dumesco and Connie Dumesco, as Joint Tenants With Rights of Survivorship.

**ADDRESS OF NEW OWNER:**   11400 Strand Drive, Rockville, Maryland   20852

The new Owner is:   ☒ Individual   ☐ Corporation   ☐ Partnership   ☐ Trustee

| If Individual<br>Social Security No. | | If Partnership, Corporation, Trustee<br>Employer Identification No. |
|---|---|---|
| REDACTED    – Murray<br>            – Connie | (Include all Hyphens) | |

Before the death of the Insured, the Owner of this policy alone shall be entitled to all rights granted by this policy or allowed by the Company under this policy. If the Owner is a partnership, all rights of the owner belong to the partnership as constituted at the time a right is exercised. If the owner is an individual and dies before the Insured, all rights of the owner belong to the executor or administrator of the owner.

The Company is hereby requested to add an endorsement to this policy to agree with the provisions of this assignment. The endorsement shall be a statement of the ownership of this policy as recorded in the Home Office of the Company on the effective date of the endorsement. The Company does not guarantee any transfer of ownership.

BENEFICIARY NOT CHANGED: Without in any way restricting the right of the Owner to change the beneficiary, this assignment does not change the beneficiary of the policy. Unless the right to change the beneficiary is specifically exercised by the Owner, the beneficiary of the policy shall be as designated at the date of this assignment.

This assignment includes any rider or supplementary agreement attached to or relating to the policy. This assignment shall apply to and be effective under any policy issued in exchange for or as a conversion of the policy.

If this assignment is made upon any trust, the Company shall not be bound by any trust agreement nor responsible for the application of any payments made under the policy. The Company may rely solely upon the signature of the owner under this assignment to any receipt, release, waiver or any transfers or other instruments, to whomsoever made.

The validity of this assignment is hereby guaranteed by the undersigned.

The signature to this assignment is a warranty that the undersigned is legally capable of executing this assignment and that no proceedings in insolvency or bankruptcy have been instituted by or against the undersigned.

DATE SIGNED: ...... June 3, 1991 ....................... 19 ......

**ASSIGNMENT BY**
**Signature Requirements On Reverse Side**

XX _Sally W. Farson_
Witness

XX _Alan Neil Dumesco_
Owner(s)        Alan Neil Dumesco

XX _12808 Crisfield Rd Silver Spring Md 20906_
Address of witness

XX _Gloria Forman_
Witness

XX _11432 Susquehanna Rd., Damascus, Md 20172_
Address of witness

_Corporations must complete Resolution to Assign on reverse side._

This assignment has been recorded at the Home Office of the Company in Los Angeles, California. The Company assumes no responsibility for the sufficiency or validity of the assignment.

Date recorded ...... JUN 12 1991 .......................

By ...... _Charles L King_ Manager
_Policy Change Department_

## ASSIGNMENT

TOA-504-M ED. 5-88

## SIGNATURE REQUIREMENTS

INDIVIDUAL OWNER(S) — The signature of the owner or owners.

CORPORATE OWNER — Unless "interested" the following officers are authorized to sign.

President or General Manager    <u>OR</u>    Vice President <u>plus</u> one of the following:
Corporate Secretary
Assistant Corporate Secretary

(Example of where an officer is "interested" is when ownership is transferred to the signing officer, the officer's business, or a member of the officer's family.)

NOTE: Any officer may sign whether "interested" or not, if a certified copy of the resolution of the Board of Directors authorizing the transaction is submitted.

PARTNERSHIP — Two partners must sign below the name of the partnership.

TRUSTEE OWNER — Signature of all trustees, unless trust provides otherwise. Name of trustee and date of trust must also be shown.

GUARDIAN OR CONSERVATOR — The signature of a guardian or conservator, whichever applies. Certified copies of the letters of guardianship/conservatorship and the court order which authorizes the change must also be submitted.

JOINT VENTURE — All joint ventures must sign below the name of the Joint Venture.

COMMUNITY PROPERTY STATES — In states having community property laws, (Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas and Washington) or states having marital property laws (Wisconsin), the spouse of the policy-owner should also sign this form.

### NOTE

*This form is for the assistance of a corporate assignor's attorney and may be used instead of a separate certified resolution if it is sufficient.*

### RESOLUTION TO ASSIGN

RESOLVED that..........................................   ...............................................................................................................
(name and title)

and...............................................................   ...............................................................................................................
(name and title)

of this corporation, be, and they are hereby authorized, directed and empowered, as the act and deed of this corporation, to execute an assignment in favor of.............................................................................................................

..................................................................   .............................................................................................................
(name of new owner)

of all right, title and interest of this corporation in and to policy No. ......   ...........................................................................

on the life of ...................................................   ..............................................................................................,
(name)

such assignment being understood to include any rider of supplementary agreement attached to or relating to the policy.

·    *    *    *    *

I, ...................................................................   ...........................................................   .....Secretary of

.............................................................................................................................................................a

corporation, do hereby certify the foregoing to be a true and correct copy of a resolution adopted at a meeting of the

Board of Directors of said corporation on....   ........................   ...................................................19. ........ .., and that the
(date)

number of members required for a quorum were present.

I further certify that no bankruptcy proceedings are now pending against said corporation and that the resolution authorizing such action has not been revoked.

IN WITNESS WHEREOF, I have hereunder set my hand officially and affixed the seal of this corporation on

...........................................................19 ..........        ......................................................................
(date)                           Secretary



Exhibit "M"

TRANSAMERICA
LIFE COMPANIES

☐ Transamer.  _ccidental Life Insurance Company
☐ Transamerica Assurance Company
☐ Transamerica Life Insurance & Annuity Company

**Beneficiary Designation**

HOME OFFICE: Los Angeles

Policy No.: 40208626

Insured: Alan Neil Dumesco

This beneficiary designation cancels all prior beneficiary designations and settlement agreements for the policy. Please see instructions, signature requirements, special provisions and sample beneficiary designations before completing beneficiary designation form. The proceeds shall be paid in one sum to the designated beneficiary(ies), unless otherwise requested.

**BENEFICIARY: (Print full name, address and relationship to Insured) If more than one beneficiary is named, payment will be made in equal shares to the survivor(s), unless otherwise indicated.**

Murray Dumesco, Father of the Insured and Connie Dumesco, Mother of the Insured, share and share alike, if living, otherwise to the survivor, if there be such, otherwise to the Trustee or successors in trust under the Jennifer Beth Dumesco TRust Agreement dated September 2, 1987.

XX  Signed at 2308 McCormick Rd   Rockville Md   on June 4    19 91

XX  _Jeffrey Scott Burdette_
Witness

XX  2308 McCormick Rd. Rockville Md. 20850
Address of Witness

XX  Owner(s) Murray Dumesco, (New Owner)

XX  Connie Dumesco, (New Owner

This beneficiary designation has been recorded at the Home Office of the Company. The Company assumes no legal responsibility for the sufficiency or validity of the beneficiary designation.

Date Recorded   JUN 12 1991    By _____  Manager

## INSTRUCTIONS

The owner of the policy must change the beneficiary in accordance with the terms of the policy.

If the policy requires that a change of beneficiary be endorsed on the policy, you do not have to submit the policy with the designation form. Upon recording the beneficiary designation, the Company will send you an endorsement, modifying the change of beneficiary terms of the policy. The endorsement should be attached to your policy.

If a beneficiary designation is desired for more than one policy, complete a separate form for each policy.

Living children must be named whenever unborn children of the Insured are designated as beneficiaries.

Full name, address and relationship of beneficiary must be shown.

If a beneficiary is a married woman furnish her given name, e.g. "Mary S. Doe," not "Mrs. John A. Doe."

Requests for special settlement agreements should be sent to the Home Office for preparation of the proper request form.

## SIGNATURE REQUIREMENTS

INDIVIDUAL IS THE OWNER — Individual must sign on the line provided for "Owner."

PARTNERSHIP IS THE OWNER — Two authorized partners must sign below the name of the partnership, the title "Partner" must follow their names.

CORPORATION IS THE OWNER — One officer other than the Insured must sign below the name of the corporation. The officer's title (President, General Manager, Vice President, Secretary or Assistant Secretary) must follow the signature. A resolution is required to support any other signature. A beneficiary change to someone other than the corporation requires the signature of two authorized officers, other than the Insured, or a resolution.

TRUSTEE(S) IS THE OWNER — The trustee(s) must sign above wording similar to the following: "John Doe, Trustee under Trust Agreement dated June 1, 1984."

BENEFICIARIES — Any beneficiary designated irrevocable must sign any subsequent beneficiary designation.

COMMUNITY PROPERTY STATES — In states having community property laws, (Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas and Washington) or states having marital property laws (Wisconsin), the spouse of the policyowner should also sign this form.

TOB 306 M ED. 690 Printed in U.S.A

## SPECIAL PROVISIONS

IF THE BENEFICIARY DIES — The interest of any beneficiary who dies befo  the Insured will terminate at the death of the beneficiary. The interest of any beneficiary who dies at the time of, or within 30 days after the Insured's death will also terminate if no proceeds have been paid to the beneficiary. If the interest of all designated bene ciaries has terminated, any proceeds payable will be paid to the owner of this policy. If the owner is not living at that time, any proceeds payable will be paid to the executor or adm n istrator of the Owner's estate.

PROTECTION OF THE PROCEEDS — To the extent permitted by law, no pa ment of proceeds  subject to the claims of any creditors of the beneficiary or to any legal process against the benef iary.

RIGHT OF COMMUTATION — If the policy provides monthly income paymen s, a beneficiary shall have the right to commute pay ments unless such right is withdrawn from such beneficiary in writing and recorde.l at the Home Office of the Company.

The Company may rely on an affidavit by any responsible person to determine he dentity or the non existence of any beneficiaries not identified by name. If a beneficiary is a partnership, such beneficiary shall ;.e the partnership as constituted at the death of the Insured.

If any trustee is named as beneficiary, the Company shall not be responsible fo  the disposition by the trustee of any proceeds paid to such trustee.

Payment of proceeds to any beneficiary is subject to the interest of any assignee

Any payment to a minor beneficiary shall be made to the legally appointed guar..ian of the minor un'ess otherwise permitted by law

## SAMPLE BENEFICIARY DESIGNATIONS

INSURED'S ESTATE — The Executor or Administrator of the Insured's estate.

IRREVOCABLE BENEFICIARY — Jane Doe, Former Wife of the Insured, 123 Main St., Anytown, CA 12345, irrevocably designated.

ONE BENEFICIARY — Jane Doe, Wife, 123 Main St., Anytown, CA 12345.

TWO BENEFICIARIES — John Doe, Father and Jane Doe Mother, 123 Main St., Anytown, CA 12345.

ONE PRIMARY AND ONE CONTINGENT — Jane Doe, Wife, 123 Main St., Anytown, CA 12345, if living, otherwise to John Doe, Jr., Son, 123 Main St., Anytown, CA 12345.

SPOUSE OTHERWISE CHILDREN — Jane Doe, Wife, 123 Main St., Anytown, CA 12345, if living, otherwise to any children born of the marriage of the Insured and said wife. (Living children must be named).

Jane Doe, Wife, 123 Main St., Anytown, CA 12345, if living, otherwise to John Doe, Jr., Son, 123 Main St., Anytown, CA 12345, and any other children of the Insured. (Living children must be named).

PER STIRPES DESIGNATIONS — Jane Doe, Wife, 123 Main St., Anytown, CA 12345, if living, otherwise to John Doe, Jr., Son, 123 Main St., Anytown, CA 12345, and any other children born of the marriage of the Insured and said wife who are living and per stirpes to the children who are living of any deceased children of the Insured by said wife.

Jane Doe, Wife, 123 Main St., Anytown, CA 12345, if living, otherwise in equal shares to John Doe, Jr., Son, 123 Main St., Anytown, CA 12345, and Mary Doe, Daughter, 123 Main St., Anytown, CA 12345, who are living and per stirpes to the children who are living of any deceased children of the Insured. If there be no surviving beneficiaries, payment shall be made to Mary Doe, Mother of the Insured, 123 Main St., Anytown, CA 12345.

TWO BENEFICIARIES IN UNEQUAL AMOUNTS — Payable in 3 equal parts: 2 parts to Jane Doe, Mother, 123 Main St., Anytown, CA 12345, and 1 part to John Doe, Brother, 123 Main St., Anytown, CA 12345.

TRUSTEE UNDER LIVING TRUST — ABC Bank, Anytown, CA 12345 Trustee under Trust Agreement dated February 1, 1984, as amended.

TRUSTEE UNDER LAST WILL AND TESTAMENT — The trustee or successor trustee under the last will and testament of the Insured as admitted to probate. However, should the insured die intestate or if no trust is created, then to the executor or administrator of the insured's estate

SPECIFIC AMOUNT — $50,000 of the proceeds or the entire proceeds, if less than $50,000, shall be paid to ABC Co., Inc., 123 Main St., Anytown, CA 12345, Employer of the insured, remainder, if any, to Jane Doe, Wife, 123 Main St., Anytown, CA 12345.

INDIVIDUAL CREDITOR — John Doe, 123 Main St., Any town, CA 12345, Creditor, as his interest may appear, if living, otherwise to the executor or administrator of said creditor's estate as their interest may appear, remainder if any, to Jane Doe, Wife, 123 Main St., Anytown, CA 12345.

CORPORATE CREDITOR — ABC Co., Inc., 123 Main St., Anytown, CA 12345, Creditor of the Insured, a California corporation, its successors and assigns, as its interest may appear, remainder if any, to Jane Doe, Wife, 123 Main St., Anytown, CA 12345

JOINT POLICY — The beneficiary for John Doe, is Jane Doe, Wife, 123 Main St., Anytown, CA 12345, if living, otherwise to Mary Doe, Daughter, 123 Main St., Anytown, CA 12345. The beneficiary for Jane Doe, is John Doe, Husband, 123 Main St., Anytown, CA 12345, if living, otherwise to Mary Doe, Daughter, 123 Main St., Anytown, CA 12345.

# Exhibit "N"

05/28/19__  11:00    38197,3272                    HORD DATA SYSTEMS

(ORIGINAL)

## MULTI COMPANY
## ASSIGNMENT TO TRANSFER OWNERSHIP
(This form does not change the Beneficiary of the policy)

Policy No.   402 A962 C

☐ Transamerica Assurance Company
☐ Transamerica Life Insurance and Annuity Company
(herein called "the Company")

**THIS FORM WILL NOT BE RECORDED IF MODIFIED UNLESS APPROVED BY THE HOME OFFICE OF THE COMPANY.**

☒ For good and sufficient consideration,          ☐ As a gift for love and affection with no valuable consideration,
all rights, title and interest of the undersigned in this policy are hereby assigned for the purpose of transferring ownership to

**NAME OF NEW OWNER:**   ALAN NEIL DUMESCO

**ADDRESS OF NEW OWNER:**   8513 Churchill Downs Rd, Gaithersburg MD 20882

The new Owner is:  ☒ Individual   ☐ Corporation   ☐ Partnership   ☐ Trust _____   ☐ Other _____
                                                                    (Indicate date)         (specify)

Individual Owner's Social Security or Tax I.D. No. [REDACTED]        Corporation, Partnership, Trust, Other Tax I.D. No.

|                        |           |
|------------------------|-----------|
|                        |           |

                              (Include all Hyphens)

Before the death of the Insured, the Owner of this policy alone shall be entitled to all rights granted by this policy or allowed by the Company under this policy. If the Owner is a Partnership, all rights of the Owner belong to the partnership as constituted at the time a right is exercised. If the Owner is an individual and dies before the Insured, all rights of the Owner belong to the executor or administrator of the Owner.

**BENEFICIARY NOT CHANGED:** Without in any way restricting the right of the Owner to change the beneficiary, this assignment does not change the beneficiary of the policy. Unless the right to change the beneficiary is specifically exercised by the Owner, the beneficiary of the policy shall be as designated at the date of this assignment.

This assignment includes any rider or supplementary agreement attached to or relating to the policy. This assignment shall apply to and be effective under any policy issued in exchange for or as a conversion of the policy.

If this assignment is made upon any trust, the Company shall not be bound by any trust agreement nor responsible for the application of any payments made under the policy. The Company may rely solely upon the signature of the Owner under this assignment to any receipt, release, waiver or any transfers or other instruments, to whomsoever made.

The validity of this assignment is hereby guaranteed by the undersigned.

The signature to this assignment is a warranty that the undersigned is legally capable of executing this assignment and that no proceedings in insolvency or bankruptcy have been instituted by or against the undersigned.

**ASSIGNMENT BY:**
(Signature Requirements on Reverse Side)

DATE SIGNED: May 20          1997

Murray Dumesco and Constance Dumesco as Joint Tenants with Rights of Survivorship

Witness                                        (Print) Current Policyowner's Complete Name
6595G Parkview Dr. BR.FL
Address of witness                              Current Owner's Signature (Title, if Business or Trust)
                              33433
Witness                                        Current Owner's Signature (Title, if Business or Trust)
6595G Parkview Dr BR. FL
Address of witness            33433            Corporations must complete Resolution to Assign on reverse side

This assignment has been recorded at the Home Office of the Company in Los Angeles, California. The Company assumes no legal responsibility for the sufficiency or validity of the assignment.

Date recorded _____ MAY 2 0 1997 _____          By _____  Team Manager

**TRANSFER OF OWNERSHIP**

TOA FORM 196

# Exhibit "O"

# STATE OF FLORIDA

## OFFICE of VITAL STATISTICS

### CERTIFIED COPY

CERTIFICATE OF DEATH
FLORIDA

LOCAL FILE NO.

| 1. DECEDENT'S NAME | FIRST | MIDDLE | LAST | | SEX |
|---|---|---|---|---|---|
| | ALAN | | DUMESCO | | MALE |

| 3. DATE OF DEATH (Month, Day, Year) | 4. SOCIAL SECURITY NUMBER | 5. AGE-Last Birthday (years) | Months | Days | Hours | Minutes |
|---|---|---|---|---|---|---|
| APRIL 28, 2004 | 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 | 50 | | | | |

| 6. DATE OF BIRTH (Month, Day, Year) | BIRTHPLACE (City and State or Foreign Country) | WAS DECEDENT EVER IN U.S. ARMED FORCES? (Yes or No) |
|---|---|---|
| FEBRUARY 12, 1954 | NEW YORK, NEW YORK | NO |

9a. PLACE OF DEATH (Check only one, see instructions on other side)

HOSPITAL   Inpatient   ER/Outpatient   DOA   OTHER   Nursing Home   X Residence   Other (Specify)

9b. INSIDE CITY LIMITS?  YES

| 9c. FACILITY NAME (If not institution, give street and number) | 9d. CITY, TOWN, OR LOCATION OF DEATH | COUNTY |
|---|---|---|
| 1040 SEMINOLE DRIVE, #1551 | FT. LAUDERDALE | BROWARD |

| 10a. DECEDENT'S USUAL OCCUPATION | 10b. KIND OF BUSINESS/INDUSTRY | 11. MARITAL STATUS - Married, Never Married, Widowed, Divorced (Specify) |
|---|---|---|
| OWNER | FURNITURE | DIVORCED |

| 13a. RESIDENCE - STATE | 13b. COUNTY | 13c. CITY, TOWN, OR LOCATION | 13d. STREET AND NUMBER |
|---|---|---|---|
| FLORIDA | BROWARD | FT LAUDERDALE | 1040 SEMINOLE DRIVE #1551 |

| 13e. INSIDE CITY LIMITS? (Yes or No) | 13f. ZIP CODE | 14. WAS DECEDENT OF HISPANIC OR HAITIAN ORIGIN? (Specify No or Yes - If yes, specify Haitian, Cuban, Mexican, Puerto Rican, etc.) | 15. RACE - American Indian, Black, White, etc. Specify | 16. DECEDENT'S EDUCATION (Specify only highest grade completed) Elementary/Secondary (0-12) / College (1-4 or 5+) |
|---|---|---|---|---|
| YES | 33304 | X No ___ Yes   Specify | WHITE | |

| 17. FATHER'S NAME (First, Middle, Last) | 18. MOTHER'S NAME (First, Middle, Maiden Surname) |
|---|---|
| MURRAY DUMESCO | CONSTANCE SAGERMAN |

| 19a. INFORMANT'S NAME (Type/Print) | 19b. MAILING ADDRESS (Street and Number or Rural Route Number, City or Town, State, Zip Code) |
|---|---|
| CONSTANCE DUMESCO | 7495 LA PAZ #101 BOCA RATON, FLORIDA 33433 |

| 20a. METHOD OF DISPOSITION | 20b. PLACE OF DISPOSITION (Name of cemetery, crematory, or other place) | 20c. LOCATION - City or Town, State |
|---|---|---|
| ___ Burial   ___ Cremation   ___ Removal from State  ___ Donation   X Other (Specify) ENTOMBMENT | STAR OF DAVID MEMORIAL GARDENS | N. LAUDERDALE, FLORIDA |

| 21a. SIGNATURE OF FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH | 21b. LICENSE NUMBER (of Licensee) | 21c. NAME AND ADDRESS OF FACILITY |
|---|---|---|
| | 237 | STAR OF DAVID MEMORIAL CHAPEL 7701 BAILEY RD N. LAUDERDALE, FLORIDA |

22a. To the best of my knowledge death occurred at the time, date and place and due to the cause(s) as stated. (Signature and Title)

23a. On the basis of examination and/or investigation, in my opinion death occurred at the time, date and place and due to the cause(s) and manner as stated. (Signature and Title)

| 22b. DATE SIGNED (Mo, Day, Yr) | 22c. HOUR OF DEATH | 23b. DATE SIGNED (Mo, Day, Yr) | 23c. HOUR OF DEATH |
|---|---|---|---|
| | | MAY 6, 2004 | FOUND: 10:48 A.M. |

22d. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print)

23d. MEDICAL EXAMINER'S CASE # 04-17-06-79

24. NAME AND ADDRESS OF CERTIFIER (PHYSICIAN, MEDICAL EXAMINER) (Type or Print)
EROSTON PRICE, M.D.   MEDICAL EXAMINER 5301 S.W. 31 Ave., Ft. Lauderdale, FL 33312

| 25a. SUBREGISTRAR - SIGNATURE AND DATE | 25b. LOCAL REGISTRAR - SIGNATURE | 25c. DATE REGISTERED |
|---|---|---|
| | Davie Owens | MAY 13 2004 |

26. PART I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line.

Approximate Interval Between Onset and Death

IMMEDIATE CAUSE (Final disease or condition resulting in death) → a. REDACTED

DUE TO (OR AS A CONSEQUENCE OF)

Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (Disease or injury that initiated events resulting in death) LAST

b. _____ DUE TO (OR AS A CONSEQUENCE OF)

c. _____ DUE TO (OR AS A CONSEQUENCE OF)

d. _____

PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I  CIRRHOSIS OF THE LIVER WITH ESOPHAGEAL VARICES

| 27a. WAS AN AUTOPSY PERFORMED? (Yes or No) | 27b. WERE AUTOPSY FINDINGS USED TO COMPLETE CAUSE OF DEATH? (Yes or No) | 28. CASE REPORTED TO MEDICAL EXAMINER? (Yes or No) |
|---|---|---|
| NO | | YES |

| 29. IF FEMALE, WAS THERE A PREGNANCY IN THE PAST 3 MONTHS? Yes No | 30a. IF SURGERY IS MENTIONED IN PART I or II, ENTER CONDITION FOR WHICH IT WAS PERFORMED | 30b. DATE OF SURGERY (Mo, Day, Year) |
|---|---|---|
| | | |

| 31. PROBABLE MANNER OF DEATH (Specify) Natural, accident, suicide, homicide, or undetermined | 32a. DATE OF INJURY (Month, Day, Year) | 32b. TIME OF INJURY | 32c. INJURY AT WORK? (Yes or No) | 32d. DESCRIBE HOW INJURY OCCURRED |
|---|---|---|---|---|
| NATURAL | | | | |

| | 32e. PLACE OF INJURY - At home, farm, street, factory, etc. (Specify) | 32f. LOCATION (Street and Number or Rural Route Number, City or Town, State) |
|---|---|---|

DH 512, 9/96 (Replaces HRS Form 512)

VOID IF ALTERED OR ERASED

006304

**Davie Owens**
Deputy Chief Registrar

JUL 30 2004

THE ABOVE SIGNATURE CERTIFIES THAT THIS IS A TRUE AND CORRECT COPY OF THE OFFICIAL RECORD ON FILE IN THIS OFFICE.

WARNING: THIS DOCUMENT IS PRINTED OR PHOTOCOPIED ON SECURITY PAPER WITH A WATERMARK OF THE GREAT SEAL OF THE STATE OF FLORIDA ON THE FRONT, AND THE BACK CONTAINS SPECIAL LINES WITH TEXT AND SEALS IN THERMOCHROMIC INK.

DOH FORM 1946 (02-04)



FLORIDA DEPARTMENT OF
HEALTH

CERTIFICATION OF VITAL RECORD

# Exhibit "P"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  04-60573-CIV-MORENO

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

v.

MUTUAL BENEFITS CORP., JOEL STEINGER
a/k/a JOEL STEINER, LESLIE STEINGER a/k/a
LESLIE STEINGER, and PETER LOMBARDI,

       Defendants

_____/



VIATICAL BENEFACTORS, LLC, VIATICAL
SERVICES, INC., KENSINGTON
MANAGEMENTS, INC., RAINY CONSULTING
CORP., TWIN GROVES INVESTMENTS, INC.,
P.J.L. CONSULTING, INC., SKS CONSULTING,
INC., and CAMDEN CONSULTING, INC.,

       Relief Defendants.

_____/

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

For the reasons stated in the forty-seven page Report and Recommendation by Magistrate

Judge Barry Garber, dated November 10, 2004, as well as the Magistrate's Supplemental Report and

Recommendation of November 16, 2004, and upon independent review of the file, including the

transcripts of the evidentiary hearing, the objections and responses to it, it is ORDERED that the

Plaintiff's Motion for Preliminary Injunction be GRANTED.

In granting the Preliminary Injunction in favor of the Securities and Exchange Commission

(SEC), the Court enjoins defendants Mutual Benefits Corporation (MBC), Joel Steinger, Leslie

1

Steinger and Peter Lombardi, from committing further violations of the anti-fraud and registration provisions of the Federal Securities Laws in connection with the offering of securities by the Mutual Benefits Corporation. Relief defendants Viatical Benefactors, LLC, Viatical Services, Inc., Rainy Consulting Corp., Twin Groves Investments, Inc., P.J.L. Consulting, Inc., and Camden Consulting, Inc., are also enjoined consistent with the Supplemental Report and Recommendation that Magistrate Garber issued on November 16, 2004.[1]

In granting the SEC's Motion for Preliminary Injunction the Court has specifically found sufficient evidence of fraud committed by the defendants, which resulted in a benefit to the relief defendants. Specifically the Court finds credible the evidence that the announced life expectancies were the product of fraud. The Magistrate's Report details the extensive fraud on the part of the defendants, precluding any need for the Court to reiterate the findings of fact which it has adopted in full after a *de novo* review. Having adopted the finding of widespread fraud on the part of the defendants, the Court maintains the asset freeze order and denies the motion to terminate the receiver[2]

The asset freeze is needed to preserve the innocent investor funds and to provide for possible disgorgement and civil penalties. The defendants' objections are overruled, as there was no evidence to contradict the plaintiff's witnesses except to challenge the credibility of Dr. Mitchell.

Before a court grants a motion for preliminary injunction made by a <u>private</u> litigant, that party

---

[1]The Court on June 25, 2004 dismissed relief defendant S.K.S. Consulting, Inc. Thus the Court rejects the Magistrate's inadvertent inclusion of that relief defendant in the recommendation.

[2]The receiver appointed at the inception of this case has also consented to the entry of the preliminary injunction against Mutual Benefits Corporation (MBC).

2

has to show a substantial threat of irreparable injury that outweighs any injury to a non-moving party and that serves the public interest. These factors have been met by the uncontradicted evidence presented before the Magistrate and detailed in his report. In any event, the SEC in order to prevail on its request for preliminary injunction is called to a lesser burden than a private litigant. It must establish that there have been previous violations of Federal Securities Laws and a reasonable likelihood that those violations will be repeated. Assuming that the Viatical settlements are indeed securities conferring jurisdiction upon the Court, the SEC has met its burden.

The Court's only reluctance in not having issued the preliminary injunction earlier, while its temporary restraining order has been in effect for an unusually lengthy period for counsel to have opportunity to present objections, was due to the unsettled nature of whether viatical settlements are securities.

In its prior opinion, *SEC v. Mutual Benefits Corporation*, 323 F.Supp2d 1337 (S.D. Fla. 2004), this court held that the viatical settlements in question were securities covered by the Federal Securities Laws. In holding that such investments constitute securities however the Court found that there was substantial ground for difference of opinion that would justify an immediate appeal. Thus, the Court certified that an appeal of its June 25, 2004 order would be appropriate. Oral argument has been heard by the Eleventh Circuit Court of Appeals with a decision soon to be rendered. Because the issue of what constitutes a security is a disputed issue, it is difficult for the Court to hold that there is a "substantial" likelihood of success on the merits. After all, the Eleventh Circuit could disagree with this court and adopt the analysis of *SEC v. Life Partners, Inc.*, 87 F.3d 536 (D.C. Cir. 1996) without adopting the distinguishing factors of this case.

Normally, such a close question of law would preclude the granting of a preliminary

3

injunction. But the SEC is not an ordinary litigant. Instead it is charged with protecting the public by enforcing the Federal Securities Laws. Therefore the Court must grant the preliminary injunction unless and until there is a finding by a higher court that the viatical settlements in question were not securities. To deny the SEC's motion for preliminary injunction would result in the Court returning to those it has found to have participated in widespread fraud to continue in the fraud or at the very least to profit from past wrongdoing.

At oral argument counsel for the defendants indicated that the suspension of various licenses by the Florida Office of Insurance Registration prevent MBC from continuing with the transactions and that the company would probably have to proceed with some form of a bankruptcy petition. The defense argument is that an injunction is unnecessary. The Court however finds that the harm to the defendant is negligible. If bankruptcy is the proper route, the receiver, who is not burdened with the accusations of fraud is better equipped to protect investors and creditors.

WHEREFORE, the Order granting the temporary restraining order is converted into a preliminary injunction order with the same conditions binding all defendants until the conclusion of the trial or a ruling from the Eleventh Circuit Court of Appeals on the issue of subject matter jurisdiction.

DONE and ORDERED this 14th day of February, 2005 in Miami, Dade County, Florida.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Service list of February 3, 2005

4



# Exhibit "Q"



2755 E. Oakland Park Boulevard • Suite 230 • Ft. Lauderdale, Florida 33306 • (954) 564-0509 • Fax (954) 564-7343 • Toll Free 1-888-564-0509

November 9, 2004

> Re:    Insured/Deceased:  Alan N. Dumesco
>        Policy No:  60108208 & 60109065
>        Policy Owner:  Anthony M. Livoti, Jr., P.A.
>        Insurance Co:  Transamerica

Dear Life Claims Department:

We enclose the following materials in connection with the claim for death benefit proceeds on the above-referenced policy:

a.    Original Death Certificate
b.    Copy of Assignment/Ownership
c.    Life Claim Form
d.    W-9 Form

Also enclosed is a series of orders entered in *SEC v. Mutual Benefits Corp., et al.*, in which the court appointed Roberto Martinez as Receiver and authorized the Receiver to execute claims forms for policies subject to the receivership. This includes all policies on which Mutual Benefits Corporation, Anthony M. Livoti, Jr., P.A., and Viatical Benefactors, LLC <u>are</u> recorded as policy owner. The orders also require that benefits be made payable to the Receiver. Please issue the death benefits to Roberto Martinez, Receiver and remit the benefits to:

> Roberto Martinez, Esq., Receiver
> c/o Viatical Services, Inc.
> 2755 E. Oakland Park Blvd., Suite 230
> Ft. Lauderdale, FL  33306

In the event you have made a partial or other distribution of policy benefits, please advise us of the percentages, amounts and to whom paid. If you have made a partial distribution, any remaining balance should be immediately paid to the Receiver. Should you have any questions related to the processing of this claim, please contact me at (954) 564-0509, ext. #39 or by email to m.ramdath@vsi-services.com. If you have any questions concerning the enclosed <u>orders</u>, please direct those inquiries to the Receiver's counsel:

> Kenneth Hartmann, Esq.
> Kozyak Tropin & Throckmorton, P.A.
> 200 S. Biscayne Blvd., Suite 2800
> Miami, FL  33131
> Phone: (305) 372-1800; Fax: (305) 372-3508
> Email: krh@kttlaw.com

Thank you in advance for your cooperation.

Very truly yours,

Monica Ramdath, Operational Representative for
Roberto Martinez, Court Appointed Receiver for
Mutual Benefits Corp.

MB/lmm/Enclosures
cc:    Roberto Martinez, Receiver (w/o encl.)
       Kenneth Hartmann, Esq. (w/o encl.)



**TRANSAMERICA**
INSURANCE & INVESTMENT GROUP

☐ Transamerica Occidental Life Insurance Company
Home Office: Cedar Rapids, IA 52499
Administrative Office: P.O. Box 419521
Kansas City, MO 64141-6521

☐ Transamerica Life Insurance and Annuity Company
Home Office: Charlotte, NC 28202
Administrative Office: P.O. Box 419521
Kansas City, MO 64141-6521

# Claim Form

Claim No.

---

In order to process your claim as quickly as possible, we need some information about the Claimant and the Insured. Prior to completing this statement, *please read the instructions on the back of this form*. If there is more than one Claimant, each one must complete a separate Claim Form. Please use black ink when completing.

Please attach **one original officially certified Death Certificate** for each Insured.

### A. Information about the Insured: (please print)

1. Policy number(s) under which you are presenting a claim _601 090 65_
2. Insured's full name _ALAN  N.  Dumesc o_  SSN# _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_
3. Legal residence/address _1040 Semi nole Dr #1551 fort Lauderdale FL 33307_
4. Date of Birth of Insured _2 | 12 | 57_
5. Date last worked _____ Occupation at Death _____
6. Date of Death _4 | 28 | 04_ Cause of Death _____

### B. Complete This Section Only if the policy was issued or reinstated within **two years** of the date of death. Also, please return the policy, if possible.

1. When did the Insured first complain of or give other indications of last illness?_____
2. When did the Insured first consult a physician for last illness?_____
3. Names of all physicians or practitioners who attended the Insured within 5 years preceding death *(attach additional sheet if necessary)*.

| Name | Address | Dates of Attendance | Condition(s) |
|------|---------|---------------------|--------------|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

### C. Information about the Beneficiary/Claimant: (please print)

1. Your name _Roberto Martinez, Receiver for Mutual Benefits Corp_
2. Your mailing address _VSI 2755 E. Oakland Park Blvd, fort Lauderdale FL 33306_
   City, State and Zip Code _____
3. ~~Your birth date~~ _____ Your phone number: day (_888- 564- 0509_) ~~evenings~~ (___) _____
4. Your Social Security No. or Taxpayer Identification No. _
   Account Name if Taxpayer Identification Number provided _____
5. a) Certification - Under the penalties of perjury, I certify that this is my correct tax reporting number, and that I am not subject to backup withholding *(see instructions on the reverse side).*
   b) If you **are** subject to backup withholding, then place a **check mark** in this box ☐ **and sign directly below.** Otherwise, sign at the bottom of this form.

| Signature | Date |
|-----------|------|
|  |  |

Remarks: _✗  Lump  Sum  Check_

_____

_____

The claimant makes claim to the insurance and understands that the Company may not yet have verified the status of the policy. The Claimant agrees that by furnishing this form, the Company does not admit that any insurance was in force on the life of the deceased and does not waive any of its rights or defenses.

| Signature of Claimant | Date |
|-----------------------|------|
|  |  |

_Receiver for The Benefactor_

TOC 115M-904

**CLAIM FORM**


* D T 0 4 2 *

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Transamerica Occidental Life Insurance Company.

**DEFENDANTS** 05-20973
Mutual Benefit Corp., Anthony M. Livoti, Jr., P.A., et al (see attached exhibit A)

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEY'S (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Gary P. Timin
Steel Hector & Davis LLP
215 S. Monroe St., Ste. 601
Tallahassee, FL 32301-1804
Tel. 850.222.2300
Fax: 850.222.8410

Mayra Calzadilla
Steel Hector & Davis LLP
200 S. Biscayne Blvd., Suite 4000
Miami, FL 33131-2398
Tel: 305.577.4719
Fax: 305.577.7001

ATTORNEYS (IF KNOWN)
Curtis B. Miner, Esq.
Colson Hicks Eidson
255 Aragon Avenue, 2nd Fl
Coral Gables, FL 33134-5008
Tel: 305.476.7436
Fax: 305.476.7444

**CIV-MARTINEZ**

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:  (DADE,)  MONROE,  BROWARD,  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE, HIGHLANDS

**MAGISTRATE BANDSTRA**

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 640 R.R. & Truck | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loan (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice ☐ 365 Personal Injury - Product Liability ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | **PERSONAL PROPERTY** ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **A REAL PROPERTY** | | ☐ 720 Labor/Mgmt Relations | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 210 Landlord Condemnation | **A CIVIL RIGHTS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure | | ☐ 790 Other Labor Litigation | | ☐ 890 Other Statutory Actions A or B |
| ☐ 230 Rent Lease & Ejectment | ☐ 441 Voting | ☐ 791 Empl. Ret. Inc Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | |
| ☐ 240 Torts to Landlord | ☐ 442 Employment | **PRISONER PETITIONS** ☐ 510 Motions to Vacate Sentence | ☐ 871 RSI - Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 443 Housing/ Accommodations | **HABEAS CORPUS:** ☐ 530 General | | |
| ☐ 290 All Other Real Property | ☐ 444 Welfare | ☐ 535 Death Penalty | | |
| | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition | | |

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

LENGTH OF TRIAL
via _____ days estimated (for both sides to try entire case)      28 U.S.C. §1335 - Interpleader action regarding death benefit proceeds of life insurance policy

## VI. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $** 75,000.--

CHECK YES only if demanded in complaint
JURY DEMAND: ☐ Yes ☒ No

## VII. RELATED CASE(S) (See instructions):
IF ANY     JUDGE Frederico Moreno     DOCKET NUMBER 04-60573 - CIV-Moreno/Garber

DATE 4-8-05     SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44**
Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.       **(a) Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

      (b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county or residence of the "defendant" is the location of the tract of land involved.)

      (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.       **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.       **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.       **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

V.       **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI.       **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.       **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.       **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.
**Date and Attorney Signature.** Date and sign the civil cover sheet.

MIA2001 396080v.1

**Exhibit "A"**

MUTUAL BENEFITS CORP., ANTHONY M. LIVOTI, JR., P.A.,
ROBERTO MARTINEZ as RECEIVER, VIATICAL SERVICES, INC.,
RETIREMENT ACCOUNTS, INC., DOUGLAS E. ABRAMS,
SAMUEL J. BENNETT, NORMAN A. BENSON, DAN BONHAM,
GEORGE E. BRETON, DONALD J. BURNETT,
KENNETH R. CALDERWOOD, VOLA I. CLARE,
JOHANNA J. CROWLEY, THAD J. DETILLIO, BLISS FITZGERALD,
SHERRY FOLEY, JACK GATHERCOAL, JOHN GAUSE,
JEFF R. HALLOWS, MICHAEL S. HARGROVE,
HAZEL G. HARGROVE, DAVID W. HAYES, GARLAND V. INZER,
JOHN O. KIMMEL, LINDA LEE, LILIAN V. LOPEZ,
ROSE E. MACKINLAY TRUST- ROSE MACKINLAY as Trustee,
LAWRENCE H. MEYER, DAVID L. PEASE, BARBARA J. PELLET,
ROBERT P. RETTIG, BEULAH W. SHEETS, JOAN M. SUZIO,
MARION THOMPSON, JOAN R. WEATHERLY, and JOHN M. WERMUTH

MIA2001 396143v.1